**NO. 05-1311C**
**(JUDGE HORN)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ROBIN C. BROOKINS**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**DEBORAH A. BYNUM**
**Assistant Director**

**LAUREN S. MOORE**
**Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**1100 L Street, N.W.**
**Attn: Classification Unit**
**8th Floor**
**Washington, D.C. 20530**
**Tele: (202) 307-6288**
**Fax: (202) 514-8640**

**Attorneys for Defendant**

**OF COUNSEL:**

**ANTHONY C. WILLIAMS**
**Major, U. S. Marine Corps**
**Litigation Attorney**
**Office of the Judge Advocate General**
**General Litigation Division**
**Department of the Navy**
**Washington Navy Yard, (Bldg 33)**
**Washington, DC 20374-5066**
**Telephone: (202) 685-4596**

**Dated: April 27, 2006**

**TABLE OF CONTENTS**

**PAGE(S)**


DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . 2

II. Statement Of The Facts . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. The Court Lacks Jurisdiction To Entertain This Action . . . . . . . . . . . . . . . . . . . . . . . 7

II. The Court Lacks Jurisdiction To Review Plaintiff's Challenge To Her Military Discharge Because It Resulted From Her Voluntary Release . . . . . . . 11

III. Should The Court Determine That It Possesses Jurisdiction To Entertain Ms. Brookins' Request For Reinstatement To Active Duty, Defendant Is Entitled To Judgment Upon The Administrative Record Because The Decision Of The SECNAV Was Not Arbitrary, Capricious, Contrary To Law Or Regulation, Or Unsupported By Substantial Evidence . . . . . . . . . . . . . . . . 17

A. The SECNAV's Decision Was Not Arbitrary, Capricious, Or Contrary To Law Or Regulation . . . . . . . . . . . . . . . . . . . 19

B. The BCNR's Decision Was Supported By Substantial Evidence . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**TABLE OF AUTHORITIES**

**CASE** **PAGE(S)**

Abruzzo v. United States,
206 Ct. Cl. 731, 513 F.2d 608 (1975) . . . . . . . . . . . . 19

Adkins v. United States,
68 F.3d 1317 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . 8

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . 7, 8

Austin v. United States,
206 Ct. Cl. 719 (1975) . . . . . . . . . . . . . . . . . . 11

Bannum, Inc. v. United States,
404 F.3d 1346, 1357 (Fed. Cir. 2005) . . . . . . . . . . . 18

Bates v. United States,
34 Fed. Cl. 51 (Ct. Cl. 1995) . . . . . . . . . . . . . . 10

Bergman v. United States,
28 Fed. Cl. 580, 585 (1993) . . . . . . . . . . . . . . . 13

Bowman Transp., Inc. v. Arkansas-Best
Motor Freight System,
419 U.S. 281 (1974) . . . . . . . . . . . . . . . . . . . 26

Boyd v. United States,
207 Ct. Cl. 1 (1979), cert. denied,
424 U.S. 831 (1974) . . . . . . . . . . . . . . . . . . . 19

Burns v. United States,
9 Cl. Ct. 273 (1985) . . . . . . . . . . . . . . . . . . . 19

Casey v. United States,
8 Cl. Ct. 234 (1985) . . . . . . . . . . . . . . . . . . . 11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . 32

Chayra v. United States,
23 Cl. Ct. 172 (1991) . . . . . . . . . . . . . . . . 18, 19

Christie v. United States,
207 Ct. Cl. 518 F.2d 584 (1975) . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES (cont'd)**

**CASE** **PAGE(S)**

Cole v. United States,
26 Cl. Ct. 1018 (1992) . . . . . . . . . . . . . . . . . 18

Cunningham v. United States,
191 Ct. Cl. 423 F.2d 1379 (1970) . . . . . . . . . . . . 13

Curry v. United States,
221 Ct. Cl. 741, 609 F.2d 980 (1979) . . . . . . . . . . 18

Denton v. United States,
204 Ct. Cl. 188 (1974) . . . . . . . . . . . . . . . . . 20

Fisher v. United States,
364 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . . . 9, 10

Fluellen v. United States,
44 Fed. Cl. 97 (1999), aff'd, 225 F.3d 1298
(Fed. Cir.) . . . . . . . . . . . . . . . . . . . . . . 26

Gethers v. United States,
2004 U.S. Claims LEXIS 334 at 21 (Ct. Cl. 2004) . . . . . . 9

Green v. United States,
17 Cl. Ct. 716 (Ct. Cl. 1989), aff'd, 918 F.2d 187
(Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . 16

Groves v. United States,
47 F.3d 1140 (Fed. Cir. 1995) . . . . . . . . . . . . . . 11

Heaphy v. United States,
23 Cl. Ct. 697 (1991), aff'd, 927 F.2d 1355
(Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . 12

Heisig v. United States,
719 F.2d 1153 (Fed. Cir. 1983) . . . . . . . . . . . 10, 18

Holley v. United States,
32 Fed. Cl. 265 (1994) . . . . . . . . . . . . . . . . . 11

Holley v. United States,
124 F.3d 1462 (Fed. Cir. 1997) . . . . . . . . . . . . . . 9

Humphrey v. United States,
52 Fed. Cl. 593 (2002), aff'd, 60 Fed. Appx. 292
(Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . 7

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1998) . . . . . . . . . . . . . . 8

Longhofer v. United States,
29 Fed. Cl. 595 (1993) . . . . . . . . . . . . . . . . . 12

Mansell v. United States,
199 Ct. Cl. 796, 468 F.2d 933 (1972) . . . . . . . . . . 15

Manzi v. United States,
198 Ct. Cl. 489 (1972) . . . . . . . . . . . . . . . . . . . 13

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . . . . . 8

McEntee v. United States,
30 Fed. Cl. 178 (1993), aff'd, 29 F.3d 1197
(Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . 12

McIntyre v. United States,
30 Fed. Cl. 207 (1993) . . . . . . . . . . . . . . . . . 12

Mercereau v. United States,
155 Ct. Cl. 157 (1961) . . . . . . . . . . . . . . . . . . 20

Merriott v. United States,
163 Ct. Cl. 261 (1963) . . . . . . . . . . . . . . . . . . 15

Mitchell v. United States,
930 F.2d 893 (Fed. Cir. 1991) . . . . . . . . . . . . . 10

Motor Vehicle Mfrs. Ass'n v. State Farm
Mut. Auto. Ins. Co.,
463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . 26

Perlman v. United States,
203 Ct. Cl. 397, 490 F.2d 928 (1974) . . . . . . . . . . 13

Petrick v. United States,
12 Cl. Ct. 700 (1987) . . . . . . . . . . . . . . . . . . 12

Roth v. United States,
378 F.3d 1371 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . 8

Sammt v. United States,
780 F.2d 31 (Fed. Cir. 1985) . . . . . . . . . . . . . 12, 13

Sanders v. United States,
219 Ct. Cl. 594 F.2d 804 (1979) . . . . . . . . . . 18, 24, 26

Scharf v. Dep't of the Air Force,
710 F.2d 1572 (Fed. Cir. 1983) . . . . . . . . . . . . . . . 13

Shrader v. United States,
38 Fed. Cl. 788 (1997) . . . . . . . . . . . . . . . . . . . 12

Silbert v. United States,
215 Ct. Cl. 913 (Ct. Cl. 1977) . . . . . . . . . . . . . . . 10

Skinner v. United States,
219 Ct. Cl. 322, 594 F.2d 824 (1979) . . . . . . . . . . . 10

Stewart v. United States,
222 Ct. Cl. 42, 611 F.2d 1356 (1979) . . . . . . . . . . . 17

Strickland v. United States,
423 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . 24, 25

Talbot v. United States,
40 Fed. Cl. 801 (1998) . . . . . . . . . . . . . . . . . . . 12

Tannehill v. United States,
18 Cl. Ct. 296 (1989) . . . . . . . . . . . . . . . . . . . . 12

United States v. L.A. Tucker Truck Lines,
344 U.S. 33 (1952) . . . . . . . . . . . . . . . . . . 16, 17

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . 7

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . 7, 8

Voge v. United States,
844 F.2d 776 (Fed. Cir. 1988) . . . . . . . . . . . . . 10, 11

Yee v. United States,
512 F.2d 1383 (1975) . . . . . . . . . . . . . . . . . . . . 10

**STATUTES AND REGULATIONS**

**PAGE(S)**

5 U.S.C. § 701 . . . . . . . . . . . . . . . . . . . . . . 9

5 U.S.C. § 702 (2005) . . . . . . . . . . . . . . . . . . . 3

10 U.S.C. § 687(a) . . . . . . . . . . . . . . . . . . . . 15

10 U.S.C. §§ 1034 . . . . . . . . . . . . . . . . . . . . 22

10 U.S.C. § 1163(d) . . . . . . . . . . . . . . . . . . . 15

10 U.S.C. § 1163(d) . . . . . . . . . . . . . . . . . . . 19

10 U.S.C. § 1552(a) . . . . . . . . . . . . . . . . . . . 24

10 U.S.C. § 1552(a)(1) (2005) . . . . . . . . . . . . . . 22, 24

10 U.S.C. § 12313(a) . . . . . . . . . . . . . . . . . . 19

10 U.S.C. § 12686 . . . . . . . . . . . . . . . . . . . passim

10 U.S.C. § 12686(a) . . . . . . . . . . . . . . . . . . . 7

10 U.S.C. § 12686(b) . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . 3, 10

28 U.S.C. § 1491(a)(1) (2000) . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1491(a)(2) . . . . . . . . . . . . . . . . . 10

37 U.S.C. § 204 . . . . . . . . . . . . . . . . . . . . 8, 9

32 C.F.R. § 723.1 . . . . . . . . . . . . . . . . . . . . 22

32 C.F.R. §§ 723.1-.6 (2005) . . . . . . . . . . . . . . 22

32 C.F.R. § 723.2 . . . . . . . . . . . . . . . . . . . . 22

32 C.F.R. § 723.7(a) . . . . . . . . . . . . . . . . . 23, 25

**MISCELLANEOUS**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . 32

THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBIN C. BROOKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1311C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests the Court to dismiss the complaint upon the grounds that plaintiff has failed to assert a money-mandating statute and because it lacks jurisdiction to review plaintiff's voluntary separation from the United States Navy. In the alternative, defendant requests the Court to grant judgment upon the administrative record for the defendant, pursuant to RCFC 56.1. In support of this motion, defendant relies upon the pleadings, this brief, defendant's statement of facts, and documents contained in the administrative record.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether plaintiff's claim for reinstatement to active duty (and accompanying monetary relief) should be dismissed for lack of jurisdiction because plaintiff's complaint fails to

assert a money-mandating statute;

2. Whether plaintiff's claim for reinstatement to active duty (and accompanying monetary relief) should be dismissed for lack of jurisdiction because plaintiff's release from active duty was voluntary;

3. In the alternative, whether defendant is entitled to judgment upon the administrative record because the decision of the Secretary of the Navy to deny plaintiff's request for reinstatement to active duty was not arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Plaintiff, Robin Brookins, a Colonel in the U.S. Marine Corps, Individual Ready Reserves ("IRR") brings this suit seeking to set aside the October 23, 2002 decision of the Secretary of the Navy[1] ("SECNAV") that rejected the recommendation of the Board for Correction of Naval Records ("BCNR") suggesting that Ms. Brookins was entitled to an active duty retirement. She contends that on May 26, 2000, she was improperly released from active duty.

[1] Signed by Joseph G. Lynch, Assistant General Counsel to the Assistant Secretary of the Navy for Manpower and Reserve Affairs upon behalf of the Secretary of the Navy.

Ms. Brookins asks this Court to declare that she is entitled to return to active duty until eligible for a twenty-year active duty retirement, or in the alternative, that she be deemed to have served sufficient time upon active duty to qualify for such a retirement. She further seeks pay and allowances for the period of service she serves or is deemed to have constructively served until eligible for retirement. Finally, she seeks reimbursement of attorney fees and costs. The complaint requests that this Court review a decision by the Secretary of the Navy under the Tucker Act, 28 U.S.C. § 1491, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 702 (2005).

II. Statement Of The Facts

Plaintiff, Robin Brookins, joined the United States Marine Corps Reserve on December 10, 1976, as a Second Lieutenant. Compl. ¶ 2; AR 16.[2] Ms. Brookins was promoted to Captain on October 5, 1981, and to Major on October 1, 1991. Id. She became a Lt. Col. in 1997, and was promoted to the rank of Colonel in 2003. Id. Ms. Brookins presently serves in the IRR. Id.

Ms. Brookins was serving as the officer in charge of a consolidated tax center at Camp Legeune, North Carolina, when her

---

[2] "Compl. ___" refers to plaintiff's complaint, filed with this Court on December 15, 2005. "AR ___" refers to the Administrative Record, filed concurrently with our Motion to Dismiss, Or, In the Alternative, Motion for Judgment Upon The Administrative Record.

request for further Active Duty for Special Work ("ADSW") orders, until May 26, 2000, was denied because she was approaching 18 years of active duty and would be eligible to claim sanctuary under the provisions of Title 10 United States Code section 12686. AR 9.

Ms. Brookins's command made a request to Headquarters Marine Corps that orders be issued to allow Ms. Brookins to serve at the tax center "since no one else was available and qualified for this duty given the fact that the tax season had already begun. It was further noted that the base was responsible for tax preparation for 142,000 active duty personnel, their families, and a large retirement community." AR 10; 26. "After discussion, Ms. Brookins verbally agreed to waive sanctuary as she had done in the past, and accepted orders that contained that waiver." Id.; AR 32; Compl. ¶ 6. Ms. Brookins sent an electronic mail message to Lt. Col. Feltham, confirming her willingness to accept the orders containing the sanctuary waiver language:

> * * * I have been faithfully signing the waivers for many sets of ADSW and I have absolutely no problem with continuing to sign them. I have been 'faithfully' signing the waiver with the understanding I could continue until service limitation (I under-stand it to be 28 years of commissioned [service] as a Lt. Col. and possibly longer if I were fortunate enough to be promoted.) I am very much aware that I will not receive retirement until age 60 (if Congress doesn't change that along the way).

AR 26.

On March 3, 2000 Ms. Brookins accepted orders for active duty covering a period of 89 calendar days, from February 28, 2000 until May 26, 2000. AR 22-24; Compl. ¶ 6. The orders, which were issued by the Commanding General of the Reserve Command in Kansas City, Missouri, contained the following provision:

> I voluntarily accept these orders to active duty for special work. In doing so, I understand that I may become eligible for sanctuary zone protection under Title 10, United States Code, Section 12686(A). As a condition to acceptance of these orders, however, pursuant to section 12686(B), I hereby waive the applicability of Section 12686(A) to the period of active duty covered by these orders. I understand that the effect of this waiver is to remove any sanctuary zone protection that might have otherwise applied as a result of the execution of these orders.

AR 24; Compl. ¶ 6.

Thereafter, on May 3, 2000 Ms. Brookins signed a Separation/Travel Pay Certificate which identified her discharge as honorable, and effective date of release from active duty which was May 26, 2000. Ms. Brookins also turned in her green Active Duty military identification card as part of her discharge processing in May 2000. AR 33. Ms. Brookins did not make a claim for sanctuary or request retention upon active duty pursuant to 10 U.S.C. § 12686 at that time. See AR 30.

On July 17, 2001, Ms. Brookins submitted an application for correction of military records to the BCNR. AR 17-26. In her request Ms. Brookins stated that she "did not consent to leave active duty on 26 May 2000 in accordance with US Code: Title 10, Section 12646." AR 18. She requested that she "be returned to active duty until [she] complete[d] twenty years of active duty service and am eligible to apply for active duty retirement." Id.

On September 12, 2002, the Chairman of the BCNR recommended that Ms. Brookins's records be corrected to show that she was not released from active duty on May 26, 2000, "but continued to serve on active duty until the earliest date she qualified for 20 year active duty retirement and was retired in the grade of LTCOL." AR 12. The Chairman, along with three other BCNR members, considered the three advisory opinions recommending against granting Ms. Brookins's request, AR 27-29, AR 30-31, AR 32-33, and concluded that because she "had over 18 years of active duty when she accepted the last period of active duty, and was required to sign a waiver of the sanctuary provision in order to reach that length of service," she should be granted relief in the form of active duty retirement. AR 11-12.[3] The BCNR also

[3] The BCNR's statement that Ms. Brookins had over 18 years of active duty service was incorrect. In fact, according to official Form DD 214, she had 17 years, 11 months, and four days of active duty service as of February 10, 2000. AR 101.

questioned the validity of Ms. Brookins's waiver of the sanctuary provision, and thus her release from active duty. Id.

On October 23, 2002, the Assistant General Counsel for the Assistant Secretary of the Navy for Manpower and Reserve Affairs, Joseph Lynch, rejected the BCNR's recommendation. Mr. Lynch explained his conclusion to reject the BCNR's recommendation by stating that "[u]nder the particular circumstances of this case, I am not persuaded that petitioner's separation from active duty was involuntary as that term is used in 10 U.S.C. Sec. 12686(a). Accordingly, petitioner's request is denied." AR 4. In a letter to Ms. Brookins dated October 7, 2003, Mr. Cali denied Ms. Brookins' request for reconsideration, and confirmed Mr. Lynch's denial of Ms. Brookins' request. AR 1.

## ARGUMENT

### I. The Court Lacks Jurisdiction To Entertain This Action

The United States Court of Federal Claims is a Court of limited jurisdiction. Humphrey v. United States, 52 Fed. Cl. 593, 595 (2002), aff'd, 60 Fed. Appx. 292 (Fed. Cir. 2003). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). The party seeking to invoke this Court's jurisdiction carries the burden of establishing it. Alder Terrace, Inc. v. United States, 161 F.3d

1372, 1377 (Fed. Cir. 1998).

The Tucker Act conveys "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act, however, is only a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." Testan, 424 U.S. at 398. Therefore, in order to pursue a substantive right, plaintiff "must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998).

In the context of involuntary separation cases, such as this one, "the applicable money-mandating source is the Military Pay Act, 37 U.S.C. § 204 (2000)." Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004) (citing Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc)); see also Adkins v. United States, 68 F.3d 1317, 1321 (Fed. Cir. 1995) (If his discharge was involuntary and improper, Adkins' statutory right to pay was not extinguished, and thus serves as a basis for Tucker Act jurisdiction). The Military Pay Act provides that "a

member of the uniform service who is on active duty . . . [is] entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204. If it is found that separation from one of the armed services was improper, then the entitlement to be paid remains, thus establishing the Court's jurisdiction under the Tucker Act. See Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("It is well established that 37 U.S.C. § 204 serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge.").

Ms. Brookins attempts to invoke this Court's jurisdiction through the Administrative Procedures Act, 5 U.S.C. § 701 ("APA"). Under the APA, a district court of the United States possesses jurisdiction to hear a plaintiff's claim. See Gethers v. United States, 2004 U.S. Claims LEXIS 334 at 21 (Ct. Cl. 2004) (district court would have jurisdiction to review final agency action under the APA in case involving agency's refusal to conduct a remedial promotion selection board.)

This Court, however, would have had jurisdiction over plaintiff's claims if the complaint properly invoked both the Tucker Act, i.e., the "specific statute [that] sets the court's jurisdictional parameters" and the Military Pay Act, i.e., "a separate statute [that] establishes the right that allegedly has been breached." Fisher v. United States, 364 F.3d 1372, 1376

(Fed. Cir. 2004). In exercising jurisdiction in this case as currently pled, the Court's actions would be inconsistent with the United States Court of Appeals for the Federal Circuit's holding in Voge v. United States, 844 F.2d 776, 781 (Fed. Cir. 1988)(quoting Silbert v. United States, 215 Ct. Cl. 913 (Ct. Cl. 1977)), that "Section 1491(a) gives the Claims Court power to order the correction of military records only 'incident of and collateral to' its award of a money judgment."). Id.; see also Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (recognizing "judicial review of military service determinations with money consequences is available").

In military pay cases involving the entry of a monetary judgment this Court has jurisdiction to "provide an entire remedy." 28 U.S.C. § 1491(a)(2). This Court may restore a service member "to office or position," place the individual in the "appropriate duty or retirement status," and correct "applicable [military] records." Bates v. United States, 34 Fed. Cl. 51, 53 (Ct. Cl. 1995); see also Mitchell v. United States, 930 F.2d 893, 896 (Fed. Cir. 1991) (reviews this Court's jurisdiction in military pay cases). Indeed, this Court has awarded service members back pay (e.g., Skinner v. United States, 219 Ct. Cl. 322, 594 F.2d 824 (1979)); ordered individuals restored to their military positions (e.g., Yee v. United States, 512 F.2d 1383 (1975)); ordered the correction of military records

(e.g., Holley v. United States, 32 Fed. Cl. 265 (1994)); ordered individuals placed in the correct retirement status (e.g., Casey v. United States, 8 Cl. Ct. 234 (1985)); and conferred constructive active duty credit (e.g., Groves v. United States, 47 F.3d 1140 (Fed. Cir. 1995) (officer entitled to constructive active duty credit with corresponding back pay and allowances)).

The Court's power to grant non-monetary relief is circumscribed, however. This relief must be incident of and collateral to the award of a money judgment. Voge, 844 F.2d at 781; see also Austin v. United States, 206 Ct. Cl. 719, 723 (no power to grant affirmative non-monetary relief in military pay case unless it is tied and subordinate to a monetary award)). In sum, this Court would have the authority to provide the relief plaintiff requests if she is entitled to a money judgment and the associated duty credits and record corrections, **and** if she had properly invoked the Court's jurisdiction. However, because she makes no mention of a money-mandating statute her complaint must be dismissed.

## II. The Court Lacks Jurisdiction To Review Plaintiff's Challenge To Her Military Discharge Because It Resulted From Her Voluntary Release

Ms. Brookins's voluntary release from active duty divests this Court of jurisdiction over any claims to reinstatement and associated monetary relief. This Court lacks jurisdiction to review a challenge to a separation from the military resulting

from a voluntary release. Sammt v. United States, 780 F.2d 31, 33 (Fed. Cir. 1985). In Sammt, the Federal Circuit held, as it had in civilian pay cases, that this Court does not possess jurisdiction to review a claim for restoration to military service following a voluntary separation. 780 F.2d at 32. See also McEntee v. United States, 30 Fed. Cl. 178 (1993), aff'd, 29 F.3d 1197 (Fed. Cir. 1994); Longhofer v. United States, 29 Fed. Cl. 595, 601 (1993); Heaphy v. United States, 23 Cl. Ct. 697, 700 (1991), aff'd, 927 F.2d 1355 (Fed. Cir. 1992)(table); Tannehill v. United States, 18 Cl. Ct. 296, 299 (1989); Petrick v. United States, 12 Cl. Ct. 700, 702 (1987).

The rule that this Court lacks jurisdiction over suits for compensation where the service member's separation was voluntary is not limited to cases involving resignations. Talbot v. United States, 40 Fed. Cl. 801, 805 (1998). Rather, the voluntary separation cases instruct that this Court lacks jurisdiction over any back pay claim where the surrounding facts and circumstances show that the separation from service was voluntary. Id. See, e.g., Shrader v. United States, 38 Fed. Cl. 788, 798 (1997); McIntyre v. United States, 30 Fed. Cl. 207, 211 (1993).

A separation is presumed to be voluntary and the plaintiff bears the burden of coming forward with sufficient evidence to establish otherwise. Christie v. United States, 207 Ct. Cl. 333, 338, 518 F.2d 584, 587 (1975); McEntee, 30 Fed. Cl. at 183;

Longhofer, 28 Fed. Cl. at 601; Bergman, 28 Fed. Cl. at 585; Heaphy, 23 Cl. Ct. At 700; Petrick, 12 Cl. Ct. at 702. This presumption endures even if the plaintiff is confronted with "a choice of unpleasant alternatives." Sammt, 780 F.2d at 33. Accord, Heaphy, 23 Cl. Ct. at 701.

The presumption of voluntariness may be rebutted by evidence tending to establish that (1) the Government wrongfully caused the plaintiff duress or coerced her into resigning, Christie, 207 Ct. Cl. at 337-38, 518 F.2d at 587; (2) the Government misrepresented information and the plaintiff detrimentally relied upon such information, Scharf, 710 F.2d at 1575; (3) plaintiff unsuccessfully attempted to withdraw her resignation before its effective date, Cunningham v. United States, 191 Ct. Cl. 471, 481, 423 F.2d 1379, 1384-85 (1970); (4) plaintiff submitted a resignation under time pressure, Perlman v. United States, 203 Ct. Cl. 397, 406, 490 F.2d 928, 932-33 (1974); or (5) plaintiff failed to understand the situation due to mental incompetence, Manzi v. United States, 198 Ct. Cl. 489, 492 (1972). The purpose of this examination is to determine whether the plaintiff had the ability to exercise free choice when she resigned. Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574 (Fed. Cir. 1983); Heaphy, 23 Cl. Ct. at 700.

Ms. Brookins did not involuntarily separate. She has failed to allege facts that would show that she separated from the

military unwillingly. Ms. Brookins requests that she be reinstated to active duty because the Navy violated the sanctuary provision found at 10 U.S.C. § 12686(b). Importantly, Ms. Brookins's complaint does not allege that the Navy violated the release provision found at 10 U.S.C. § 12686(a). That provision states as follows:

> [A] member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary."

10 U.S.C. § 12686(a). This provision establishes what is commonly referred to as the "sanctuary zone".

Prior to accepting active duty orders, Ms. Brookins expressed her intention of leaving active duty voluntarily at the termination of her orders. AR 26. She was offered active duty orders based upon her assertions. Ms. Brookins left active duty at the termination of her temporary orders without expressing any reluctance. Specifically, on May 3, 2000 Ms. Brookins signed a Separation/Travel Pay Certificate which identified her discharge from the military as honorable, and effective date of release from active duty which was May 26, 2000. Ms. Brookins also turned in her green Active Duty military identification card as part of her discharge processing in May 2000. AR 33. Ms. Brookins did not make a claim for sanctuary or request retention

upon active duty pursuant to 10 U.S.C. § 12686 at that time. See AR 30. Because 10 U.S.C. § 12686 applies only to involuntary separations, it does not apply here, and Ms. Brookins should not be awarded an active duty retirement.

In assessing liability for an "involuntary" release of a Reserve officer in Mansell v. United States, 199 Ct. Cl. 796, 468 F.2d 933 (1972), the Court emphasized that the term "involuntary" (as then used in 10 U.S.C. § 687(a) concerning readjustment payments) meant "contrary to his own choice, preference and desire" **of which the Navy was aware.** 199 Ct. Cl. at 801, 468 F.2d at 936 (emphasis added). In Mansell, the Court of Claims ruled that the release occurring at the expiration of a tour of duty was voluntary. 199 Ct. Cl. at 802, 468 F.2d at 936. See also Merriott v. United States, 163 Ct. Cl. 261, 264 (1963) ("There is no allegation or showing that, at or about the time of his release, plaintiff objected to being released or sought to remain in the Army.").

Thus, within the context of 10 U.S.C. § 12686(a) the term "involuntarily" contemplates prior knowledge upon the part of the Navy as to a Reserve member's desire to continue upon active duty and the member's availability and ability to do so for the substantial additional period of time (up to two years) involved.

Green v. United States[4], 17 Cl. Ct. 716, 719 (Ct. Cl. 1989), aff'd, 918 F.2d 187 (Fed. Cir. 1990). Most Reserve members serving short active duty tours, and also having civilian career responsibilities, would not, it is assumed, welcome an interpretation that such brief training tours must automatically be extended two years under 10 U.S.C. § 12686(a) when the 18 years service point is reached. Id. A more reasonable interpretation, consistent with the consensual nature of active duty training tours for Reserve members, is that 10 U.S.C. § 12686(a) prohibits a release at the end of an ordered tour of duty if the Reserve member, with the requisite 18 years of active duty service, duly requests an amendment extending the tour, unless the Secretary then approves the release contrary to the member's request. Id.

It is well settled that "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has [the] opportunity for correction in order to raise issues reviewable by the courts." United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37 (1952). The underlying rationale for this principle is that "courts should not overturn administrative decisions unless the administrative body not only has erred but has erred against

[4] Green involved 10 U.S.C. § 1163(d), which was repealed on October 5, 1994, from which 10 U.S.C. § 12686 is derived.

objection made at the time appropriate under its practice." Id; see also Stewart v. United States, 222 Ct. Cl. 42, 611 F.2d 1356, 1361 (1979)(military personnel case holding "agencies and departments should first be given a chance to correct their own errors and to permit the Government to mitigate or avoid claims that might otherwise be created and have to be litigated in the judicial system").

"Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice". Tucker Truck Lines, 344 U.S. at 37. In this case, waiver operates to prevent Ms. Brookins from manipulating the system. Her repeated assertions prior to acceptance of orders, that she had no intentions of seeking sanctuary, coupled with the complete lack of protestation prior to her release from active duty, establish that her release was completely voluntary.

## III. Should The Court Determine That It Possesses Jurisdiction To Entertain Ms. Brookins's Request For Reinstatement To Active Duty, Defendant Is Entitled To Judgment Upon The Administrative Record Because The Decision Of The SECNAV Was Not Arbitrary, Capricious, Contrary To Law Or Regulation, Or Unsupported By Substantial Evidence

In the event that the Court determines that it possesses jurisdiction and that Ms. Brookins has stated a proper claim, we

request judgment upon the administrative record pursuant to RCFC 56.1. The scope of review by this Court is necessarily limited, since "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979).

Resolution of a motion for judgment upon the administrative record pursuant to Rule 56.1 requires the Court to determine whether, based upon the administrative record, the challenged decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law. Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005); Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). See also Cole v. United States, 26 Cl. Ct. 1018, 1023 (1992)(in cases where the Court is reviewing actions of a service board for correction of military records, the standard is "whether defendant's decision not to change the records . . . was arbitrary, capricious, contrary to law or unsupported by substantial evidence.").

Before the Court will overturn the SECNAV's decision, "plaintiff must show by cogent and clearly convincing evidence . . . a material legal error or injustice in the correction board proceeding . . . ." Chayra v. United States, 23 Cl. Ct. 172, 178 (1991). It is equally well settled that the plaintiff must

"overcome the presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." Chayra, at 178 (citing Sanders, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979)).

Additionally, "[w]hile the court might disagree with the [SECNAV's] decision, it cannot substitute its own judgment for the [SECNAV's] if reasonable minds could reach differing resolutions of a disputed fact." Chayra, at 178. In Curry v. United States, 221 Ct. Cl. 741, 609 F.2d 980, 983 (1979), the Court of Claims stated, "We cannot interfere in the business of the military unless there is a violation of statute or regulation or abuse of discretion amounting to legal error." Id. (citing Boyd v. United States, 207 Ct. Cl. 1 (1979), cert. denied, 424 U.S. 831 (1974).

A. The SECNAV's Decision Was Not Arbitrary, Capricious, Or Contrary To Law Or Regulation

In addition to the express authority present in 10 U.S.C. § 12686(a), the Secretary has broad discretion to release a Reserve member from active duty. Abruzzo v. United States[5], 206 Ct. Cl. 731, 737, 513 F.2d 608, 611 (1975); Burns v. United States, 9 Cl. Ct. 273, 277 (1985). Reserve officers such as Ms. Brookins can, under 10 U.S.C. § 12313(a), be released from active

[5] Abruzzo and Burns also dealt with 10 U.S.C. § 1163(d), which, as stated above, was repealed on October 5, 1994, from which 10 U.S.C. § 12686 is derived.

duty at any time and the conditions and circumstances governing that release rest within the sound discretion of the service[6]. See Denton v. United States, 204 Ct. Cl. 188(1974); Mercereau v. United States, 155 Ct. Cl. 157, 158 (1961).

If the Court finds that Ms. Brookins did not leave active duty voluntarily, then the Court should determine that the SECNAV, acting through Mr. Lynch,[7] effectively approved her release post hoc by rejecting the BCNR's recommendation that she be allowed to receive an active duty retirement.

Title 10 U.S.C. § 12686(b) provides as follows:

> Waiver. - With respect to a member of a reserve component who is to be ordered to active duty (other than for training) ... pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order. In carrying out this subsection, the Secretary concerned may require that waiver under the preceding sentence be executed before the period of active duty begins.

10 U.S.C. § 12686(b).

Ms. Brookins cites two unrelated BCNR decisions in support of her position that SECNAV did not waive, nor delegate authority

[6] "Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." 10 U.S.C § 12313.

[7] Assistant General Counsel for the Assistant Secretary of the Navy for Manpower and Reserve Affairs.

to waive the sanctuary provision according to 10 U.S.C. § 12686(b). Complaint Ex. A & B. These BCNR decisions both involve Marines claiming sanctuary but are factually distinguishable and irrelevant to plaintiff's claim.

The case set forth in Exhibit A of the complaint is distinguishable because the orders that caused the member to cross over the eighteen-year threshold were for more than 179 days. Complaint Ex. A, at 7 w, 10-11 dd.(4)[8]. This made the waiver provision of 10 U.S.C. § 12686(b) inapplicable. Further, he had already served eighteen years of active duty service before being told to sign the waiver, while already on active duty. Id. at 9 bb.

The case set forth in Exhibit B is distinguishable because the Marine in that case was issued orders that did not contain the sanctuary waiver language. Complaint Ex. B, page 2 § c.[9] The Marine actually requested sanctuary prior to his involuntary release from active duty. This Marine's orders were also for a term in excess of 179 days. Id. These two cases are nothing more than red herrings as they are factually distinguishable.

---

[8] Defendant's copy of Complaint Exhibit A is missing half of page 6, half of page 12 and all of page 13.

[9] The second page of Exhibit B is un-numbered but is the second chronological page.

Assuming that SECNAV did not delegate authority to waive sanctuary zone protection, he was not given the opportunity to approve or disapprove an involuntary discharge because Ms. Brookins did not make a request to stay on active duty. Assuming, arguendo, that the discharge was involuntary, the first opportunity to take action presented itself via plaintiff's BCNR petition. When presented with BCNR's recommendation, SECNAV took action by rejecting their recommendation, effectively approving the discharge.

The BCNR is established and composed under 10 U.S.C. §§ 1034 and 1552. See 32 C.F.R. § 723.2. The Secretary of the Navy is governed, in the correction of military records, by 10 U.S.C. § 1552, which states in the pertinent part:

> The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

10 U.S.C. § 1552(a)(1) (2005). And:

> Corrections under this section shall be made under procedures established by the Secretary concerned.

10 U.S.C. § 1552(a)(3) (2005).

The BCNR's powers are delineated, by 32 C.F.R. §§ 723.1-.6 (2005). The Code of Federal Regulations establishes procedures

for correction of military personnel records by SECNAV acting through the BCNR to remedy error or injustice. 32 C.F.R. § 723.1. With respect to all petitions for relief properly before it, BCNR is authorized to take final corrective action upon behalf of the Secretary, unless comments by proper naval authority are inconsistent with the Board's recommendation. 32 C.F.R. § 723.6(e). Here, the "MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF NAVAL RECORDS" dated March 29, 2002, August 14, 2001, and November 2, 2001, clearly provide comments inconsistent with BCNR's recommendation. AR 27- 31.

SECNAV's authority to "direct such action as he or she determines to be appropriate" with records forwarded from BCNR is set forth in 32 C.F.R. § 723.7. If the Secretary's decision is to deny relief, such decision shall be in writing and, unless he or she expressly adopts in whole or in part the findings, conclusions and recommendations of the board, shall include a brief statement of the grounds for denial. Id.

It is clear from the record that SECNAV approved plaintiff's release from active duty, post hoc, when he rejected the BCNR's recommendation to award an active duty retirement. Because Ms. Brookins waited until long after she was released from active duty to manifest her desire for further active duty, the SECNAV was forced to rely upon the evidence set forth in the administrative record. Because Ms. Brookins did not afford

SECNAV the opportunity to decide while she was still on active duty, she must accept SECNAV's post hoc ratification of her release from active duty.

The Secretary or his designee "may correct any military record" when "the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). The scope of review by this Court is necessarily limited, since "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979).

Congress explicitly delegated to the Secretary plenary power and discretion to correct military records whenever he "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (2004). Congress required that "such corrections shall be made by the Secretary acting through boards. . . ." Id. There is nothing in the second sentence that bars the Secretary from rejecting the recommendation of the Board. Strickland v. United States, 423 F.3d 1335, 1137-38 (Fed. Cir. 2005). The sole issue on appeal in Strickland was whether the Assistant Secretary acted outside his statutorily-granted powers when he rejected the recommendation of the board. Id. at 1337. The court held that the decision to overrule the board's recommendation was within the power granted to the Secretary by

Congress. Id. at 1343.

Although the Secretary "in correcting a military record is to act through a board of civilians," the statute authorizes him to "retain[] the authority to take such final action on board recommendations as he determines to be appropriate." Id. at 1338 (quoting Boyd v. United States, 207 Ct. Cl. 1, 8 (1975)). In the words of the Boyd court, "it is clear from the statute that the Secretary's decision is a discretionary one." Id. Thus, the Secretary's limitation on board involvement is expressly authorized by Congress. Id.

If the service member contests the Secretary's decision, the Court must review the rationale underlying the Secretary's decision to determine if the decision was arbitrary, capricious, unsupported by substantial evidence, or in violation of law. Id. at 1339. If the Secretary adopts the board's recommendation, then the Court reviews the Secretary's decision in terms of the board's rationale. If, however, the Secretary disagrees with the board and rejects its recommendation, then the Secretary must provide a written statement supporting his rejection. Id.; 32 C.F.R. § 723.7(a). In that case, the Court reviews the decision on the basis of the Secretary's written statement.

Here, the Secretary rejected the board's recommendation and provided a written statement supporting his rejection. AR at 4. In his statement he clearly states he was not persuaded that

plaintiff's separation from active duty was involuntary as that term is used in 10 U.S.C. § 12686(a). His decision is supported by a plain reading of the Administrative Record. Ms. Brookins asserted upon numerous occasions to several senior Marine officers that she had no intention to claim sanctuary. She made absolutely no protestation to her release from active duty, prior to her release. A reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Motor Freight System, 419 U.S. 281, 286 (1974). All that is required is that the agency's decision "minimally contain" a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); Fluellen v. United States, 44 Fed. Cl. 97, 101 (1999), aff'd, 225 F.3d 1298 (Fed. Cir.). Therefore, the Secretary's decision to deny plaintiff's request was not arbitrary or capricious, or contrary to law or regulation.

To recover for failure to correct an alleged injustice, such as perhaps based upon gross material error of fact or an action contrary to all evidence, it must be proved that such failure was arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with monetary consequences. Sanders, 594 F.2d at 813. In such event, the abuse of administrative discretion rises to the level

of legal error which merits judicial relief. Id. These are comparatively rare cases. Perhaps they are infrequent because the proof must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith. Id.

The SECNAV rejected the BCNR's recommendation to grant an active duty retirement because plaintiff's separation was not involuntary. AR at 4. Ms. Brookins's assertions prior to accepting orders combined with her lack of protestation prior to expiration of her orders fully support SECNAV's determination that her release from active duty was voluntary. Therefore, the Court should find that SECNAV's decision was not arbitrary or capricious, or contrary to law or regulation.

B. The SECNAV's Decision Was Supported By Substantial Evidence

The SECNAV carefully reviewed and considered the allegations raised by Ms. Brookins in her petition and matters submitted in support thereof. He also considered the Navy's advisory opinions, the BCNR recommendation, and subsequently denied the requested relief.

The active duty orders Ms. Brookins accepted specified a beginning date and an ending date (less than 180 days). Compl. ¶ 3. Her acceptance of these orders conclusively establish the mutually consensual nature of her active duty termination date.

She agreed verbally and in writing that she was accepting active duty orders for a finite period. AR at 10, 26, 28, 30, 32-34. The Marine Corps relied in good faith upon her assertions that she would not seek sanctuary protection. Id. at 28-30. Because she assured the Marine Corps that her release from active duty was going to be voluntary, she was issued orders to serve upon active duty. Id. at 28, 32. It has been established that were it not for her representations of voluntary termination, she would not have been offered active duty orders. Id.; Compl. at 2.

The Marine Corps should be able to rely upon the spoken word of a senior officer in making manpower decisions. Officers are assumed to possess a certain modicum of integrity such that when they express their intentions, other Marines can assume veracity and take actions in reliance to further the mission. If Ms. Brookins were to prevail based upon her misstatements to military officials, it would "strike at the heart of questioning the integrity of each Reserve Officer who is willing to waive sanctuary zone protection." See AR at 34.

There is absolutely no credible evidence in the record to establish that Ms. Brookins did not leave active duty voluntarily. The best evidence of her intent is set forth in the Administrative Record, wherein she is quoted as saying:

> I have been faithfully signing the waivers for many sets of ADSW and I have absolutely no problem with continuing to sign them. I have been 'faithfully' signing the waiver with the understanding I could continue until service limitation (I understand it to be 28 years of commissioned [service] as a LtCol and possibly longer if I were fortunate enough to be promoted.) I am very much aware that I will not receive retirement until age 60 (if Congress doesn't change that along the way).

AR at 26; see also AR at 32. The Marine Corps issued her orders to active duty based upon her exhaustive, explicit, and pervasive assertions that she would not claim sanctuary. Id. at 29, 32, 62.

Moreover, Ms. Brookins made no request for sanctuary while on active duty. AR at 28, 36. She made no attempt to remain upon active duty past May 26, 2000. Id. Her untimely request for sanctuary came only after she had voluntarily left active duty, and therefore falls outside the provisions of 10 U.S.C. § 12686(b).

Clearly, Ms. Brookins accepted orders to active duty that contained language that manifested her intention to be voluntarily released from active duty upon their expiration. Compl. at 3. The orders expired and she was released without protest. AR at 30. All evidence in the administrative record, both prior to her accepting orders, and through her service and her ultimate release, conclusively establishes that she left active duty voluntarily. The first manifestation of her

purported objection to release from active duty came in the form of her petition to BCNR for an active duty retirement more than a year after her release. AR at 30.

If Ms. Brookins had not consented to be released from active duty, her avenue of redress would be to "request mast" pursuant to Marine Corps regulations, while still on active duty.[10] If her administrative remedies did not provide relief, she could have then filed in U.S. District Court. She did not pursue her administrative remedies while on active duty. Her attempt to claim sanctuary after release from active duty is untimely, unfair, and ineffective.

Ms. Brookins has failed to attack the factors upon which SECNAV based its decision or to allege a clear error in judgment. Furthermore, the evidence relied upon by SECNAV in making its decision was sufficient to support its conclusion. Therefore, as SECNAV considered and reviewed a wide range of evidence, including plaintiff's petition and supporting documents, three advisory opinions, and the BCNR's recommendation, and as plaintiff has failed to present evidence disputing SECNAV's decision, the SECNAV's decision to deny plaintiff's petition is

[10] Marine Corps Order 1700.23E W/Ch 1 of July 2, 1997 promulgates the "request mast" procedure. Request mast provides a Marine the opportunity to communicate not only with his or her immediate commanding officer, but also with an superior commander in the chain of command up to and including the Marine's immediate commanding general.

supported by substantial evidence.

## CONCLUSION

For the reasons stated above, plaintiff's complaint should be dismissed, or, in the alternative, defendant should be granted judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Deborah A. Bynum

DEBORAH A. BYNUM
Assistant Director

s/ Lauren S. Moore

LAUREN S. MOORE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640

OF COUNSEL:

ANTHONY C. WILLIAMS
Major, U. S. Marine Corps
Litigation Attorney
Office of the Judge
Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard,
(Bldg 33)
Washington, DC 20374-5066
Telephone: (202) 685-4596

April 27, 2006

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on the 27th day of APRIL, 2006, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that the parties may access this filing through the Court's system.

/s/ Lauren S. Moore