

**United States** of America

## DEPARTMENT OF THE NAVY

*Washington, D.C.,* 20374-5066

**I hereby certify** *that the annexed* 100 pages constitute a true and accurate copy of the administrative file of the Board for ████████████ records in the case of Colonel Robin C. Brookins, ████████████ uch records being kept in the ordinary course of official business under my official supervision and custody

*on file in the* Board for Correction of Naval Records

W. DEAN PFEIFFER
Executive Director
*(Official title)*
Board for Correction of Naval Records
Washington, D. C. 20370

### OFFICE OF THE SECRETARY

**I hereby certify** *that* W. Dean Pfeifer

*who signed the foregoing certificate, was at the time of signing* Executive Director, Board for Corrections of Naval Records *and that full faith and credit should be given his certification as such.*

**In testimony whereof,** *I have hereunto set my hand and caused the Seal of the Navy Department to be affixed this* 6th *day of* March, *two thousand* Six

H.H. DRONBERGER
tain, JAGC, U.S. Navy
ant Judge Advocate General
(Law)
For the Secretary of the Navy

NAVJAG 5800/12 (REV. 1-00)



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
(MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

October 7, 2003

Colonel Robin C. Brookins, USMCR
165 Weatherington Road
Jacksonville, North Carolina 28546

Dear Colonel Brookins:

This correspondence is in response to your letter of August 15, 2003, in which you seek reconsideration of the denial of your petition to the Board for Correction of Naval Records (BCNR) by my predecessor, Mr. Joseph G. Lynch.

Mr. Lynch carefully considered the BCNR recommendation in conjunction with the information contained in the record. Based on this review, he determined that relief was not warranted. Further reconsideration of this decision within the Department of the Navy is not appropriate. You may, however, seek judicial review in a court of competent jurisdiction.

I regret that a more favorable reply could not be provided.

Sincerely,

Robert T. Cali
Assistant General Counsel
(Manpower and Reserve Affairs)

**165 Weatherington Road**
**Jacksonville, North Carolina 28546**
**Telephone: (910) 353-4591**
**e-mail: rbrookins@earthlink.net**

August 15, 2003

## CERTIFIED MAIL

Docket No: 5579-01

Assistant General Counsel for
Manpower and Reserve Affairs
Attn: Mr. Cali
Department of the Navy
2 Navy Annex
Washington, DC 20370-5100

Dear Mr. Cali:

Thank you for your prompt response to my letter to Mr. Lynch dated June 20, 2003 concerning my petition to the Board for Correction of Naval Records (BCNR).

As you know, the BCNR unanimously agreed that the evidence presented in my petition showed that I was involuntarily separated from active duty in violation of the specific provisions of 10 USC 12686(a) without the express approval of the Secretary of the Navy, and that I should receive "retired pay...under a purely military retirement system."

The fact that Mr. Lynch rejected this unanimous recommendation of the BCNR and all of the clear and compelling evidence presented on my behalf out-of-hand and without benefit of a fair and impartial independent investigation on his part is, in my view, both patently unjust and clearly violation of "due process."

Based on the foregoing, I respectfully requested that my petition and the recommendation of the BCNR be reconsidered by your office, and that I be notified as soon as possible of your decision.

Very truly yours,

Robin C. Brookins
Colonel, USMCR



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
(MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

July 10, 2003

Colonel Robin C. Brookins, USMCR
165 Weatherington Road
Jacksonville, North Carolina 28546

Dear Colonel Brookins:

This correspondence is in response to your June 20, 2003 letter to my predecessor, Mr. Joseph G. Lynch, in which you seek information regarding his rejection of the recommendation made by the Board for Correction of Naval Records on your petition.

Mr. Lynch retired from the federal government in January 2003. As such, I am only able to provide the attached documentation that memorializes Mr. Lynch's decision in your case.

I trust this information will be helpful to you.

Sincerely,

Robert T. CALI
Assistant General Counsel
(Manpower and Reserve Affairs)

Attachment

00003



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
(MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

OCT 23 2002

MEMORANDUM FOR THE EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
NAVAL RECORDS

Subj:  REVIEW OF NAVAL RECORD OF LTCOL ROBIN C. BROOKINS, USMCR,
███████ 62

   I have considered the recommendations of the Board for
Correction of Naval Records (BCNR) that petitioner's record be
corrected to show that she continued to serve on active duty
until the date she first became eligible for a 20 year active
duty retirement.  This recommendation is rejected.  Under the
particular circumstances of this case, I am not persuaded that
petitioner's separation from active duty was involuntary as that
term is used in 10 U.S.C. Sec. 12686(a).  Accordingly,
petitioner's request is denied.

JOSEPH G. LYNCH
Assistant General Counsel
(Manpower and Reserve Affairs)

## BROOKINS NOTES

Reservist – LtCol

Serving on ADSW @ Consolidated Tax Ctr, Camp Lejeune until 5/26/00 when she was denied an extension b/c she was approaching18 yrs of AD & therefore eligible to claim sanctuary under Title 10 USC Section 12686.

12686 prohibits involuntary release of reservist w/18 yrs of AD…must be retained until eligible for retirement…only exception (waiver) requires SECNAV approval.

Command made strong pitch for P b/c of large AD, dependent, and retired population to serve during tax season.  At time, P verbally agreed to waive sanctuary as she had done in the past & accepted orders that contained waiver.

At time of her release in May 2000, P had 18 yrs, 3 mo's & 21 dats of AD.

P applies to BCNR asserting that she did not consent to leave AD in May 2000 & should be returned to AD until retirement eligible.

USMC COMMENT.  RAM…prior to ADSW was personally informed that duty not for purpose of claiming AD retirement…P understood & stated not her intent to claim sanctuary…same understanding noted in several telephone calls…sep voluntary b/c not raised at time of release.  SJA TO CMC – Waiver not an issue b/c she did not claim at time of release…even if she did, would not have been granted b/c of her personal assertions that she would not make claim…her actions border on fraud!

BCNR – Had over 18 yrs of service at time of separations…HQMC previously opined that waiver auth not delegated to CMC therefore "waiver" not enforceable…correct record to reflect continuation on AD until retirement eligible as a LtCol (not Col b/c promo after separation).



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
· (MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

OCT 23 2002

MEMORANDUM FOR THE EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
NAVAL RECORDS

Subj:  REVIEW OF NAVAL RECORD OF LTCOL ROBIN C. BROOKINS, USMCR,
██████ 62

I have considered the recommendations of the Board for
Correction of Naval Records (BCNR) that petitioner's record be
corrected to show that she continued to serve on active duty
until the date she first became eligible for a 20 year active
duty retirement.  This recommendation is rejected.  Under the
particular circumstances of this case, I am not persuaded that
petitioner's separation from active duty was involuntary as that
term is used in 10 U.S.C. Sec. 12686(a).  Accordingly,
petitioner's request is denied.

JOSEPH G. LYNCH
Assistant General Counsel
(Manpower and Reserve Affairs)

**165 Weatherington Road**
**Jacksonville, North Carolina 28546**
**Telephone: (910) 353-4591**
**e-mail: rbrookins@earthlink.net**

June 20, 2003

**CERTIFIED MAIL**

Docket No: 5579-01

Assistant General Counsel for
Manpower and Reserve Affairs
Attn: Mr. Lynch
Department of the Navy
2 Navy Annex
Washington, DC 20370-5100

Dear Mr. Lynch:

On October 25, 2002 Mr. Pfeiffer, the Executive Director of the Board for Correction of Naval Records (BCNR), informed me that my petition, while receiving unanimous approval of the Board, was subsequently disapproved by your office after "...an independent review of the Board's proceedings...."

On December 12, 2002, I contacted Mr. Pfeiffer and requested a complete copy of the independent review together with all statements, enclosures and attachments. This request was made in anticipation of preparing and submitting a rebuttal as well as new and material evidence.

On January 15, 2003 Mr. Pfeiffer informed me that after consultation with you, he was informed that the only documentation you considered, when "...you decided to exercise your desecration and deny the Board's recommendation...", was the same documentation used by the BCNR.

I find this to be both confusing and disconcerting, since no other information was provided to you and your conclusions were apparently diametrically opposed to those of the Board.

In order for me to exercise my right to appeal your unilateral decision, it is requested that you provide both the rationale and any specific case or agency law utilized in reaching your decision in my case.

Very truly yours,

Robin C. Brookins
Colonel, USMCR



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

TRG
15 January 2003

LTCOL ROBIN C BROOKINS USMCR
165 WEATHERINGTON ROAD
JACKSONVILLE  NC  28546

Dear Colonel Brookins:

This letter responds to your request under the Freedom of
Information Act, dated 12 December 2002.  However, since the
information concerns you, it is being forwarded under the
Provisions of the Privacy Act.  Your request was received in
this office on 14 January 2003.

I have consulted with the Assistant General Counsel (Manpower
and Reserve Affairs).  Mr. Lynch informed me that the only
documentation he considered, when he decided to exercise his
discretion and deny the Board's recommendation in your case, was
the Report of Proceedings with enclosure (1).

A copy of that Report with enclosure (1) is enclosed for your
information.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure

00008



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

TRG
Docket No: 5579-01
12 September 2002

From:   Chairman, Board for Correction of Naval Records
To:     Secretary of the Navy

Subj:   REVIEW OF NAVAL RECORD OF LTCOL ROBIN C. BROOKINS, USMCR,
████████62

Ref:    (a) Title 10 U.S.C. 1552

Encl:   (1) Case Summary
        (2) Subject's naval record

1.  Pursuant to the provisions of reference (a), Petitioner, a
commissioned officer in the Marine Corps Reserve, filed an
application with this Board requesting that her record be
corrected to show that she was retained on active duty until she
qualified for active duty retirement, vice being released from
active duty on 26 May 2000.

2.  The Board, consisting of Mr. Brezna, Mr. Milner and Mr.
Neuschafer, reviewed Petitioner's allegations of error and
injustice on 4 September 2002 and, pursuant to its regulations,
determined that the corrective action indicated below should be
taken on the available evidence of record.  Documentary material
considered by the Board consisted of the enclosures, naval
records, and applicable statutes, regulations and policies.

3.  The Board, having reviewed all the facts of record pertaining
to Petitioner's allegations of error and injustice, finds as
follows:

    a.  Before applying to this Board, Petitioner exhausted all
administrative remedies available under existing law and
regulations within the Department of the Navy.

    b.  Petitioner's application was filed in a timely manner.

    c.  Petitioner was serving as officer in charge of a
consolidated tax center when her request for further Active Duty
for Special Work (ADSW) orders, until 26 May 2000 was denied
because she was approaching 18 years of active duty and would be
eligible to claim sanctuary under the provisions of Title 10
U.S.C. 12686.  That provision of law states that a reserve
officer with 18 years of active duty cannot be involuntarily
released from active duty, but must be retained on active duty
until he or she qualified for retirement.  The law further allows
the Secretary of the Navy to require a waiver of the foregoing

sanctuary provisions as a condition to the issuance of orders.

d.  Petitioner's command made a strong request to
Headquarters Marine Corps (HQMC) that orders be issued to
Petitioner noting that the command had assumed that such orders
would be routinely issued since no one else was available and
qualified for this duty given the fact that the tax season had
already begun.  It was further noted that the base was
responsible for tax preparation for 142,000 active duty
personnel, their families, and a large retirement community.
After discussion, Petitioner verbally agreed to waive sanctuary
as she had done in the past,and accepted orders that contained
that waiver.  She subsequently served on ADSW from 28 February
until 26 May 2000.  HQMC states that at the time of her release
from active duty on 26 May 2000 she had completed 18 years, 3
months and 21 days of active duty. She is eligible for reserve
retired pay at age 60.

e.  Petitioner applied to this Board stating that she did
not consent to leave active duty on 26 May 2000 and requested
that she be returned to active duty until she is eligible to
retire with 20 years of active duty.  Since her application, she
has been selected for colonel (COL; O-6).

f.  Attached to enclosure (1) are three advisory opinions
from HQMC.  The first opinion, from the Reserve Affairs Personnel
Management Branch (RAM), states, in part, as follows:

> .... Prior to being approved to perform this period of
> ADSW, (Petitioner) was personally informed by Reserve
> Affairs Personnel Management Branch (RAM) that ADSW
> service is not for the purpose of claiming active duty
> retirement. (Petitioner) then stated that she
> understood and it was specifically not her intent to
> claim sanctuary.  As a result, an agreement was reached
> with the understanding that she sign a sanctuary
> waiver; and she would not seek Sanctuary Zone
> protection ....

The advisory opinion notes that RAM considers her separation to
be voluntary since she did not request sanctuary prior to release
from active duty.  Further, a return to active duty solely to
qualify for retirement would be contrary to Title 10 U.S.C.
12735, service policy, and would raise equity issues with other
Marines.  The second advisory opinion, also from RAM, states, in
part, as follows:

> .... (Petitioner) personally stated ..... several
> times, both over the phone and in person, that she had

2

> no intention of declaring sanctuary. She also
> indicated that she would readily sign any statement to
> that effect. .....

This advisory opinion concludes that the evidence shows that her
separation was voluntary and that she has the burden to show
otherwise.

g. The third advisory opinion, from the Staff Judge
Advocate to the Commandant of the Marine Corps (SJA). is also
attached to enclosure (1) and opines that the Marine Corps
implementation of the Secretary of the Navy's waiver provision
under 10 U.S.C. 12686 is not an issue because of the timing of
Petitioner's request. She was not involuntarily released from
active duty and left active duty without claiming sanctuary
protection. The opinion notes that the Secretary of the Navy did
not approve a waiver in this case. The advisory opinion
concludes as follows:

> .... Her time to claim sanctuary has long passed. And
> even had she claimed sanctuary while on active duty,
> granting her request would have been problematic
> because of her exhaustive, explicit, and pervasive
> assertions that she would not claim sanctuary as a
> condition precedent to accepting orders. Her actions
> border on fraud.

h. Petitioner states in her rebuttal to the advisory
opinion that she did not ask for sanctuary because of the waiver
paragraph that was placed in her ADSW orders. She also points
out that since her release from active duty, she has continued
as an active participant in the reserve program and has been
selected for COL. She has now been transferred to the Individual
Ready Reserve because she is no longer eligible for ADSW orders
and cannot be mobilized. Also attached to enclosure (1) is her
acknowledgement that if she is granted active duty retirement
that it will be in the grade of LTCOL (LTCOL; O-5).

i. The Board is aware that in several similar cases, the
SJA has opined that HQMC's practice of requiring a waiver of the
sanctuary provisions may not be legally enforceable. In this
regard, 10 U.S.C. 12686 authorizes the Secretary require such a
waiver, but no such authority has been delegated to HQMC by the
Secretary.

CONCLUSION:

Upon review and consideration of all the evidence of record the
Board concludes that Petitioner's request warrants favorable
action. The Board notes that she had over 18 years of active

3

duty when she accepted the last period of active duty, and was required to sign a waiver of the sanctuary provision in order to reach that length of service. Additionally, she requested and was granted further ADSW orders only by agreeing to another waiver. HQMC has previously opined that since the authority to require such a waiver has not been delegated to HQMC by SECNAV, the waiver of sanctuary may not be legally enforceable. The Board has essentially agreed with this position in similar cases. Given the previous advisory opinions and actions of the Board, the Board believes that since the waiver was improper, the issue of whether or not her release from active duty was voluntary is essentially moot. The Board further believes that this reasoning applies to her assertion that she would not claim sanctuary in order to obtain the ADSW orders.

Therefore, the Board concludes that Petitioner's record should be corrected to show that she was not released from active duty on 26 May 2000, but continued to serve until the date she first become eligible for a 20 year active duty retirement. This date is estimated to be 1 February 2002, but the actual date will be computed by HQMC and adjusted as appropriate. Given her agreement and the fact that she has not served the required time as a COL the retirement should be in the grade of LTCOL.

That this Report of Proceedings be filed in Petitioner's naval record so that all future reviewers will understand his retired status.

RECOMMENDATION:

a.  That Petitioner's naval record be corrected to show that she was not released from active duty on 26 May 2000 but continued to serve on active duty until the earliest date she qualified for 20 year active duty retirement and was retired in the grade of LTCOL. The actual date of retirement will be computed by HQMC.

b.  That this Report of Proceedings be filed in Petitioner's naval record.

4.  It is certified that a quorum was present at the Board's review and deliberations, and that the foregoing is a true and complete record of the Board's proceedings in the above entitled matter.


ROBERT D. ZSALMAN                    ALAN E. GOLDSMITH
Recorder                             Acting Recorder


4


00012

5.  The foregoing report of the Board is submitted for your
review and action.

W. DEAN PFEIFFER

Reviewed and approved:

5



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
(MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

OCT 23 2002

MEMORANDUM FOR THE EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
NAVAL RECORDS

Subj:  REVIEW OF NAVAL RECORD OF LTCOL ROBIN C. BROOKINS, USMCR,
▇▇▇▇▇▇ 62

     I have considered the recommendations of the Board for
Correction of Naval Records (BCNR) that petitioner's record be
corrected to show that she continued to serve on active duty
until the date she first became eligible for a 20 year active
duty retirement.  This recommendation is rejected.  Under the
particular circumstances of this case, I am not persuaded that
petitioner's separation from active duty was involuntary as that
term is used in 10 U.S.C. Sec. 12686(a).  Accordingly,
petitioner's request is denied.

                    JOSEPH G. LYNCH
                    Assistant General Counsel
                    (Manpower and Reserve Affairs)

Subj:            LTCOL ROBIN C. BROOKINS, USMCR

Action Requested:  That she be granted sanctuary and retired
                   with 20 years of active duty

- - - - - - - - - - - - - - - - - -

DD Form 149 with attachment          Tab A

Three advisory opinions from         Tab B
  Recommending denial of her
  Request

Petitioner's rebuttal to the         Tab C
  Advisory opinions

Petitioner's acknowledgement         Tab D
  That if she is granted sanctuary
  And retired she will retire as
  A LTCOL

Brookins, Robin C.

---

Correct record to show that she is retired with 20 years of active duty

---

| 10Dec76 | Commissioned 2dLT USMCR |
| 12Feb80 | Accepted commission in USMC |
| 5Oct81 | Promoted to CAPT |
| 1Nov91 | Honorable Discharge paid Separation pay |
| 1Nov91 | Accepted appointment in USMCR |
| 10ct92 | Promoted to MAJ (O-4), USMCR |
| 1997 | Promoted to LTCOL (O-5), USMCR |
| 8Jun99 | Issued Notification of Entitlement to Retired pay at Age 60 |

Issued orders to report to
extended active duty for the
period 28 Feb 00 to 26 May 00
Orders contained the following
provision:
"..I understand that I may
become eligible for sanctuary
zone protection under Title 10,
United States Code, Section 12686(a).
As a condition to acceptance of
These orders, however, pursuant to
Section 12686(b), I hereby waive the
Applicability of Section 12686(a) to
The period of active duty covered by
These orders.  I understand that the
Effect of these waiver is to remove
Any sanctuary zone protection that
Might have otherwise applied as a
Result of the execution of these orders."

| 26May00 | Released from active duty Advisory opinion states that she Had completed 18 years, 3 months & 21 days Of active duty as of 26 May 2000 |
| 6Jul01 | Applied to BCNR requesting sanctuary and retirement with 20 years of active duty |

Selected to COL (O-6) USMCR

**DRS 38**

## APPLICATION FOR CORRECTION OF MILITARY RECORD
### UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552
*(Please read instructions on reverse side BEFORE completing application.)*

Form Approved
OMB No. 0704-0003
Expires Aug 31, 2000

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE ~~DRESS ON THE BACK~~
OF THIS PAGE.

PRIVA[

Brookins, Robin C.

*05579-01*

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction ... military record. The form is used by Board members for revie ... pertinent information in making a determination of relief throu ... correction of a military record.

...rovide identifying ...ication. The ... to assure proper identification of the individual and appropriate records.

### 1. APPLICANT DATA

**a. BRANCH OF SERVICE (X one)**

| ARMY | NAVY | AIR FORCE | X | MARINE CORPS | COAST GUARD |
|------|------|-----------|---|--------------|-------------|

**b. NAME (Last, First, Middle Initial) (Please print)**
Brookins    Robin    C

**c. PRESENT PAY GRADE**
05/LtCol

**d. SERVICE NUMBER (If applicable)**
214688462

**e. SSN**
■■■■■■

**2. TYPE OF DISCHARGE (If by court-martial, state type of court)**
None

**3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES (Active duty, Retired, Reserve, etc.)**
IMA

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY**

**5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD**
Reserve Support Unit, Marine Corps Base
Camp Lejeune, NC 28542-0081

**6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.**
(No expense to the Government) (X one)
YES    |X| NO

**7. COUNSEL (If any)**

**a. NAME (Last, First, Middle Initial)**
Self

**b. ADDRESS (Street, Apartment, City, State and ZIP Code)**
100 Coachman Ct.
Jacksonville, NC 28546

**8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:**
Please see attachment

**9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:**
Please see attachment

**10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING: (If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)**
Please see attachment

**11. ALLEGED ERROR OR INJUSTICE**

**a. DATE OF DISCOVERY**
20000526

**b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION.**

**12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.**

| SPOUSE | WIDOW | WIDOWER | NEXT OF KIN | LEGAL REPRESENTATIVE | OTHER (Specify) |
|--------|-------|---------|-------------|----------------------|-----------------|

**13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM. (U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)**

**14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE (Applicant should forward notification of all changes of address.)**
100 Coachman Ct.
Jacksonville, NC 28546

**b. TELEPHONE NUMBER (Include Area Code)**
(910) 545-2063

**DOCUMENT NUMBER**
(Do not write in this space.)
JUL 17 2001

**15. DATE SIGNED**
20010706

**16. SIGNATURE (Applicant must sign here.)**

**DD FORM 149, SEP 1997 (EG)**    PREVIOUS EDITION IS OBSOLETE.    Designed using Perform Pro, WHS/DIOR, Sep 97

## BLOCK 8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:

1.  Pursuant to the references, I request that my Official Military Personnel file be corrected to state that I am still on active duty status on the following grounds:

    a.  That I did not consent to leave active duty on 26 May 2000 in accordance with US Code: Title 10, Section 12646.

2.  I further request that I be returned to active duty until I complete twenty years of active service and am eligible to apply for active duty retirement.

## BLOCK 9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:

### STATEMENT OF FACTS

1.  On or about 28 February 2000, I received Active Duty Special Work orders for eighty-nine days (enclosure 1).

2.  At the time of receipt of these orders, I had 6529 active duty points. When it came time to conclude these orders, it was my intention to seek active duty retirement. This was due to the fact I had now accumulated 6681 active duty points (enclosure 2). This is translated into 18.56 years of active duty.

#### DISCUSSION

#### A.

THE CHANGE IN MY STATUS FROM ACTIVE DUTY TO INACTIVE RESERVE STATUS CONSTITUTED A SUBSTANTIVE ERROR

1.

It was the understanding that when I signed the NAVMC 11060 form, that it was for the settlement of pay only (enclosure 3). It was and is my intention to remain on active duty until eligible for active duty retirement. There was no DD214 issued for this period of ADSW.

## BLOCK 10: IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING:

References:

    (a)  US Code: Title 10, Section(s) 12646, 12686
    (b)  MCO P1900.16 Marine Corps Separation and Retirement Manual

Enclosures:

    (1)  ADSW Orders; Case of Lieutenant Colonel Robin C. Brookins
    (2)  Career Retirement Credit Report; Case of Lieutenant Colonel Robin C. Brookins
    (3)  NACMC 11060; Case of Lieutenant Colonel Robin C. Brookins

**Sec. 12686. Reserves on active duty within two years of retirement eligibility: limitation on release from active duty**

- (a) Limitation. - Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary.

- (b) Waiver. - With respect to a member of a reserve component who is to be ordered to active duty (other than for training) under section 12301 of this title pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order. In carrying out this subsection, the Secretary concerned may require that a waiver under the preceding sentence be executed before the period of active duty begins.

**Sec. 12646. Commissioned officers: retention of after completing 18 or more, but less than 20, years of service**

- (a) If on the date prescribed for the discharge or transfer from an active status of a reserve commissioned officer he is entitled to be credited with at least 18, but less than 19, years of service computed under section 12732 of this title, he may not be discharged or transferred from an active status under chapter 573, 1407, or 1409 of this title or chapter 21 of title 14, without his consent before the earlier of the following dates -
  - (1) the date on which he is entitled to be credited with 20
    years of service computed under section 12732 of this title; or
  - (2) the third anniversary of the date on which he would
    otherwise be discharged or transferred from an active status.

- (b) If on the date prescribed for the discharge or transfer from an active status of a reserve commissioned officer he is entitled to be credited with at least 19, but less than 20, years of service computed under section 12732 of this title, he may not be discharged or transferred from an active status under chapter 573, 1407, or 1409 of this title or chapter 21 of title 14, without his consent before the earlier of the following dates -
  - (1) the date on which he is entitled to be credited with 20
    years of service computed under section 12732 of this title; or
  - (2) the second anniversary of the date on which he would
    otherwise be discharged or transferred from an active status.

- (c) An officer who is retained in an active status under subsection (a) or (b) is an additional number to those otherwise authorized.

- (d) Subsections (a) and (b) do not apply to -
  - (1) officers who are discharged or transferred from an active
    status for physical disability, for cause, or because they have
    reached the age at which transfer from an active status or
    discharge is required by law; or
  - (2) commissioned warrant officers.

- (e)
  - (1) A reserve commissioned officer on active duty (other than for training) or full-time National Guard duty (other than full-time National Guard duty for training only) who, on the date on which the officer would otherwise be removed from an active status under section 6389, 14513, or 14514 of this title or section 740 of title 14, is within two years of qualifying for retirement under section 3911, 6323, or 8911 of this title may, in the discretion of the Secretary concerned and subject to paragraph (2), be retained on that duty for a period of not more than two years.
  - (2) An officer may be retained on active duty or full-time National Guard duty under paragraph (1) only if -
    - (A) at the end of the period for which the officer is retained
      the officer will be qualified for retirement under section 3911,
      6323, or 8911 of this title; and
      (B) the officer will not, before the end of that period, reach
      the age at which transfer from an active status or discharge is
      required by this title or title 14.
  - (3) An officer who is retained on active duty or full-time National Guard duty under this section may not be removed from an active status while on that duty.

d.  The DD Form 214, once issued, will not be reissued except:

(1) When directed by appropriate appellate authority, executive order, or by direction of the Secretary of the Navy;

(2) When it is determined by the CMC that the original DD Form 214 cannot be properly corrected by issuing a DD Form 215 or when the correction would require issuing more than two DD Forms 215; or,

(3) When two DD Forms 215 have been issued and additional correction is required.

e.  When circumstances require the issue or reissue of the DD Form 214, an appropriate entry stating the fact and the date of such action will be recorded in item 18, Remarks, unless specifically denied by the authority referenced in subparagraph 1202.2d(1).

3.  DD Form 214 will not be issued to:

a.  Marines discharged for the purpose of immediate reenlistment in the Marine Corps and remaining on active duty;

b.  Marines found physically disqualified upon reporting for active duty and who do not enter actively upon duties per orders;

c.  Marines whose active duty, active duty for training, or AR duty is terminated by death;

d.  Marines released from a period of less than 90 days active duty for training, except as specified in subparagraph 1202.2b;

e.  Enlisted Marines receiving temporary appointment to warrant or commissioned officer grade;

f.  Marines who have temporary officer status terminated and remain on active duty (these Marines will receive a DD Form 214 upon separation from enlisted status for the purpose of transferring to the FMCR effective on the same date of reversion);

g.  Personnel removed from the TDRL; or,

h. ENLISTED RESERVISTS RELEASED FROM A PERIOD OF ACTIVE DUTY OF LESS THAN 90 DAYS OR DISCHARGED FROM THE RESERVE COMPONENT. ALTHOUGH NOT ISSUED A DD FORM 214, SUCH RESERVISTS WILL BE ASSIGNED THE REENLISTMENT CODES IN APPENDIX J FOR RECORD PURPOSES; E.G., PAGE 11 ENTRIES, DISCHARGE LETTERS, STATEMENTS OF SERVICE, AND MCTFS ENTRIES IN ACCORDANCE WITH MCO P1080.40 (MCTFS PRIM).

"1.  RESERVE OFFICERS RELEASED FROM A PERIOD OF LESS THAN 90 DAYS OF ACTIVE DUTY OR ACTIVE DUTY FOR TRAINING."

(volun PAGE 02 RUEACMC2400 UNCLAS
codes
entrie

4.  Ge

a.

Marine prior to departure from the separation activity on the effective date of separation.  Copy 4 of the DD Form 214 containing the statutory or

# ORIGINAL ORDERS

OPD-7A

3 MAR 2000

FROM:  CG MCRSC KANSAS CITY MO//OPS//
TO:    RSU MCB CAMP LEJEUNE NC//JJJ//

INFO      /CMC WASHINGTON DC//RA/RAM7//
          CG MCRSC KANSAS CITY MO//OPS//

PASS TO LTCOL ROBIN BROOKINS 214688462 USMCR

SUBJ:  ADSW; CASE OF LTCOL  ROBIN C  BROOKINS

REF:   (A)  MCO P1001R.1_ (MCRAMM)
       (B)  NAVMC 11350 DTD 000228
       (C)  MANMED, USN CHAP 15
       (D)  JFTR, CHAP 4
       (E)  MCO P5800.8_ (LEGAL ADMIN MANUAL)
       (F)  SECNAVINST 1770.3
       (G)  MCO P1080.40, MCTFS PRIM
       (H)  MCO P7220.31_, CHAP 8, SEC 4 (JFPM)

1.  THIS MESSAGE CONSTITUTES ORIGINAL ORDERS.  YOU ARE DIRECTED TO
ENDORSE THESE ORDERS "ORIGINAL ORDERS RECEIVED". NOTING THE DATE AND
PLACE OF RECEIPT.  YOU ARE ADVISED THAT THE DISBURSING OFFICER MAY
REFUSE TO ISSUE PAYMENTS IN THE ABSENCE OF THIS ENDORSEMENT.

2.  IN ACCORDANCE WITH THE AUTHORIZATION CONTAINED IN REFERENCES (A)
AND (B), AND SUBJECT TO THE PROVISIONS OF REFERENCES (C) THROUGH (H),
YOU ARE ASSIGNED TO ADSW ON SUCH A DATE THAT WILL ENABLE YOU TO
REPORT TO CO, RSU, BLDG 1211, CEDAR ST, JACKSONVILLE, NC 28542 NO
LATER THAN 0730 ON 28 FEB 2000 FOR DUTY WITH TAX CENTER (RUC 31015
MCC 013).  PERIOD OF DUTY: 28 FEB 2000 TO 26 MAY 2000 (089 DAYS).
YOU ARE A MEMBER OF RUC 88836.

3.  PAY STATUS:  WITH PAY AND ALLOWANCES:  PEBD:  760707

4.  FISCAL INFORMATION IS AS FOLLOWS:
P&A:      AA 1701108.2732 011 286320 067443 2I MOBF70 118000071500
EST COST:    $16804.00
PER DIEM:
EST COST:    $0.00
TRAVEL:   AB 1701108.2732 021 286320 067443 2D MOBF70 118000074500
EST COST:    $7.00
TRAVEL ADVANCE CHARGEABLE TO TTC 1K AND COST CODE:  118 214688462.
SDN FOR THIS PERIOD OF DUTY IS M6852200TOOBF70.
MEMBER IS AUTHORIZED ADVANCE PERDIEM NOT TO EXCEED 80% OF LODGING AND
MEALS AND INCIDENTALS.

5.  CONFIRMATION ORDS AUTH PER CO, RSU, CAMP LEJEUNE, NC ON 000228.

3 MAR 2000

SUBJ: ADSW; CASE OF LTCOL ROBIN C BROOKINS



DUE TO THE URGENCY OF THE TVL INVOLVED, IT WAS NOT POSSIBLE TO ISSUE
WRITTEN ORDS PRIOR TO THE COMMENCEMENT OF THE TVL.

6. THE PLACE FROM WHICH YOU ARE ORDERED TO SUBJECT DUTY IS INDICATED
AFTER YOUR NAME. UPON COMPLETION OF SUBJECT DUTY, YOU WILL RETURN TO
THE ADDRESS INDICATED AFTER YOUR NAME AND UPON ARRIVAL YOU WILL STAND
RELEASED FROM SUBJECT DUTY.

7. YOU ARE SUBJECT TO THE UNIFORM CODE OF MILITARY JUSTICE WHILE
PERFORMING DUTY UNDER THESE ORDERS.

8. IF FOR ANY REASON YOU ARE UNABLE TO CARRY OUT THESE ORDERS, YOU
ARE DIRECTED TO RETURN THEM TO THIS COMMAND (OPD), WITH A
NOTIFICATION TO THAT EFFECT. IF YOU DO NOT MEET THE WEIGHT/PERSONAL
APPEARANCE STANDARDS OF MCO 6100.10A, IT IS YOUR RESPONSIBILITY TO
DECLINE THESE ORDERS.

9. WITHIN FIVE WORKING DAYS AFTER COMPLETION OF THIS DUTY, FORWARD
ORIGINAL ORDERS, REPORTING AND DETACHING ENDORSEMENTS, COMPLETED
ORIGINAL DD FORM 1351-2 (TRAVEL VOUCHER) AND LEGIBLE RECEIPTS, PLUS
ONE COMPLETE COPY TO THE COMMANDING GENERAL, MARINE CORPS RESERVE
SUPPORT COMMAND, 15303 ANDREWS ROAD, KANSAS CITY, MO 64147-1207.
NOTE: MARK THE ENVELOPE ATTN: OPD.

10. USE OF GOVERNMENT FACILITIES NOT REQUIRED AS YOU RESIDE LOCAL
AND WITHIN A REASONABLE COMMUTING DISTANCE OF THE ACTIVE DUTY SITE.

11. WHILE PERFORMING SUBJECT DUTY YOU ARE AUTOMATICALLY COVERED BY
SGLI IN THE AMOUNT OF $200,000 IN ACCORDANCE WITH MCO P1080.38
PARAGRAPH 8066 UNLESS YOU HAVE MADE AN ALTERNATE ELECTION PRIOR TO
THE ISSUANCE OF THESE ORDERS. INSURANCE PREMIUMS WILL BE DEDUCTED
AUTOMATICALLY DURING THE FINAL SETTLEMENT OF YOUR ORDERS.

12. TRAVEL VIA PRIVATELY OWN CONVEYANCE (POC) IS AUTHORIZED. USE OF
POC IS CONSIDERED TO BE ADVANTAGEOUS TO THE GOVERNMENT AND YOU ARE
RESPONSIBLE FOR ALL OPERATING EXPENSES. SUCH USE ENTITLES YOU TO
MILEAGE IN LIEU OF TRANSPORTATION (MALT) AT A RATE OF $0.31 PER MILE
FOR THE OFFICIAL DISTANCE OF THE ORDERED GOVERNMENT TRANSPORTATION
REQUEST (GTR) PLUS PER DIEM. CONSTRUCTIVE TRAVEL WHEN TRAVELING
BETWEEN TWO POINTS IN CONUS, IS USUALLY ONE DAY. THIS IS PARAMOUNT
FOR THE PURPOSE OF DETERMINING NAVAL BENEFITS IN THE EVENT OF YOUR
INJURY OR DEATH WHILE TRAVELING TO OR FROM THE DUTY SITE.

13. RENTAL CAR NOT AUTHORIZED.

14. I, _____, CERTIFY THAT I MEET THE
HEIGHT/WEIGHT STANDARDS AS SET FORTH IN MCO 6100.10B, OR THAT IF I DO
NOT MEET THE HEIGHT/WEIGHT STANDARD, I CERTIFY THAT I DO MEET THE
BODY FAT PERCENTAGE. BY MAKING THIS CERTIFICATION, I ACKNOWLEDGE

2

3 MAR 2000

SUBJ: ADSW; CASE OF LTCOL ROBIN C BROOKINS

THAT I MAY BE SUBJECT TO ADMINISTRATIVE ACTION OR DISCIPLINE UNDER
THE UCMJ FOR MAKING A FALSE OFFICIAL STATEMENT SHOULD I BE FOUND TO
HAVE MADE A FALSE CERTIFICATION IN THE EXECUTION OF THESE ORDERS.
NOTE:  IF YOU DO NOT MEET THE MARINE CORPS STANDARDS YOU ARE DIRECTED
TO RETURN THESE ORDERS TO CG, MCRSC (OPD), 15303 ANDREWS ROAD, KANSAS
CITY, MO 64147-1207 UNEXECUTED.

15.  I VOLUNTARILY ACCEPT THESE ORDERS TO ACTIVE DUTY FOR SPECIAL
WORK.  IN DOING SO, I UNDERSTAND THAT I MAY BECOME ELIGIBLE FOR
SANCTUARY ZONE PROTECTION UNDER TITLE 10, UNITED STATES CODE, SECTION
12686(A).  AS A CONDITION TO ACCEPTANCE OF THESE ORDERS, HOWEVER,
PURSUANT TO SECTION 12686(B), I HEREBY WAIVE THE APPLICABILITY OF
SECTION 12686(A) TO THE PERIOD OF ACTIVE DUTY COVERED BY THESE
ORDERS.  I UNDERSTAND THAT THE EFFECT OF THIS WAIVER IS TO REMOVE ANY
SANCTUARY ZONE PROTECTION THAT MIGHT HAVE OTHERWISE APPLIED AS A
RESULT OF THE EXECUTION OF THESE ORDERS.

16.  PHYSICAL OR MENTAL INJURY OR ILLNESS THAT WOULD PROHIBIT, HAMPER
OR PERCLUDE THE EXECUTION OF THESE ORDERS MUST BE REPORTED TO THE
MEDICAL DEPARTMENT REPRESENTATIVE FOR DETERMINATION OF PHYSICAL OR
MENTAL QUALIFICATION PRIOR TO EXECUTION.

17.  DRAFTER OF THESE ORDERS WAS: LCPL SMITH JS.

G. D. MEEHAN
BY DIRECTION

```
                    CAREER RETIREMENT CREDIT RECORD              06/06/2001
                                                                 09:42:10
SSN:                    NAME:  BROOKINS, ROBIN C
RUC: 88836   COMPANY CODE:     PRES-GRADE: O5    RECSTAT: E    COMP CODE:
             PLT CODE: LEJE    TRNGRP: B   R-RECSTAT: 0    RCOMP CODE: KF

ANNV: 20010707 PEBD: 19760707 DOB: 19540301 MAND: 20050101  CERTDATE: 200008
                      INACDU        MBR-  TOTAL  INACDU  ACDU        TOTAL
ANNIVERSARY YEAR      POINTS        SHIP  INACDU  PNTS  POINTS       PNTS  SAT
INCLUSIVE DATES   PD  NPD COR FHD   PNTS  PNTS    CRED  PD   NPD     CRED  YEAR


20000707-00000000 066 000 000 000   14   0080    75    042 000      117   NO
19990707-20000706 047 000 000 000   15   0062    62    313 000      366   YES
19980707-19990706 048 000 000 000   15   0063    61    239 000      300   YES
19970707-19980706 048 000 000 000   15   0063    63    234 000      297   YES
19960707-19970706 060 000 000 000   15   0075    75    233 000      308   YES
19950707-19960706 048 000 000 000   15   0063    60    069 000      129   YES
19940707-19950706 054 002 000 000   15   0071    60    012 000      072   YES
19930707-19940706 047 002 000 000   15   0064    60    033 000      093   YES
19920707-19930706 050 000 000 000   15   0065    60    014 000      074   YES
19910707-19920706 016 000 000 000   10   0026    26    118 000      144   YES
19900707-19910706 000 000 000 000   00   0000    00    365 000      365   YES
19890707-19900706 000 000 000 000   00   0000    00    365 000      365   YES
19880707-19890706 000 000 000 000   00   0000    00    365 000      365   YES
19870707-19880706 000 000 000 000   00   0000    00    366 000      366   YES
19860707-19870706 000 000 000 000   00   0000    00    365 000      365   YES
19850707-19860706 000 000 000 000   00   0000    00    365 000      365   YES
19840707-19850706 000 000 000 000   00   0000    00    365 000      365   YES
19830707-19840706 000 000 000 000   00   0000    00    366 000      366   YES
19820707-19830706 000 000 000 000   00   0000    00    365 000      365   YES
19810707-19820706 000 000 000 000   00   0000    00    365 000      365   YES
19800707-19810706 000 000 000 000   00   0000    00    365 000      365   YES
19790707-19800706 000 000 000 000   00   0000    00    366 000      366   YES
19780707-19790706 000 000 000 000   00   0000    00    365 000      365   YES
19770707-19780706 000 000 000 000   00   0000    00    365 000      365   YES
19760707-19770706 000 000 000 000   04   0004    04    261 000      265   YES


--------------------------------COMPLETED-----------------------------------

                              CAREER TOTALS

INACTIVE DUTY POINTS CORRES...... 0000  ACTIVE DUTY POINTS PAID......... 06681
INACTIVE DUTY POINTS PAID........ 0484  ACTIVE DUTY POINTS NON-PAID..... 00000
INACTIVE DUTY POINTS NON-PAID.... 0004  TOTAL ACTIVE DUTY POINTS........ 06681
FUNERAL HONORS DUTY POINTS....... 0000  TOTAL POINTS CREDIT............. 07278
MEMBERSHIP POINTS................ 0148  TOTAL SATISFACTORY YEARS........    24
TOTAL INACTIVE DUTY POINTS....... 0636  TOTAL QUALIFYING SERVICE......24-00000
INACTIVE DUTY POINTS CREDIT...... 0606
```

ENCLOSURE (2)

> full capacity until mid-May. We have 36 personnel on the staff.
>
> The Commandant, in his White Letter on the Electronic Income Tax Filing
> Program, indicates he wants 50% of the personnel stationed at Camp Lejeune
> to use our Tax Center during this year's tax season.
>
> The key to meeting the Commandant's goal, and to success and continued
> improvement in our Tax Center/VITA Program, is to retain LtCol Brookins as
> Tax Center OIC. She is the only officer at this command with the
> knowledge and experience to provide the continuity necessary for our
> program to smoothly transition from last year through the current season.
> Without her corporate memory, I do not think our Tax Center can sustain
> its past record of assisting significantly greater numbers of clients
> every year.
>
> LtCol Brookins is working as the Tax Center OIC under PSRC orders that
> expire in February. As you know from my earlier E-mail on this subject,
> Maj Pete Sennett helped us obtain approval of a request to have LtCol
> Brookins funded as OIC of our Tax Center from 14 February 2000 to 12 May
> 2000. On 23 November 1999, we received an E-mail from Maj Sennett,
> indicating everything was in order. It was only much later (17 December)
> that we were told about RAM-7's view of the 18-year sanctuary problem, and
> its refusal to issue ADSW orders to LtCol Brookins.
>
> If we lose LtCol Brookins in mid-February (the height of the tax season
> for us), we will have a very serious problem. We do not have a
> replacement for her. (Once we were told we had her for the season, we did
> not consider it necessary to groom one.)
>
> I have discussed this issue with LtCol Brookins. She has signed
> "sanctuary waivers" in the past, and is quite willing to do so, again.
> This morning, she sent me an E-mail, which reads: " . . . I have been
> faithfully signing the waivers for many sets of ADSW and I have absolutely
> no problem with continuing to sign them. I have been 'faithfully' signing
> the waiver with the understanding I could continue until service
> limitation (I understand it to be 28 years of commissioned [service] as a
> LtCol and possibly longer if I were fortunate enough to be promoted.) I
> am very much aware that I will not receive retirement until age 60 (if
> Congress doesn't change that along the way)."
>
> In addition to her three seasons of Tax Center experience, I want to point
> out that LtCol Brookins is considerably less expensive than the average
> Marine lieutenant colonel. Because she lives in the local area, she does
> not receive per diem. (At the risk of sounding crass, I think it fair to
> state that we are getting a lot of lieutenant colonel bang for what
> amounts to little more than captain bucks.)
>
> Again, I appreciate your help. We need LtCol Brookins this year (and next
> year, too, if we can get her). If you need more input from me, I'll be
> glad to send it. This is number one on my list of "front burner" items,
> and I'll do whatever it takes to keep LtCol Brookins on board.
>
>                        V/R,
>                        LtCol Feltham

ENCLOSURE (2)



DEPARTMENT OF THE NAVY
HEADQUARTERS UNITED STATES MARINE CORPS
2 NAVY ANNEX
WASHINGTON, DC 20380-1775

IN REPLY REFER TO:
5800
JAR-R/20077
29 Mar 02

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
            NAVAL RECORDS

Subj:  REQUEST FOR ADVISORY OPINION ICO LIEUTENANT COLONEL
       ROBIN C. BROOKINS ████████ 52 USMCR

Ref:   (a) 10 U.S.C. § 12686
       (b) Lieutenant Colonel Brookins DD 149 of 6 Jul 01
       (c) Memo for Exec Dir BCNR 1001 RAM of 2 Nov 01
       (d) Lieutenant Colonel Brookins NAVMC 11060 of
           3 May 00

1.  **Issue**.  You requested our comment on whether the U.S. Marine
Corps could invoke reference (a), which purports to implement a
statutory sanctuary waiver provision, in Lieutenant Colonel
Brookins' case.

2.  **Opinions**

    a.  The lawfulness of the Marine Corps implementation of the
Secretary of the Navy's waiver provision under reference (a) is
not an issue because of the timing of Lieutenant Colonel
Brookins' sanctuary request.

    b.  Lieutenant Colonel Brookins is not entitled to sanctuary
protection.  The Marine Corps did not involuntarily release her
from active duty in violation of reference (a).  Instead, she
*voluntarily* sought and departed active duty.  By statute, once
she left active duty without claiming sanctuary protection, she
may not reclaim that status unless offered another period of
qualifying active duty.

3.  **Analysis**

    a.  Statutory Requirements.  Per reference (a), a Reservist
on active duty (other than for training) within 2 years of
becoming eligible for a purely military retirement may not be
*involuntarily* released from that duty until eligible for retired
or retainer pay.  (Emphasis added.) Exceptions to this
prohibition require SecNav authorization or approval, which did
not occur in this case.

Subj:   REQUEST FOR ... ORY OPINION ICO LIEUTE. : ; :OLONEL
        ROBIN C. BROOKINS          62 USMCR

b.  Factual Background

(1) On or about 28 Feb 00, Lieutenant Colonel Brookins was issued a set of ADSW orders for a period of 89 days.  These orders effectively carried her into sanctuary, and contained a sanctuary waiver clause (where she waived any claim to sanctuary).  Upon completion of these orders on 26 May 00 she had accumulated approximately 18 years, 3 months, and 21 days active duty.

(2) Per reference (b), Lieutenant Colonel Brookins claims she did not consent to leave active duty on 26 May 00, and requests return to active duty until she completes 20 years active service, thus entitling her to an active duty military retirement.

(3) Reference (a), however, prohibits services from *involuntarily* releasing Reservists from active duty who are within 2 years of becoming eligible for retired pay.

(4) Petitioner was not involuntarily released.  Per references (c) and (d), Petitioner sought, performed, and departed active duty with the full knowledge that she was volunteering for the duty – to include voluntarily departing active duty.  At no time while on active duty did she claim sanctuary.  She simply requested and executed her orders – with the full understanding that she was going to voluntarily leave active duty without claiming sanctuary.  The facts suggest a voluntary departure from active duty:

(a) Per reference (c), the Marine Corps hesitated in issuing orders to Lieutenant Colonel Brookins because of the sanctuary issue.  Had she not unequivocally represented she did not intend to seek sanctuary, she would not have been issued ADSW orders.

(b) On her orders to active duty, Lieutenant Colonel Brookings expressly voiced her intent to leave active duty voluntarily by specifically agreeing to waive any claims to sanctuary.[1]  This directly contradicts her statement in reference (c) that, "when it came time to conclude these orders, it was my intention to seek active duty retirement."

---

[1] I voluntarily accept these orders to active duty for special work. In doing so, I understand that I may become eligible for sanctuary zone protection under title 10, United States Code, section 12686(a). As a condition to acceptance of these orders, however, pursuant to section 12686(b), I hereby waive the applicability of section 12686(a) to the period of active duty covered by these orders. I understand that the effect of this waiver is to remove any sanctuary zone protection that might have otherwise applied as a result of the execution of these orders.

2

Subj:   REQUEST FOR ~ , ;ORY OPINION ICO LIEUTE~: : ;OLONEL
        ROBIN C. BROOKINS ▮▮▮▮▮▮ 8462 USMCR

        (c) She offered no statements, representations, or
objections to her release from active duty (or did she demand
sanctuary protection) at the time of her release.  To the
contrary, she left active duty consistent with her orders.

- On 3 May 00, she signed her Travel Pay
  Certificate (reference (c)) requesting
  electronic funds transfer for her travel pay
  home, and acknowledged the type of discharge
  she would receive, lump sum leave due her, and :
  effective date of release;
- She voluntarily relinquished her green Active
  Duty Military Identification Card in May 2000;
- She took leave consistent with what would
  normally be characterized "terminal leave" at
  the end of her ADSW tour; and
- She did not return to work or present herself
  for duty any time after concluding leave on
- 26 May 00.

4.  **Conclusion**.  Reference (a) does not authorize, and
Lieutenant Colonel Brookins is not now entitled, to claim
sanctuary for a *previous* period of active duty from an active
duty for training, inactive duty training, or other non-active
duty status.  Her time to claim sanctuary has long passed.  And
even had she claimed sanctuary while on active duty, granting
her request would have been problematic because of her
exhaustive, explicit, and pervasive assertions that she would
not claim sanctuary as a condition precedent to accepting
orders.  Her actions border on fraud.

5.  **Recommendation**.  Deny Lieutenant Colonel Brookins' request
for sanctuary.

6.  **Point of Contact**.  Lieutenant Colonel David Morey, (703)
614-2510, (DSN) 224.

*K. H. Winters* (signature)

K. H. WINTERS
Staff Judge Advocate to the
Commandant of the Marine Corps
Acting

3

DEPARTMENT OF THE NAVY
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:

1001
RAM-7
14 Aug 01

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
    NAVAL RECORDS

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATION IN THE CASE OF
        LIEUTENANT COLONEL ROBIN C. BROOKINS, ████████2 USMCR

Ref:    (a) Title 10 U.S.C.
        (b) MARCORSEPMAN MCO P1900.16E

Encl:   (1) BCNR ltr AEG:jdh Docket No. 05579-01 of 25 Jul 01

1.  Reserve Affairs cannot support Lieutenant Colonel Brookins
request to return to active duty, under Active Duty Special Work
(ADSW), for the purpose of qualifying for a 20 year active duty
retirement, enclosure (1).

    a.  LtCol Brookins was brought on the ADSW program 28 February
2000 to 26 May 2000 in support of Marine Corps Base, Camp Lejeune
as a Tax representative.  Prior to being approved to perform this
period of ADSW, LtCol Brookins was personally informed by Reserve
Affairs Personnel Management Branch (RAM) that ADSW service is not
for the purposes of claiming an active duty retirement.  LtCol
Brookins then stated that she understood and it was specifically
not her intent to claim sanctuary.  As a result, an agreement was
reached with the understanding that she sign a sanctuary waiver;
and she would not seek Sanctuary Zone protection as stated in
U.S.C. Title 10 section 12686.

    b.  On 3 May 2000 LtCol Brookins signed a Separation/Travel Pay
Certificate (NAVMC 11060) which included her type of discharge,
lump sum leave due member, and effective date of release from
active duty which was 26 May 2000.  At that time, LtCol Brookins
did not make a declaration of sanctuary.

    c.  Upon being voluntarily released from active duty, LtCol
Brookins was not issued a DD214 in accordance with reference (b),
para 1202.3.  Although LtCol Brookins has accumulated 18 years, 3
months and 21 days of active service, she did not request retention
on active duty under Title 10 U.S.C. section 12686.  Further, the
first notice to the Marine Corps of LtCol Brookins request for
sanctuary is contained in the current BCNR request, enclosure (1).

2.  To allow LtCol Brookins to return to active duty solely for
retirement eligibility is against Title 10 U.S.C. section 12735,
would conflict with statute, service policy and would raise equity
issues with other Marines.

SUBJECT:   REQUEST FOR COMMENTS AND RECOMMENDA██████████ OF
           LIEUTENANT COLONEL ROBIN C. BROOKIN██████████SMCR

3.  Point of contact this Headquarters is Maj█████████1
(703)784-0510 or DSN 278-0510.

D. L. PETRIZZO
By direction

2



DEPARTMENT OF THE NAVY
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:
1001
RAM
2 Nov 01

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
                   NAVAL RECORDS

Subj: REQUEST FOR FURTHER COMMENTS AND RECOMMENDATION IN THE CASE OF
      LIEUTENANT COLONEL ROBIN C. BROOKINS, USMCR,        62

Ref:  (a) 10 U.S.C.
      (b) DOD Instruction 1215.19, Uniform Reserve Training and
          Retirement Category Administration, of 12 Dec 2000

Encl  (1) LtCol Lake/LtCol Fazio e-mails dtd 8 Feb 00
      (2) LtCol Feltham/LtCol Tully e-mails dtd 24 Jan 00

1.  In response to your request for additional information, the
following is provided:

    a.  During November 1999, Lieutenant Colonel Brookins' request for
Active duty Special Work (ADSW) was disapproved due to her approaching
the 18 year sanctuary protection zone.  At that time uncertainty
existed regarding the interpretation of section 12686 (b) of reference
(a), which led CMC (RAM) to request Judge Advocate (JA) comment.  As a
result, multiple phone calls occurred between CMC (RAM), CMC (JA), CG,
MCB Camp Lejeune (G-1) and Lieutenant Colonel Brookins.  Lieutenant
Colonel Lake, the Assistant Branch Head of RAM, personally spoke to
Lieutenant Colonel Brookins, as well as CG, MCB Camp Lejeune (G-1)
regarding the purpose and intent for ADSW.  In those conversations,
Lieutenant Colonel Lake was specific and clear.  Per reference (b) and
service policy, ADSW is not a career program.  Also discussed was that
per section 12735 of ref (a), the service is prohibited from bringing
Marines on ADSW solely for the purpose of qualifying them for an Active
Duty retirement.  In addition, Lieutenant Colonel Lake brought out the
fact that CG, MCB Camp Lejuene (G-1) had not sought to find a
replacement for Lieutenant Colonel Brookin's due to her desire to
continue to serve in the same capacity.  In response, Lieutenant
Colonel Brookins' personally stated to Lieutenant Colonel Lake and
members of MCB Camp Lejeune HQ staff, several times, both over the
phone and in person, that she had no intention of declaring sanctuary.
She also indicated that she would readily sign any statement to that
affect.  The enclosures are submitted as historical evidence.

    b.  The enclosures indicate Lieutenant Colonel Brookin's was well
aware of her situation.  Based on Lieutenant Colonel Brookins word as
an officer that her intent was not to declare sanctuary, Lieutenant
Colonel Lake argued for and obtained a one-time approval for Lieutenant
Colonel Brookins to perform ADSW for the period requested.

    c.  Lieutenant Colonel Brookins states in her petition to BCNR dated
6 July 2001 that when she signed her Separation/Travel Pay Certificate
on 3 May 2000, it was her intent to remain on Active Duty.  Above
Lieutenant Colonel Brookin's signature on the Separation/Travel Pay
Certificate is the following verbiage "effective date of separation
from ACDU 20000526", 'Reason: Discharge', 'Type of Discharge:
Honorable', 'I understand that......may be processed after separation',
"payments received after separating".  Also, the form indicates

Subj: REQUEST FOR FURTHER COMMENTS AND RECOMMENDATION IN THE CASE OF
LIEUTENANT COLONEL ROBIN C. BROOKINS, USMCR, ▓▓▓▓▓▓▓▓62

Lieutenant Colonel Brookins acknowledged she would be using vice
selling back her remaining leave indicating that she intended to use
her leave before separating (terminal leave is common term) vice saving
a few days which is normal, although not absolute, when individuals are
expecting further service. Despite Lieutenant Colonel Brookin's 3 May
2000 signature on the Separation/Travel Pay Certificate, on 6 July 2001
she states she thought she was staying on Active Duty past her EAS of
26 May 2000. That is a long gap to realize that one is not on Active
Duty. Particularly given that Lieutenant Colonel Brookins turned in
her green Active Duty military identification card as part of her
discharge processing in May 2000. It is also important to note that
Lieutenant Colonel Brookins acknowledges in several instances that she
had ADSW orders for a defined period of time: 89 days.

    d. Regardless if the Marine Corps' utilization of section 12686 of
reference (a) is determined as separately legally binding or not,
Lieutenant Colonel Brookins signature provides further evidence of her
knowledge that she would not be retained on Active Duty by executing
voluntary ADSW orders. The enclosures provide additional proof that
Lieutenant Colonel Brookins was well aware of the limited term of her
orders.

    e. The burden of proof that she did not accept voluntary release
from Active Duty belongs to Lieutenant Colonel Brookins. By every
indication other than Lieutenant Colonel Brookins' statement in her
recent BCNR petition, she was aware of her End of Active Service date
and accepted voluntarily release. Consequently, Reserve Affairs does
not support returning Lieutenant Colonel Brookin's request to be
returned to Active Duty, nor her sanctuary claim.

2. Point of contact at this Headquarters is Lieutenant Colonel W. Lake
or Major M. Patin at commercial (703) 784-9105 or DSN 278-9105.

K. S. PLATO
By direction



**William M Lake**                                02/08/2000 04:54 PM

To:     Julian C Clay/RA/MANPOWER@HQMC, Claude L Crane/RA/MANPOWER@HQMC
cc:

Subject:  Request ADSW orders issuance, Case of: LtCol Robin C. Brookins 21 4688462

---------------------- Forwarded by William M Lake/RA/MANPOWER on 02/08/2000 04:49 PM ----------------------

    Fazio LtCol Anthony P <FazioAP@lejeune.usmc.mil> on 02/08/2000 04:26:34
                        PM

To:     Larry O Wells/RAM/HQMC, William M Lake/RA/MANPOWER
cc:     Collins GM15 Don W <CollinsDW@lejeune.usmc.mil>, Grim Col Mark D Jr <GrimMD@lejeune.usmc.mil>

Subject:  Request ADSW orders issuance, Case of: LtCol Robin C. Brookins 21 4688462

```
Sir,
    It is respectfully requested that SNO be authorized ADSW Orders commencing
14 Feb 2000 and ending 12 May2000.
The AC/S Manpower (Mr. Collins) was just notified today that the largest
supporting Consolidated Tax Center on the Eastern Seaboard (in Fact the
entire Marine Corps) will be losing its Officer In Charge at 2400, 10 Feb 00
after having been informed in the Fall of 1999 that she would be able to
complete the mission assigned.
    After several hours of research and phone calls, it has become apparent
that the reluctance to follow through with the planned
orders for LtCol Brookins' assignment  to the Tax Center is predicated upon
"The waiver of sanctuary zone protection for reservists serving on ADSW".
    While the intent to reduce numbers and preclude reservists from receiving
sanctuary zone protection is understood, MCB remains
responsible for providing over 142,000 active duty USMC/USN, their families,
and one of the largest Marine Corps Retirement Communities Tax services.
    LtCol Brookins possesses the mandated training and experience required to
plan, control, organize, direct and audit all functions pertaining to the
management of this program.  The Commandant, in his white letter on the
electronic income tax filing program, indicates he wants 50% of the
personnel stationed at Camp Lejeune to use our tax center during this years
tax season.
    The key to meeting the Commandant's goal, and to success and continued
improvement in our Tax Center/VITA program, is to retain LtCol Brookins as
Tax Center OIC.
    Mr. Collins and I have personally discussed this issue with LtCol
Brookins, in addition to being surprised that this action is being taken
without advance notification, we remain concerned on the lack of publicity
for such an essential decision.  This policy strikes at the heart of
questioning the integrity of each Reserve Officer who is willing to waive
sanctuary zone protection. Please advise soonest on options of support.
Semper Fi,
Tony Fazio
```

ENCLOSURE (1)

To:   William M Lake/RA/MANPOWER
cc:

Subject:  FW: LTCOL BROOKINS, TAX CENTER OIC/ADSW SANCTUARY ISSUE

LtCol Lake,

Help.  Understand that you folks canx LtCol Brookin's orders while you
re-evaluate ADSW and sanctuary waivers.  As you can see below, this has put
Base Lejeune in a bind.  Request you reconsider, re-instate her orders and
have her sign the sanctuary waiver, which she is willing to do and has done
in the past.  Major Pugliese is working on a memo for BGen Composto to sign
out discussing sanctuary waivers.  If an officer contests the validity of a
waiver they signed, we would have to go to ASN(M&RA) for resolution.  Bottom
line is we don't see a real risk of that in this case.  Can we make this
happen at our level or is this one for the elephants?  Rob
> -----Original Message-----
> From:      Feltham LtCol John F
> Sent:      Monday, January 24, 2000 2:56 PM
> To:  Tully LtCol Robert S
> Cc:  Gombar Col Bruce A; Winters Col Kevin H; Grim Col Mark D Jr;
> Brookins LtCol Robin C; Perez Maj William G
> Subject:   LTCOL BROOKINS, TAX CENTER OIC/ADSW SANCTUARY ISSUE
>
> Hello:
>
> This responds to your 21 January E-mail, in which you asked me to indicate
> why LtCol Brookins is uniquely qualified to run the Marine Corps Base,
> Camp Lejeune Tax Center.
>
> I appreciate your looking into this for us, and want to thank your staff
> (particularly Maj Pugliese) for all the work.
>
> Since 1996, the OIC of the Camp Lejeune Consolidated Tax Center has been
> LtCol Robin C. Brookins, USMCR.  As a direct result of her leadership,
> knowledge, and experience, the Camp Lejeune Volunteer Income Tax
> Assistance (VITA) Program has been a tremendous success.
>
> In 1999, the Tax Center completed, and electronically filed, over 16,000
> returns--the highest total in DoD.  The cost savings to Marines, Sailors,
> family members, and retirees amounted to $1,249,404, making the tax
> program one of the most significant quality of life benefits available to
> personnel at our installation.  (It is, without a doubt, the most
> significant contribution to quality of life provided by the judge advocate
> community.)
>
> In 1999, we helped 1,969 II MEF clients; 3,320 2d FSSG clients; 7,025 2d
> MARDIV clients; 2,226 MCB clients; 327 2d MAW clients; and 1,151 other
> clients.
>
> The cost savings break down as follows:  II MEF clients saved $153,582; 2d
> FSSG clients saved $258,960; 2d MARDIV clients saved $547,950; MCB clients
> saved $173,628; 2d MAW clients saved $25,506; and the remaining clients
> saved $89,778.  (These figures were calculated by using fees charged by
> local commercial income tax preparers for the same services we give our
> clients for free.)
>
> Our current tax program is well underway, and has been since last fall.
> In November, 1999, our tenant commands submitted the names of Marines and
> Sailors who are now staffing the tax program (i.e., preparing and filing
> returns) under LtCol Brookins.  In December, the preparers attended an
> eight-week training course that taught them how to complete, and
> electronically file, tax returns.  The Tax Center is now seeing clients,
> six days a week, and (based on past experience) will likely operate at

ENCLOSURE (2)

Robin C. Brookins
200 Henderson Drive
Jacksonville, NC 28540

9 May 2002

Department of the Navy
Board for Correction of Naval Records
2 Navy Annex
Washington, DC  20370-5100

Dear Mr. Goldsmith,

This letter is submitted in response to your letter AEG:jdh Docket No. 05579-01 dated  11 April 2002 which was received on 22 April 2002.

I would like to address a few statements made in the opinions. First, it was mentioned in the enclosure 1001 RAM dated 2 Nov 01 that the set of orders was to be a "one-time approval for Lieutenant Colonel Brookins to perform ADSW for the period requested." While I was working on the staff of the RCNSC during the period of 2 July 2000 through 22 July 2000, I spoke personally with MajGen McCarthy. He informed me that I would be able to continue to perform ADSW orders in the future and that **he** would approve them. Upon my return to Camp Lejeune, the Base Staff Judge Advocate attempted to obtain orders for the Fall of 2000 to run the Consolidated Tax Center for another season. The answer was not only no but, basically, do not bother to ask RAM-7 for anything else.

In reference to the letter 5800 JAR-R/20077 dated 29 Mar 02, I did not ask for sanctuary because of the "waiver clause" contained in all of the ADSW orders. I completed my duty as I have done in the past with the understanding that **because of the "waiver clause"** I would be able to serve further ADSW orders. The opinion by K.H. Winters states that I "did not return to work or present herself for duty any time after concluding leave on 26 May 00" is not correct. From 30 May 00 through 29 June 00 I completed 45 drills; from 2 July 00 through 22 July 00 I worked as the Protocol Officer for the Reserve Component National Security Course in Washington, DC; 28 Aug 00 through 7 Sept 00 I performed 11 more drills working as the Admin Officer for the RSU at Camp Lejeune as well as served as the Commander of Troops for the Change of Command. Once the new Fiscal year began I completed all 48 drills, performed an extended AT and finished on 29 December 2000. In February of 2001 I participated in the RSU MOBEX. At this point, I had performed all drills, RMP, and AT that I was allowed for the Fiscal year. When the tragedy occurred on 11 Sept 2001, I was the first to call and volunteer for service. On 5

MAY 1 3 2002

October 2001, I was dropped by the RSU to the IRR due to the fact I could no longer receive ADSW orders even though my time with the RSU was not to conclude until 2003.

The JAR-R letter also states that "Her time to claim sanctuary has long passed." I understand that I have three years to request corrections to my records through BCNR. This time period has not expired.

I have served the United Marine Corps honorably since 1976 both on Active duty and as a Reservist and recently, I was selected to the rank of Colonel.

Respectfully submitted,

Robin C. Brookins

Robin C. Brookins
200 Henderson Drive
Jacksonville, NC 28540

22 July 2002

Department of the Navy
Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

Dear Mr. Greer,

This letter is submitted as an addition to the application for correction of naval records, docket number 5579-01.

Recently I was selected to the rank of Colonel on the FY2003 selection board. I understand that if the Board for Correction of Naval Records approves my request that I would retire as a Lieutenant Colonel. Please continue processing my request.

Thank you for your assistance.

Respectfully submitted,

Robin C. Brookins

AUG .6 2002

00038

**165 Weatherington Road**
**Jacksonville, North Carolina 28546**
**Telephone: (910) 353-4591**
**e-mail: rbrookins@earthlink.net**

December 12, 2002

**CERTIFIED MAIL**

**FREEDOM OF INFORMATION REQUEST**

Docket No: 5579-02

*5579-01*
*TOM*

Mr. W. Dean Pfeiffer
Executive Director
Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

Dear Mr. Pfeiffer:

On October 25, 2002 you informed me of the results of my petition for correction of naval records listed above. In that response you indicated that in spite of the Board's unanimous support for my petition, Mr. Joseph G. Lynch, Assistant General Counsel for Manpower and Reserve Affairs overruled the Board and disapproved my petition in the name of the Secretary of the Navy. You specifically indicated that Mr. Lynch conducted an "independent review" of the Board's proceedings, and that that review was the basis for denial.

In order for me to properly rebut this decision and in order to provide "new and material evidence", it is requested that I be provided a complete copy of this independent review together with all statements, enclosures and attachments.

In providing this information, it is requested that all fees under the Freedom of Information Act be waived. I appreciate your time and consideration, as well as your anticipated assistance in filling this request.

Sincerely,

Robin C. Brookins
Lieutenant Colonel, USMCR

REC'D

JAN 14 2003