

# United States of America

## DEPARTMENT OF THE NAVY

### *Washington, D.C.,* 20374-5066

**I hereby certify** *that the annexed* 100 pages constitute a true and accurate copy of the administrative file of the Board for Correction of Naval Records in the case of Colonel Robin C. Brookins, USMCR, ▮▮▮▮▮▮▮ ch records being kept in the ordinary course of official business under my official supervision and custody

*on file in the* Board for Correction of Naval Records

W. DEAN PFEIFER
Executive Director
(Official title)
Board for Correction of Naval Records
Washington, D. C. 20370

### OFFICE OF THE SECRETARY

**I hereby certify** *that* W. Dean Pfeifer

*who signed the foregoing certificate, was at the time of signing* Executive Director, Board for Corrections of Naval Records

*and that full faith and credit should be given his certification as such.*

**In testimony whereof,** *I have hereunto set my hand and caused the Seal of the Navy Department to be affixed this* 6th *day of* March, *two thousand* Six

H.H. DRONBERGER
~~tain~~, JAGC, U.S. Navy
~~Assista~~nt Judge Advocate General
~~(Law)~~
For the Secretary of the Navy

NAVJAG 5800/12 (REV. 1-00)

Robin C. Brookins
200 Henderson Drive
Jacksonville, NC 28540

9 May 2002

Department of the Navy
Board for Correction of Naval Records
2 Navy Annex
Washington, DC  20370-5100

Dear Mr. Goldsmith,

This letter is submitted in response to your letter AEG:jdh Docket No. 05579-01 dated  11 April 2002 which was received on 22 April 2002.

I would like to address a few statements made in the opinions.  First, it was mentioned in the enclosure 1001 RAM dated 2 Nov 01 that the set of orders was to be a "one-time approval for Lieutenant Colonel Brookins to perform ADSW for the period requested."  While I was working on the staff of the RCNSC during the period of 2 July 2000 through 22 July 2000, I spoke personally with MajGen McCarthy.  He informed me that I would be able to continue to perform ADSW orders in the future and that **he** would approve them.  Upon my return to Camp Lejeune, the Base Staff Judge Advocate attempted to obtain orders for the Fall of 2000 to run the Consolidated Tax Center for another season.  The answer was not only no but, basically, do not bother to ask RAM-7 for anything else.

In reference to the letter 5800  JAR-R/20077 dated 29 Mar 02, I did not ask for sanctuary because of the "waiver clause" contained in all of the ADSW orders.  I completed my duty as I have done in the past with the understanding that **because of the "waiver clause"** I would be able to serve further ADSW orders.  The opinion by K.H. Winters states that I "did not return to work or present herself for duty any time after concluding leave on 26 May 00" is not correct.  From 30 May 00 through 29 June 00 I completed 45 drills; from 2 July 00 through 22 July 00 I worked as the Protocol Officer for the Reserve Component National Security Course in Washington, DC;  28 Aug 00 through 7 Sept 00 I performed 11 more drills working as the Admin Officer for the RSU at Camp Lejeune as well as served as the Commander of Troops for the Change of Command.  Once the new Fiscal year began I completed all 48 drills, performed an extended AT and finished on 29 December 2000.  In February of 2001 I participated in the RSU MOBEX.  At this point, I had performed all drills, RMP, and AT that I was allowed for the Fiscal year.  When the tragedy occurred on 11 Sept 2001, I was the first to call and volunteer for service.  On 5

MAY 1 3 2002

October 2001, I was dropped by the RSU to the IRR due to the fact I could no longer receive ADSW orders even though my time with the RSU was not to conclude until 2003.

The JAR-R letter also states that "Her time to claim sanctuary has long passed." I understand that I have three years to request corrections to my records through BCNR. This time period has not expired.

I have served the United Marine Corps honorably since 1976 both on Active duty and as a Reservist and recently, I was selected to the rank of Colonel.

Respectfully submitted,

Robin C. Brookins

Robin C. Brookins
200 Henderson Drive
Jacksonville, NC 28540

22 July 2002

Department of the Navy
Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

Dear Mr. Greer,

This letter is submitted as an addition to the application for correction of naval records, docket number 5579-01.

Recently I was selected to the rank of Colonel on the FY2003 selection board. I understand that if the Board for Correction of Naval Records approves my request that I would retire as a Lieutenant Colonel. Please continue processing my request.

Thank you for your assistance.

Respectfully submitted,

Robin C. Brookins



'S   Subt. E

least three

his title by
irt-martial;

il or State
ieen found
al or other

1994, 108
(b)(2), Feb.

104–106,
iew par. (2)
: (2) as (3).

104–106,
former par.

wise provid-
. 1994, see
-337, set out
of this title.

charge

r cause,
ischarge

er than
rtial or
ened by

---

(2) the member consents to a discharge under conditions other than honorable with a waiver of proceedings of a court-martial or a board.

(Added Pub.L. 103–337, Div. A, Title XVI, § 1662(i)(1), Oct. 5, 1994, 108 Stat. 2998.)

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**
1994 Acts. House Report No. 103–499 and House Conference Report No. 103–701, see 1994 U.S. Code Cong. and Adm. News, p. 2091.

**Effective Dates**
1994 Acts. Except as otherwise provided, section effective Dec. 1, 1994, see section 1691(a) of Pub.L. 103–337, set out as a note under section 10001 of this title.

### LIBRARY REFERENCES

**American Digest System**
Armed Services ⊕11, 22.

**Encyclopedias**
C.J.S. Armed Services §§ 28, 37, 80 to 81, 83 to 103.

### WESTLAW ELECTRONIC RESEARCH

Armed Services cases: 34k[add key number]
See WESTLAW guide following the Explanation pages of this volume.

### § 12686.  Reserves on active duty within two years of retirement eligibility: limitation on release from active duty

(a) **Limitation.**—Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary.

(b) **Waiver.**—With respect to a member of a reserve component who is to be ordered to active duty (other than for training) under section 12301 of this title pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order.  In carrying out this subsection, the Secretary concerned may require that a waiver under the preceding sentence be executed before the period of active duty begins.

(Added Pub.L. 103–337, Div. A, Title XVI, § 1662(i)(1), Oct. 5, 1994, 108 Stat. 2998, and amended Pub.L. 104–201, Div. A, Title V, § 533, Sept. 23, 1996, 110 Stat. 2520.)

327

Robin C. Brookins
200 Henderson Drive
Jacksonville, NC 28540

22 July 2002

Department of the Navy
Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

Dear Mr. Greer,

This letter is submitted as an addition to the application for correction of naval records, docket number 5579-01.

Recently I was selected to the rank of Colonel on the FY2003 selection board. I understand that if the Board for Correction of Naval Records approves my request that I would retire as a Lieutenant Colonel. Please continue processing my request.

Thank you for your assistance.

Respectfully submitted,

Robin C. Brookins

AUG 6 200

Robin C. Brookins
200 Henderson Drive
Jacksonville, NC 28540

9 May 2002

Department of the Navy
Board for Correction of Naval Records
2 Navy Annex
Washington, DC  20370-5100

Dear Mr. Goldsmith,

   This letter is submitted in response to your letter AEG:jdh Docket No. 05579-01
dated  11 April 2002 which was received on 22 April 2002.

   I would like to address a few statements made in the opinions.  First, it was
mentioned in the enclosure 1001 RAM dated 2 Nov 01 that the set of orders was to be a
"one-time approval for Lieutenant Colonel Brookins to perform ADSW for the period
requested."  While I was working on the staff of the RCNSC during the period of 2 July
2000 through 22 July 2000, I spoke personally with MajGen McCarthy.  He informed me
that I would be able to continue to perform ADSW orders in the future and that he would
approve them.  Upon my return to Camp Lejeune, the Base Staff Judge Advocate attempted
to obtain orders for the Fall of 2000 to run the Consolidated Tax Center for another season.
The answer was not only no but, basically, do not bother to ask RAM-7 for anything else.

   In reference to the letter 5800 JAR-R/20077 dated 29 Mar 02, I did not ask for
sanctuary because of the "waiver clause" contained in all of the ADSW orders.  I completed
my duty as I have done in the past with the understanding that **because of the "waiver
clause"** I would be able to serve further ADSW orders.  The opinion by K.H. Winters
states that I "did not return to work or present herself for duty any time after concluding
leave on 26 May 00" is not correct.  From 30 May 00 through 29 June 00 I completed 45
drills; from 2 July 00 through 22 July 00 I worked as the Protocol Officer for the Reserve
Component National Security Course in Washington, DC;  28 Aug 00 through 7 Sept 00 I
performed 11 more drills working as the Admin Officer for the RSU at Camp Lejeune as
well as served as the Commander of Troops for the Change of Command.  Once the new
Fiscal year began I completed all 48 drills, performed an extended AT and finished on 29
December 2000.  In February of 2001 I participated in the RSU MOBEX.  At this point, I
had performed all drills, RMP, and AT that I was allowed for the Fiscal year.  When the
tragedy occurred on 11 Sept 2001, I was the first to call and volunteer for service.  On 5

MAY 1 3 2002

October 2001, I was dropped by the RSU to the IRR due to the fact I could no longer receive ADSW orders even though my time with the RSU was not to conclude until 2003.

The JAR-R letter also states that "Her time to claim sanctuary has long passed." I understand that I have three years to request corrections to my records through BCNR. This time period has not expired.

I have served the United Marine Corps honorably since 1976 both on Active duty and as a Reservist and recently, I was selected to the rank of Colonel.

Respectfully submitted,

Robin C. Brookins



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

AEG:jdh
Docket No. 05579-01
11 April 2002

LTCOL ROBIN C BROOKINS USMCR
200 HENDERSON DRIVE
JACKSONVILLE NC 28540

Dear Colonel Brookins:

Reference is made to your Application for Correction of Naval
Records (DD Form 149).

The records in your case were referred to the appropriate
office(s) for advisory opinions. The opinions have been received
and are enclosed for your information.  These opinions are
advisory only and not binding upon the Board or the Secretary of
the Navy.

If you wish to submit any further statement or additional
documentary material in support of your application, you should
do so within 30 days.  Unless you request an extension of time
within the 30-day period, your case will be decided on the
evidence of record as soon as a crowded docket will permit.

Sincerely,

ALAN E. GOLDSMITH
Head, Discharge Section

Enclosure



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
2 NAVY ANNEX
WASHINGTON, DC 20380–1775

IN REPLY REFER TO:
5800
JAR-R/20077
29 Mar 02

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
NAVAL RECORDS

Subj:   REQUEST FOR ADVISORY OPINION ICO LIEUTENANT COLONEL
        ROBIN C. BR▉▉▉▉▉▉▉▉▉▉▉, USMCR

Ref:    (a) 10 U.S.C. § 12686
        (b) Lieutenant Colonel Brookins DD 149 of 6 Jul 01
        (c) Memo for Exec Dir BCNR 1001 RAM of 2 Nov 01
        (d) Lieutenant Colonel Brookins NAVMC 11060 of
            3 May 00

1.  **Issue**.  You requested our comment on whether the U.S. Marine
Corps could invoke reference (a), which purports to implement a
statutory sanctuary waiver provision, in Lieutenant Colonel
Brookins' case.

2.  **Opinions**

    a.  The lawfulness of the Marine Corps implementation of the
Secretary of the Navy's waiver provision under reference (a) is
not an issue because of the timing of Lieutenant Colonel
Brookins' sanctuary request.

    b.  Lieutenant Colonel Brookins is not entitled to sanctuary
protection.  The Marine Corps did not involuntarily release her
from active duty in violation of reference (a).  Instead, she
*voluntarily* sought and departed active duty.  By statute, once
she left active duty without claiming sanctuary protection, she
may not reclaim that status unless offered another period of
qualifying active duty.

3.  **Analysis**

    a.  Statutory Requirements.  Per reference (a), a Reservist
on active duty (other than for training) within 2 years of
becoming eligible for a purely military retirement may not be
*involuntarily* released from that duty until eligible for retired
or retainer pay.  (Emphasis added.) Exceptions to this
prohibition require SecNav authorization or approval, which did
not occur in this case.

Subj: REQUEST FOR ADVISORY OPINION ICO LIEUTENANT COLONEL
ROBIN C. BR███████████ USMCR

b. Factual Background

(1) On or about 28 Feb 00, Lieutenant Colonel Brookins
was issued a set of ADSW orders for a period of 89 days. These
orders effectively carried her into sanctuary, and contained a
sanctuary waiver clause (where she waived any claim to
sanctuary). Upon completion of these orders on 26 May 00 she had
accumulated approximately 18 years, 3 months, and 21 days active
duty.

(2) Per reference (b), Lieutenant Colonel Brookins
claims she did not consent to leave active duty on 26 May 00,
and requests return to active duty until she completes 20 years
active service, thus entitling her to an active duty military
retirement.

(3) Reference (a), however, prohibits services from
*involuntarily* releasing Reservists from active duty who are
within 2 years of becoming eligible for retired pay.

(4) Petitioner was not involuntarily released. Per
references (c) and (d), Petitioner sought, performed, and
departed active duty with the full knowledge that she was
volunteering for the duty – to include voluntarily departing
active duty. At no time while on active duty did she claim
sanctuary. She simply requested and executed her orders – with
the full understanding that she was going to voluntarily leave
active duty without claiming sanctuary. The facts suggest a
voluntary departure from active duty:

(a) Per reference (c), the Marine Corps hesitated in
issuing orders to Lieutenant Colonel Brookins because of the
sanctuary issue. Had she not unequivocally represented she did
not intend to seek sanctuary, she would not have been issued
ADSW orders.

(b) On her orders to active duty, Lieutenant Colonel
Brookings expressly voiced her intent to leave active duty
voluntarily by specifically agreeing to waive any claims to
sanctuary.[1] This directly contradicts her statement in reference
(c) that, "when it came time to conclude these orders, it was my
intention to seek active duty retirement."

---

[1] I voluntarily accept these orders to active duty for special work. In doing so, I understand that I may become
eligible for sanctuary zone protection under title 10, United States Code, section 12686(a). As a condition of
acceptance of these orders, however, pursuant to section 12686(b), I hereby waive the applicability of section
12686(a) to the period of active duty covered by these orders. I understand that the effect of this waiver is to remove
any sanctuary zone protection that might have otherwise applied as a result of the execution of these orders.

00079

Subj:  REQUEST FOR ADVISORY OPINION ICO LIEUTENANT COLONEL
       ROBIN C. BROOKINS [REDACTED] 3462 [REDACTED]

        (c) She offered no statements, representations, or
objections to her release from active duty (or did she demand
sanctuary protection) at the time of her release.  To the
contrary, she left active duty consistent with her orders.

- On 3 May 00, she signed her Travel Pay
  Certificate (reference (c)) requesting
  electronic funds transfer for her travel pay
  home, and acknowledged the type of discharge
  she would receive, lump sum leave due her, and
  effective date of release;
- She voluntarily relinquished her green Active
  Duty Military Identification Card in May 2000;
- She took leave consistent with what would
  normally be characterized "terminal leave" at
  the end of her ADSW tour; and
- She did not return to work or present herself
  for duty any time after concluding leave on
- 26 May 00.

4.  **Conclusion**.  Reference (a) does not authorize, and
Lieutenant Colonel Brookins is not now entitled, to claim
sanctuary for a *previous* period of active duty from an active
duty for training, inactive duty training, or other non-active
duty status.  Her time to claim sanctuary has long passed.  And
even had she claimed sanctuary while on active duty, granting
her request would have been problematic because of her
exhaustive, explicit, and pervasive assertions that she would
not claim sanctuary as a condition precedent to accepting
orders.  Her actions border on fraud.

5.  **Recommendation.**  Deny Lieutenant Colonel Brookins' request
for sanctuary.

6.  **Point of Contact**.  Lieutenant Colonel David Morey, (703)
614-2510, (DSN) 224.

                    *K. H. Winters* (signature)

                    K. H. WINTERS
                    Staff Judge Advocate to the
                    Commandant of the Marine Corps
                    Acting

3

21 January 2002

Board for Correction of Naval Records
2 Navy Annex  Room 2432
Washington, D.C.  20370-5100

Dear Sir or Madam,

I submitted a package that was received by your office on July 23, 2001.  The docket number is 5579-01.

I have moved to a new location and would like to update my mailing address:

LtCol Robin C. Brookins
200 Henderson Drive
Jacksonville, N.C.  28540

Telephone:  Business (910) 455-7100
Cell  (910) 545-2063

Thank you,

Robin C. Brookins



**DEPARTMENT OF THE NAVY**
**HEADQUARTERS UNITED STATES MARINE CORPS**
**3280 RUSSELL ROAD**
**QUANTICO, VIRGINIA 22134-5103**

IN REPLY REFER TO:
1001
RAM
2 Nov 01

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
              NAVAL RECORDS

Subj: REQUEST FOR FURTHER COMMENTS AND RECOMMENDATION IN THE CASE OF
      LIEUTENANT COLONEL ROBIN C. BROOKINS, USMCR, ░░░░░░░2

Ref:  (a) 10 U.S.C.
      (b) DOD Instruction 1215.19, Uniform Reserve Training and
          Retirement Category Administration, of 12 Dec 2000

Encl  (1) LtCol Lake/LtCol Fazio e-mails dtd 8 Feb 00
      (2) LtCol Feltham/LtCol Tully e-mails dtd 24 Jan 00

1.  In response to your request for additional information, the
following is provided:

    a.  During November 1999, Lieutenant Colonel Brookins' request for
Active duty Special Work (ADSW) was disapproved due to her approaching
the 18 year sanctuary protection zone.  At that time uncertainty
existed regarding the interpretation of section 12686 (b) of reference
(a), which led CMC (RAM) to request Judge Advocate (JA) comment.  As a
result, multiple phone calls occurred between CMC (RAM), CMC (JA), CG,
MCB Camp Lejeune (G-1) and Lieutenant Colonel Brookins.  Lieutenant
Colonel Lake, the Assistant Branch Head of RAM, personally spoke to
Lieutenant Colonel Brookins, as well as CG, MCB Camp Lejeune (G-1)
regarding the purpose and intent for ADSW.  In those conversations,
Lieutenant Colonel Lake was specific and clear.  Per reference (b) and
service policy, ADSW is not a career program.  Also discussed was that
per section 12735 of ref (a), the service is prohibited from bringing
Marines on ADSW solely for the purpose of qualifying them for an Active
Duty retirement.  In addition, Lieutenant Colonel Lake brought out the
fact that CG, MCB Camp Lejuene (G-1) had not sought to find a
replacement for Lieutenant Colonel Brookin's due to her desire to
continue to serve in the same capacity.  In response, Lieutenant
Colonel Brookins' personally stated to Lieutenant Colonel Lake and
members of MCB Camp Lejeune HQ staff, several times, both over the
phone and in person, that she had no intention of declaring sanctuary.
She also indicated that she would readily sign any statement to that
affect.  The enclosures are submitted as historical evidence.

    b.  The enclosures indicate Lieutenant Colonel Brookin's was well
aware of her situation.  Based on Lieutenant Colonel Brookins word as
an officer that her intent was not to declare sanctuary, Lieutenant
Colonel Lake argued for and obtained a one-time approval for Lieutenant
Colonel Brookins to perform ADSW for the period requested.

    c.  Lieutenant Colonel Brookins states in her petition to BCNR dated
6 July 2001 that when she signed her Separation/Travel Pay Certificate
on 3 May 2000, it was her intent to remain on Active Duty.  Above
Lieutenant Colonel Brookin's signature on the Separation/Travel Pay
Certificate is the following verbiage "effective date of separation
from ACDU 20000526", 'Reason: Discharge', 'Type of Discharge:
Honorable', 'I understand that......may be processed after separation',
"payments received after separating".  Also, the form indicates

Subj: REQUEST FOR FURTHER COMMENTS AND RECOMMENDATION IN THE CASE OF
      LIEUTENANT COLONEL ROBIN C. BROOKINS, USMCR, ███████52

Lieutenant Colonel Brookins acknowledged she would be using vice
selling back her remaining leave indicating that she intended to use
her leave before separating (terminal leave is common term) vice saving
a few days which is normal, although not absolute, when individuals are
expecting further service.  Despite Lieutenant Colonel Brookin's 3 May
2000 signature on the Separation/Travel Pay Certificate, on 6 July 2001
she states she thought she was staying on Active Duty past her EAS of
26 May 2000.  That is a long gap to realize that one is not on Active
Duty.  Particularly given that Lieutenant Colonel Brookins turned in
her green Active Duty military identification card as part of her
discharge processing in May 2000.  It is also important to note that
Lieutenant Colonel Brookins acknowledges in several instances that she
had ADSW orders for a defined period of time: 89 days.

    d. Regardless if the Marine Corps' utilization of section 12686 of
reference (a) is determined as separately legally binding or not,
Lieutenant Colonel Brookins signature provides further evidence of her
knowledge that she would not be retained on Active Duty by executing
voluntary ADSW orders.  The enclosures provide additional proof that
Lieutenant Colonel Brookins was well aware of the limited term of her
orders.

    e. The burden of proof that she did not accept voluntary release
from Active Duty belongs to Lieutenant Colonel Brookins.  By every
indication other than Lieutenant Colonel Brookins' statement in her
recent BCNR petition, she was aware of her End of Active Service date
and accepted voluntarily release.  Consequently, Reserve Affairs does
not support returning Lieutenant Colonel Brookin's request to be
returned to Active Duty, nor her sanctuary claim.

2.  Point of contact at this Headquarters is Lieutenant Colonel W. Lake
or Major M. Patin at commercial (703) 784-9105 or DSN 278-9105.

                              K. S. PLATO
                              By direction

00083



**William M Lake**                              02/08/2000 04:54 PM

To:     Julian C Clay/RA/MANPOWER@HQMC, Claude L Crane/RA/MANPOWER@HQMC
cc:

Subject:  Request ADSW orders issuance, Case of: LtCol Robin C. Brookins 21 4688462

---------------------- Forwarded by William M Lake/RA/MANPOWER on 02/08/2000 04:49 PM --------------------------


Fazio LtCol Anthony P <FazioAP@lejeune.usmc.mil> on 02/08/2000 04:26:34
PM

To:     Larry O Wells/RAM/HQMC, William M Lake/RA/MANPOWER
cc:     Collins GM15 Don W <CollinsDW@lejeune.usmc.mil>, Grim Col Mark D Jr <GrimMD@lejeune.usmc.mil>

Subject:  Request ADSW orders issuance, Case of: LtCol Robin C. Brookins 21 4688462

```
Sir,
    It is respectfully requested that SNO be authorized ADSW Orders commencing
14 Feb 2000 and ending 12 May2000.
The AC/S Manpower (Mr. Collins) was just notified today that the largest
supporting Consolidated Tax Center on the Eastern Seaboard (in Fact the
entire Marine Corps) will be losing its Officer In Charge at 2400, 10 Feb 00
after having been informed in the Fall of 1999 that she would be able to
complete the mission assigned.
    After several hours of research and phone calls, it has become apparent
that the reluctance to follow through with the planned
orders for LtCol Brookins' assignment  to the Tax Center is predicated upon
"The waiver of sanctuary zone protection for reservists serving on ADSW".
    While the intent to reduce numbers and preclude reservists from receiving
sanctuary zone protection is understood, MCB remains
responsible for providing over 142,000 active duty USMC/USN, their families,
and one of the largest Marine Corps Retirement Communities Tax services.
    LtCol Brookins possesses the mandated training and experience required to
plan, control, organize, direct and audit all functions pertaining to the
management of this program.  The Commandant, in his white letter on the
electronic income tax filing program, indicates he wants 50% of the
personnel stationed at Camp Lejeune to use our tax center during this years
tax season.
    The key to meeting the Commandant's goal, and to success and continued
improvement in our Tax Center/VITA program, is to retain LtCol Brookins as
Tax Center OIC.
    Mr. Collins and I have personally discussed this issue with LtCol
Brookins, in addition to being surprised that this action is being taken
without advance notification, we remain concerned on the lack of publicity
for such an essential decision.  This policy strikes at the heart of
questioning the integrity of each Reserve Officer who is willing to waive
sanctuary zone protection. Please advise soonest on options of support.
Semper Fi,
Tony Fazio
```

ENCLOSURE (1)

To:      William M Lake/RA/MANPOWER
cc:

Subject:  FW: LTCOL BROOKINS, TAX CENTER OIC/ADSW SANCTUARY ISSUE

LtCol Lake,

Help.  Understand that you folks canx LtCol Brookin's orders while you
re-evaluate ADSW and sanctuary waivers.  As you can see below, this has put
Base Lejeune in a bind.  Request you reconsider, re-instate her orders and
have her sign the sanctuary waiver, which she is willing to do and has done
in the past.  Major Pugliese is working on a memo for BGen Composto to sign
out discussing sanctuary waivers.  If an officer contests the validity of a
waiver they signed, we would have to go to ASN(M&RA) for resolution.  Bottom
line is we don't see a real risk of that in this case.  Can we make this
happen at our level or is this one for the elephants?  Rob
> -----Original Message-----
> From:      Feltham LtCol John F
> Sent:      Monday, January 24, 2000 2:56 PM
> To:  Tully LtCol Robert S
> Cc:  Gombar Col Bruce A; Winters Col Kevin H; Grim Col Mark D Jr;
> Brookins LtCol Robin C; Perez Maj William G
> Subject:   LTCOL BROOKINS, TAX CENTER OIC/ADSW SANCTUARY ISSUE
>
> Hello:
>
> This responds to your 21 January E-mail, in which you asked me to indicate
> why LtCol Brookins is uniquely qualified to run the Marine Corps Base,
> Camp Lejeune Tax Center.
>
> I appreciate your looking into this for us, and want to thank your staff
> (particularly Maj Pugliese) for all the work.
>
> Since 1996, the OIC of the Camp Lejeune Consolidated Tax Center has been
> LtCol Robin C. Brookins, USMCR.  As a direct result of her leadership,
> knowledge, and experience, the Camp Lejeune Volunteer Income Tax
> Assistance (VITA) Program has been a tremendous success.
>
> In 1999, the Tax Center completed, and electronically filed, over 16,000
> returns--the highest total in DoD.  The cost savings to Marines, Sailors,
> family members, and retirees amounted to $1,249,404, making the tax
> program one of the most significant quality of life benefits available to
> personnel at our installation.  (It is, without a doubt, the most
> significant contribution to quality of life provided by the judge advocate
> community.)
>
> In 1999, we helped 1,969 II MEF clients; 3,320 2d FSSG clients; 7,025 2d
> MARDIV clients; 2,226 MCB clients; 327 2d MAW clients; and 1,151 other
> clients.
>
> The cost savings break down as follows: II MEF clients saved $153,582; 2d
> FSSG clients saved $258,960; 2d MARDIV clients saved $547,950; MCB clients
> saved $173,628; 2d MAW clients saved $25,506; and the remaining clients
> saved $89,778.  (These figures were calculated by using fees charged by
> local commercial income tax preparers for the same services we give our
> clients for free.)
>
> Our current tax program is well underway, and has been since last fall.
> In November, 1999, our tenant commands submitted the names of Marines and
> Sailors who are now staffing the tax program (i.e., preparing and filing
> returns) under LtCol Brookins.  In December, the preparers attended an
> eight-week training course that taught them how to complete, and
> electronically file, tax returns.  The Tax Center is now seeing clients,
> six days a week, and (based on past experience) will likely operate at

ENCLOSURE (2)

> full capacity until mid-May.  We have 36 personnel on the staff.
>
> The Commandant, in his White Letter on the Electronic Income Tax Filing
> Program, indicates he wants 50% of the personnel stationed at Camp Lejeune
> to use our Tax Center during this year's tax season.
>
> The key to meeting the Commandant's goal, and to success and continued
> improvement in our Tax Center/VITA Program, is to retain LtCol Brookins as
> Tax Center OIC.  She is the only officer at this command with the
> knowledge and experience to provide the continuity necessary for our
> program to smoothly transition from last year through the current season.
> Without her corporate memory, I do not think our Tax Center can sustain
> its past record of assisting significantly greater numbers of clients
> every year.
>
> LtCol Brookins is working as the Tax Center OIC under PSRC orders that
> expire in February.  As you know from my earlier E-mail on this subject,
> Maj Pete Sennett helped us obtain approval of a request to have LtCol
> Brookins funded as OIC of our Tax Center from 14 February 2000 to 12 May
> 2000.  On 23 November 1999, we received an E-mail from Maj Sennett,
> indicating everything was in order.  It was only much later (17 December)
> that we were told about RAM-7's view of the 18-year sanctuary problem, and
> its refusal to issue ADSW orders to LtCol Brookins.
>
> If we lose LtCol Brookins in mid-February (the height of the tax season
> for us), we will have a very serious problem.  We do not have a
> replacement for her.  (Once we were told we had her for the season, we did
> not consider it necessary to groom one.)
>
> I have discussed this issue with LtCol Brookins.  She has signed
> "sanctuary waivers" in the past, and is quite willing to do so, again.
> This morning, she sent me an E-mail, which reads:  " . . . I have been
> faithfully signing the waivers for many sets of ADSW and I have absolutely
> no problem with continuing to sign them.  I have been 'faithfully' signing
> the waiver with the understanding I could continue until service
> limitation (I understand it to be 28 years of commissioned [service] as a
> LtCol and possibly longer if I were fortunate enough to be promoted.)  I
> am very much aware that I will not receive retirement until age 60 (if
> Congress doesn't change that along the way)."
>
> In addition to her three seasons of Tax Center experience, I want to point
> out that LtCol Brookins is considerably less expensive than the average
> Marine lieutenant colonel.  Because she lives in the local area, she does
> not receive per diem.  (At the risk of sounding crass, I think it fair to
> state that we are getting a lot of lieutenant colonel bang for what
> amounts to little more than captain bucks.)
>
> Again, I appreciate your help.  We need LtCol Brookins this year (and next
> year, too, if we can get her).  If you need more input from me, I'll be
> glad to send it.  This is number one on my list of "front burner" items,
> and I'll do whatever it takes to keep LtCol Brookins on board.
>
>                          V/R,
>                          LtCol Feltham

ENCLOSURE (2)



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

AEG
Docket No:  5579-01
27 September 2001

From: Chairman, Board for Correction of Naval Records
To:   Commandant of the Marine Corps (Codes RAM & JA)

Subj: REQUEST FOR FURTHER COMMENTS AND RECOMMENDATION IN THE CASE
      OF LTCOL ROBIN C. BROOKINS, USMCR, ███████62   --

Ref:  (a) 10 U.S.C.
      (b) My ltr. of 25Jul01
      (c) RAM-7 memo of 14Aug01
      (d) MCO 1001R.1J

Encl: (1) BCNR File w/microfiche personnel records

1. Pursuant to § 1552 of reference (a), Subject requests a
correction of her naval record as indicated in enclosure (1).  By
reference (b), we requested an advisory opinion on Subject's
case, and reference (c) was provided.  The case is now
resubmitted for further comments and recommendation.

2. In order to further assist the Board in arriving at a fair and
equitable decision in this case, it is requested that you address
the following issues:

   a. (for RAM) Do you have any documentation to support the
assertions in paragraph 1a of reference (c)?  If so, please
provide it to the Board.  If not, please explain the basis for
your statements in that paragraph.

   b. (for JA) May the Marine Corps invoke § 12686(b) of
reference (a)?  In this regard, it appears that reference (d)
purports to implement this statutory provision in the Marine
Corps, but we are not aware that the Secretary of the Navy has
authorized such implementation, as is apparently required by the
law.

3. It is further requested that the enclosures be returned with
your reply.  Your continued cooperation and assistance are
appreciated.

ALAN E. GOLDSMITH
By direction



DEPARTMENT OF THE NAVY
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:

1001
RAM-7
14 Aug 01

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
NAVAL RECORDS

Subj:  REQUEST FOR COMMENTS AND RECOMMENDATION IN THE CASE OF
       LIEUTENANT COLONEL ROBIN C. BROOKINS,        2 USMCR

Ref:   (a) Title 10 U.S.C.
       (b) MARCORSEPMAN MCO P1900.16E

Encl:  (1) BCNR ltr AEG:jdh Docket No. 05579-01 of 25 Jul 01

1.   Reserve Affairs cannot support Lieutenant Colonel Brookins
request to return to active duty, under Active Duty Special Work
(ADSW), for the purpose of qualifying for a 20 year active duty
retirement, enclosure (1).

     a.   LtCol Brookins was brought on the ADSW program 28 February
2000 to 26 May 2000 in support of Marine Corps Base, Camp Lejeune
as a Tax representative.  Prior to being approved to perform this
period of ADSW, LtCol Brookins was personally informed by Reserve
Affairs Personnel Management Branch (RAM) that ADSW service is not
for the purposes of claiming an active duty retirement.  LtCol
Brookins then stated that she understood and it was specifically
not her intent to claim sanctuary.  As a result, an agreement was
reached with the understanding that she sign a sanctuary waiver;
and she would not seek Sanctuary Zone protection as stated in
U.S.C. Title 10 section 12686.

     b.   On 3 May 2000 LtCol Brookins signed a Separation/Travel Pay
Certificate (NAVMC 11060) which included her type of discharge,
lump sum leave due member, and effective date of release from
active duty which was 26 May 2000.  At that time, LtCol Brookins
did not make a declaration of sanctuary.

     c.   Upon being voluntarily released from active duty, LtCol
Brookins was not issued a DD214 in accordance with reference (b),
para 1202.3.  Although LtCol Brookins has accumulated 18 years, 3
months and 21 days of active service, she did not request retention
on active duty under Title 10 U.S.C. section 12686.  Further, the
first notice to the Marine Corps of LtCol Brookins request for
sanctuary is contained in the current BCNR request, enclosure (1).

2.   To allow LtCol Brookins to return to active duty solely for
retirement eligibility is against Title 10 U.S.C. section 12735,
would conflict with statute, service policy and would raise equity
issues with other Marines.

SUBJECT:   REQUEST FOR COMMENTS AND RECOMMENDATION IN THE CASE OF
           LIEUTENANT COLONEL ROBIN C. BROOKINS, ███████████ 2 USMCR

3.   Point of contact this Headquarters is Major M. Patin, coml
(703)784-0510 or DSN 278-0510.

D. L. PETRIZZO
By direction

2

00009



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

AEG:jdh
Docket No. 05579-01
25 July 2001

From:  Chairman, Board for Correction of Naval Records
To:    Commandant of the Marine Corps (Codes-MMER/JA)

Subj:  REQUEST FOR COMMENTS AND RECOMMENDATION IN THE
       CASE OF LTCOL ROBIN C. BROOKINS, USMC, ██████████ 62

Ref:   (a) 10 U.S.C. 1552

Encl:  (1) BCNR File
       (2) Service Record

1.  Pursuant to reference (a), Subject requests a correction of
his naval record as indicated in enclosure (1).

2.  In order to assist the Board in arriving at a fair and
equitable decision in this case, it is requested that your
comments and recommendation be furnished.

3.  Regulations approved by the Secretary of the Navy state that
your comments and recommendation should be submitted within 60
days after receiving this request.  It is further requested that
the enclosures be returned with your reply.

                                ALAN E. GOLDSMITH
                                By direction

# APPLICATION FOR CORRECTION OF MILITARY RECORD
## UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552
*(Please read instructions on reverse side BEFORE completing application.)*

| Form Approved |
|---|
| OMB No. 0704-0003 |
| Expires Aug 31, 2000 |

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA  22202-4302.  Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS.  RETURN COMPLETED FORM TO THE [...] 'DRESS ON THE BACK OF THIS PAGE.

PRIVA[...]    **Brookins, Robin C.**

*05579-01*

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction [...] military record.  The form is used by Board members for revie[...] pertinent information in making a determination of relief throu[...] correction of a military record.

[...] rovide identifying [...] lication.  The [...] [...] [...]ly to assure proper identification of the individual and appropriate records.

## 1. APPLICANT DATA

| a. BRANCH OF SERVICE (X one) | ARMY | NAVY | AIR FORCE | X | MARINE CORPS | COAST GUARD |
|---|---|---|---|---|---|---|

| b. NAME (Last, First, Middle Initial) (Please print) | c. PRESENT PAY GRADE | d. SERVICE NUMBER (If applicable) | e. SSN |
|---|---|---|---|
| Brookins    Robin    C | 05/LtCol | 214688462 | ███████████ |

| 2. TYPE OF DISCHARGE (If by court-martial, state type of court) | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES (Active duty, Retired, Reserve, etc.) | 4. DATE OF [...] FROM ACTIVE DUTY |
|---|---|---|
| None | IMA | |

| 5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD | 6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. |
|---|---|
| Reserve Support Unit, Marine Corps Base Camp Lejeune, NC 28542-0081 | (No expense to the Government) (X one)   YES   [X] NO |

## 7. COUNSEL (If any)

| a. NAME (Last, First, Middle Initial) | b. ADDRESS (Street, Apartment Number, City, State and ZIP Code) |
|---|---|
| Self | 100 Coachman Ct. Jacksonville, NC 28546 |

**8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:**
Please see attachment

**9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:**
Please see attachment

**10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING:** *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)*
Please see attachment

## 11. ALLEGED ERROR OR INJUSTICE

| a. DATE OF DISCOVERY | b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION. |
|---|---|
| 20000526 | See new address |

**12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.**

| SPOUSE | WIDOW | WIDOWER | NEXT OF KIN | LEGAL REPRESENTATIVE | OTHER (Specify) |
|---|---|---|---|---|---|

**13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

| 14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE (Applicant should forward notification of all changes of address.) | b. TELEPHONE NUMBER (Include Area Code) | DOCUMENT NUMBER (Do not write in this space.) |
|---|---|---|
| 100 Coachman Ct. Jacksonville, NC 28546 | (910) 545-2063 | JUL 17 2001 |

| 15. DATE SIGNED | 16. SIGNATURE (Applicant must sign here.) |
|---|---|
| 20010706 | *[signature]* |

| DD FORM 149, SEP 1997 (EG) | PREVIOUS EDITION IS OBSOLETE. | Designed using Perform Pro, WHS/DIOR, Sep 97 |
|---|---|---|

## BLOCK 8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:

1. Pursuant to the references, I request that my Official Military Personnel file be corrected to state that I am still on active duty status on the following grounds:

   a. That I did not consent to leave active duty on 26 May 2000 in accordance with US Code: Title 10, Section 12646.

2. I further request that I be returned to active duty until I complete twenty years of active service and am eligible to apply for active duty retirement.

## BLOCK 9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:

### STATEMENT OF FACTS

1. On or about 28 February 2000, I received Active Duty Special Work orders for eighty-nine days (enclosure 1).

2. At the time of receipt of these orders, I had 6529 active duty points. When it came time to conclude these orders, it was my intention to seek active duty retirement. This was due to the fact I had now accumulated 6681 active duty points (enclosure 2). This is translated into 18.56 years of active duty.

DISCUSSION

A.

THE CHANGE IN MY STATUS FROM ACTIVE DUTY TO INACTIVE RESERVE STATUS CONSTITUTED A SUBSTANTIVE ERROR

1.

It was the understanding that when I signed the NAVMC 11060 form, that it was for the settlement of pay only (enclosure 3). It was and is my intention to remain on active duty until eligible for active duty retirement. There was no DD214 issued for this period of ADSW.

## BLOCK 10: IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING:

References:

   (a) US Code: Title 10, Section(s) 12646, 12686
   (b) MCO P1900.16 Marine Corps Separation and Retirement Manual

Enclosures:

   (1) ADSW Orders; Case of Lieutenant Colonel Robin C. Brookins
   (2) Career Retirement Credit Report; Case of Lieutenant Colonel Robin C. Brookins
   (3) NACMC 11060; Case of Lieutenant Colonel Robin C. Brookins

**Sec. 12686. Reserves on active duty within two years of retirement eligibility: limitation on release from active duty**

- (a) Limitation. - Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary.

- (b) Waiver. - With respect to a member of a reserve component who is to be ordered to active duty (other than for training) under section 12301 of this title pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order. In carrying out this subsection, the Secretary concerned may require that a waiver under the preceding sentence be executed before the period of active duty begins.

**Sec. 12646. Commissioned officers: retention of after completing 18 or more, but less than 20, years of service**

- (a) If on the date prescribed for the discharge or transfer from an active status of a reserve commissioned officer he is entitled to be credited with at least 18, but less than 19, years of service computed under section 12732 of this title, he may not be discharged or transferred from an active status under chapter 573, 1407, or 1409 of this title or chapter 21 of title 14, without his consent before the earlier of the following dates -
    - (1) the date on which he is entitled to be credited with 20 years of service computed under section 12732 of this title; or
    - (2) the third anniversary of the date on which he would otherwise be discharged or transferred from an active status.

- (b) If on the date prescribed for the discharge or transfer from an active status of a reserve commissioned officer he is entitled to be credited with at least 19, but less than 20, years of service computed under section 12732 of this title, he may not be discharged or transferred from an active status under chapter 573, 1407, or 1409 of this title or chapter 21 of title 14, without his consent before the earlier of the following dates -
    - (1) the date on which he is entitled to be credited with 20 years of service computed under section 12732 of this title; or
    - (2) the second anniversary of the date on which he would otherwise be discharged or transferred from an active status.

- (c) An officer who is retained in an active status under subsection (a) or (b) is an additional number to those otherwise authorized.

- (d) Subsections (a) and (b) do not apply to -
    - (1) officers who are discharged or transferred from an active status for physical disability, for cause, or because they have reached the age at which transfer from an active status or discharge is required by law; or
    - (2) commissioned warrant officers.

- (e)
    - (1) A reserve commissioned officer on active duty (other than for training) or full-time National Guard duty (other than full-time National Guard duty for training only) who, on the date on which the officer would otherwise be removed from an active status under section 6389, 14513, or 14514 of this title or section 740 of title 14, is within two years of qualifying for retirement under section 3911, 6323, or 8911 of this title may, in the discretion of the Secretary concerned and subject to paragraph (2), be retained on that duty for a period of not more than two years.
    - (2) An officer may be retained on active duty or full-time National Guard duty under paragraph (1) only if -
        - (A) at the end of the period for which the officer is retained the officer will be qualified for retirement under section 3911, 6323, or 8911 of this title; and
        (B) the officer will not, before the end of that period, reach the age at which transfer from an active status or discharge is required by this title or title 14.
    - (3) An officer who is retained on active duty or full-time National Guard duty under this section may not be removed from an active status while on that duty.

MARINE CORPS SEPARATION AND RETIREMENT MANUAL                1202

   d.  The DD Form 214, once issued, will <u>not</u> be reissued except:

       (1) When directed by appropriate appellate authority, executive order, or by direction of the Secretary of the Navy;

       (2) When it is determined by the CMC that the original DD Form 214 cannot be properly corrected by issuing a DD Form 215 or when the correction would require issuing more than two DD Forms 215; or,

       (3) When two DD Forms 215 have been issued and additional correction is required.

   e.  When circumstances require the issue or reissue of the DD Form 214, an appropriate entry stating the fact and the date of such action will be recorded in item 18, Remarks, unless specifically denied by the authority referenced in subparagraph 1202.2d(1).

3.  DD Form 214 <u>will not</u> be issued to:

   a.  Marines discharged for the purpose of immediate reenlistment in the Marine Corps and remaining on active duty;

   b.  Marines found physically disqualified upon reporting for active duty and who do not enter actively upon duties per orders;

   c.  Marines whose active duty, active duty for training, or AR duty is terminated by death;

   d.  Marines released from a period of less than 90 days active duty for training, except as specified in subparagraph 1202.2b;

   e.  Enlisted Marines receiving temporary appointment to warrant or commissioned officer grade;

   f.  Marines who have temporary officer status terminated and remain on active duty (these Marines will receive a DD Form 214 upon separation from enlisted status for the purpose of transferring to the FMCR effective on the same date of reversion);

   g.  Personnel removed from the TDRL; or,

   h. ENLISTED RESERVISTS RELEASED FROM A PERIOD OF ACTIVE DUTY OF LESS
(volun PAGE 02 RUEACMC2400 UNCLAS
codes   THAN 90 DAYS OR DISCHARGED FROM THE RESERVE COMPONENT. ALTHOUGH NOT
        ISSUED A DD FORM 214. SUCH RESERVISTS WILL BE ASSIGNED THE
entrie  REENLISTMENT CODES IN APPENDIX J FOR RECORD PURPOSES; E.G., PAGE 11
        ENTRIES, DISCHARGE LETTERS, STATEMENTS OF SERVICE, AND MCTFS ENTRIES
4.  Ge IN ACCORDANCE WITH MCO P1080.40 (MCTFS PRIM)."
           RELEASED FROM A PERIOD OF LESS THAN 90 DAYS OF ACTIVE DUTY OR ACTIVE  "I.  RESERVE OFFICERS
   a.   DUTY FOR TRAINING."
Marine prior to departure from the separation activity on the effective date
of separation.  Copy 4 of the DD Form 214 containing the statutory or

# ORIGINAL ORDERS

OPD-7A
3 MAR 2000

FROM: CG MCRSC KANSAS CITY MO//OPS//
TO:   RSU MCB CAMP LEJEUNE NC//JJJ//

INFO       /CMC WASHINGTON DC//RA/RAM7//
           CG MCRSC KANSAS CITY MO//OPS//

PASS TO LTCOL ROBIN BROOKINS 214688462 USMCR

SUBJ: ADSW; CASE OF LTCOL  ROBIN C  BROOKINS

REF:   (A)  MCO P1001R.1_ (MCRAMM)
       (B)  NAVMC 11350 DTD 000228
       (C)  MANMED, USN CHAP 15
       (D)  JFTR, CHAP 4
       (E)  MCO P5800.8_ (LEGAL ADMIN MANUAL)
       (F)  SECNAVINST 1770.3
       (G)  MCO P1080.40, MCTFS PRIM
       (H)  MCO P7220.31_, CHAP 8, SEC 4 (JFPM)

1.  THIS MESSAGE CONSTITUTES ORIGINAL ORDERS.  YOU ARE DIRECTED TO
ENDORSE THESE ORDERS "ORIGINAL ORDERS RECEIVED", NOTING THE DATE AND
PLACE OF RECEIPT.  YOU ARE ADVISED THAT THE DISBURSING OFFICER MAY
REFUSE TO ISSUE PAYMENTS IN THE ABSENCE OF THIS ENDORSEMENT.

2.  IN ACCORDANCE WITH THE AUTHORIZATION CONTAINED IN REFERENCES (A)
AND (B), AND SUBJECT TO THE PROVISIONS OF REFERENCES (C) THROUGH (H),
YOU ARE ASSIGNED TO ADSW ON SUCH A DATE THAT WILL ENABLE YOU TO
REPORT TO CO, RSU, BLDG 1211, CEDAR ST, JACKSONVILLE, NC 28542 NO
LATER THAN 0730 ON 28 FEB 2000 FOR DUTY WITH TAX CENTER (RUC 31015
MCC 013).  PERIOD OF DUTY: 28 FEB 2000 TO 26 MAY 2000 (089 DAYS).
YOU ARE A MEMBER OF RUC 88836.

3.  PAY STATUS: WITH PAY AND ALLOWANCES:  PEBD:  760707

4.  FISCAL INFORMATION IS AS FOLLOWS:
P&A:       AA 1701108.2732 011 286320 067443 2I MOBF70 118000071500
EST COST:  $16804.00
PER DIEM:
EST COST:  $0.00
TRAVEL:    AB 1701108.2732 021 286320 067443 2D MOBF70 118000074500
EST COST:  $7.00
TRAVEL ADVANCE CHARGEABLE TO TTC 1K AND COST CODE:  118 214688462.
SDN FOR THIS PERIOD OF DUTY IS M6852200TOOBF70.
MEMBER IS AUTHORIZED ADVANCE PERDIEM NOT TO EXCEED 80% OF LODGING AND
MEALS AND INCIDENTALS.

5.  CONFIRMATION ORDS AUTH PER CO, RSU, CAMP LEJEUNE, NC ON 000228.

ENCLOSURE (1)

3 MAR 2000

SUBJ: ADSW; CASE OF LTCOL  ROBIN C  BROOKINS

DUE TO THE URGENCY OF THE TVL INVOLVED, IT WAS NOT POSSIBLE TO ISSUE
WRITTEN ORDS PRIOR TO THE COMMENCEMENT OF THE TVL.

6.  THE PLACE FROM WHICH YOU ARE ORDERED TO SUBJECT DUTY IS INDICATED
AFTER YOUR NAME.  UPON COMPLETION OF SUBJECT DUTY, YOU WILL RETURN TO
THE ADDRESS INDICATED AFTER YOUR NAME AND UPON ARRIVAL YOU WILL STAND
RELEASED FROM SUBJECT DUTY.

7.  YOU ARE SUBJECT TO THE UNIFORM CODE OF MILITARY JUSTICE WHILE
PERFORMING DUTY UNDER THESE ORDERS.

8.  IF FOR ANY REASON YOU ARE UNABLE TO CARRY OUT THESE ORDERS, YOU
ARE DIRECTED TO RETURN THEM TO THIS COMMAND (OPD), WITH A
NOTIFICATION TO THAT EFFECT.  IF YOU DO NOT MEET THE WEIGHT/PERSONAL
APPEARANCE STANDARDS OF MCO 6100.10A, IT IS YOUR RESPONSIBILITY TO
DECLINE THESE ORDERS.

9.  WITHIN FIVE WORKING DAYS AFTER COMPLETION OF THIS DUTY, FORWARD
ORIGINAL ORDERS, REPORTING AND DETACHING ENDORSEMENTS, COMPLETED
ORIGINAL DD FORM 1351-2 (TRAVEL VOUCHER) AND LEGIBLE RECEIPTS, PLUS
ONE COMPLETE COPY TO THE COMMANDING GENERAL, MARINE CORPS RESERVE
SUPPORT COMMAND, 15303 ANDREWS ROAD, KANSAS CITY, MO  64147-1207.
NOTE: MARK THE ENVELOPE. ATTN: OPD.

10.  USE OF GOVERNMENT FACILITIES NOT REQUIRED AS YOU RESIDE LOCAL
AND WITHIN A REASONABLE COMMUTING DISTANCE OF THE ACTIVE DUTY SITE.

11.  WHILE PERFORMING SUBJECT DUTY YOU ARE AUTOMATICALLY COVERED BY
SGLI IN THE AMOUNT OF $200,000 IN ACCORDANCE WITH MCO P1080.38
PARAGRAPH 8066 UNLESS YOU HAVE MADE AN ALTERNATE ELECTION PRIOR TO
THE ISSUANCE OF THESE ORDERS.  INSURANCE PREMIUMS WILL BE DEDUCTED
AUTOMATICALLY DURING THE FINAL SETTLEMENT OF YOUR ORDERS.

12.  TRAVEL VIA PRIVATELY OWN CONVEYANCE (POC) IS AUTHORIZED.  USE OF
POC IS CONSIDERED TO BE ADVANTAGEOUS TO THE GOVERNMENT AND YOU ARE
RESPONSIBLE FOR ALL OPERATING EXPENSES.  SUCH USE ENTITLES YOU TO
MILEAGE IN LIEU OF TRANSPORTATION (MALT) AT A RATE OF $0.31 PER MILE
FOR THE OFFICIAL DISTANCE OF THE ORDERED GOVERNMENT TRANSPORTATION
REQUEST (GTR) PLUS PER DIEM.  CONSTRUCTIVE TRAVEL WHEN TRAVELING
BETWEEN TWO POINTS IN CONUS, IS USUALLY ONE DAY.  THIS IS PARAMOUNT
FOR THE PURPOSE OF DETERMINING NAVAL BENEFITS IN THE EVENT OF YOUR
INJURY OR DEATH WHILE TRAVELING TO OR FROM THE DUTY SITE.

13.  RENTAL CAR NOT AUTHORIZED.

14.  I, _____, CERTIFY THAT I MEET THE
HEIGHT/WEIGHT STANDARDS AS SET FORTH IN MCO 6100.10B, OR THAT IF I DO
NOT MEET THE HEIGHT/WEIGHT STANDARD,  I CERTIFY THAT I DO MEET THE
BODY FAT PERCENTAGE.  BY MAKING THIS CERTIFICATION, I ACKNOWLEDGE

2



3 MAR 2000

SUBJ: ADSW; CASE OF LTCOL ROBIN C BROOKINS

THAT I MAY BE SUBJECT TO ADMINISTRATIVE ACTION OR DISCIPLINE UNDER
THE UCMJ FOR MAKING A FALSE OFFICIAL STATEMENT SHOULD I BE FOUND TO
HAVE MADE A FALSE CERTIFICATION IN THE EXECUTION OF THESE ORDERS.
NOTE: IF YOU DO NOT MEET THE MARINE CORPS STANDARDS YOU ARE DIRECTED
TO RETURN THESE ORDERS TO CG, MCRSC (OPD), 15303 ANDREWS ROAD, KANSAS
CITY, MO 64147-1207 UNEXECUTED.

15. I VOLUNTARILY ACCEPT THESE ORDERS TO ACTIVE DUTY FOR SPECIAL
WORK. IN DOING SO, I UNDERSTAND THAT I MAY BECOME ELIGIBLE FOR
SANCTUARY ZONE PROTECTION UNDER TITLE 10, UNITED STATES CODE, SECTION
12686(A). AS A CONDITION TO ACCEPTANCE OF THESE ORDERS, HOWEVER,
PURSUANT TO SECTION 12686(B), I HEREBY WAIVE THE APPLICABILITY OF
SECTION 12686(A) TO THE PERIOD OF ACTIVE DUTY COVERED BY THESE
ORDERS. I UNDERSTAND THAT THE EFFECT OF THIS WAIVER IS TO REMOVE ANY
SANCTUARY ZONE PROTECTION THAT MIGHT HAVE OTHERWISE APPLIED AS A
RESULT OF THE EXECUTION OF THESE ORDERS.

16. PHYSICAL OR MENTAL INJURY OR ILLNESS THAT WOULD PROHIBIT, HAMPER
OR PERCLUDE THE EXECUTION OF THESE ORDERS MUST BE REPORTED TO THE
MEDICAL DEPARTMENT REPRESENTATIVE FOR DETERMINATION OF PHYSICAL OR
MENTAL QUALIFICATION PRIOR TO EXECUTION.

17. DRAFTER OF THESE ORDERS WAS: LCPL SMITH JS.

G. D. MEEHAN
BY DIRECTION

```
                      CAREER RETIREMENT CREDIT RECORD              06/06/2001
                                                                  09:42:10
SSN:          2       NAME:  BROOKINS, ROBIN C
RUC: 88836   COMPANY CODE:     PRES-GRADE: 05    RECSTAT: E    COMP CODE:
             PLT CODE: LEJE   TRNGRP: B   R-RECSTAT: 0   RCOMP CODE: KF


ANNV: 20010707 PEBD: 19760707 DOB: 19540301 MAND: 20050101  CERTDATE: 200008
                         INACDU        MBR-   TOTAL  INACDU ACDU      TOTAL
ANNIVERSARY YEAR         POINTS        SHIP   INACDU PNTS   POINTS    PNTS   SAT
INCLUSIVE DATES     PD  NPD COR FHD    PNTS   PNTS   CRED   PD  NPD   CRED   YEAR


20000707-00000000   066 000 000 000    14     0080    75    042 000   117   NO
19990707-20000706   047 000 000 000    15     0062    62    313 000   366   YES
19980707-19990706   048 000 000 000    15     0063    61    239 000   300   YES
19970707-19980706   048 000 000 000    15     0063    63    234 000   297   YES
19960707-19970706   060 000 000 000    15     0075    75    233 000   308   YES
19950707-19960706   048 000 000 000    15     0063    60    069 000   129   YES
19940707-19950706   054 002 000 000    15     0071    60    012 000   072   YES
19930707-19940706   047 002 000 000    15     0064    60    033 000   093   YES
19920707-19930706   050 000 000 000    15     0065    60    014 000   074   YES
19910707-19920706   016 000 000 000    10     0026    26    118 000   144   YES
19900707-19910706   000 000 000 000    00     0000    00    365 000   365   YES
19890707-19900706   000 000 000 000    00     0000    00    365 000   365   YES
19880707-19890706   000 000 000 000    00     0000    00    365 000   365   YES
19870707-19880706   000 000 000 000    00     0000    00    366 000   366   YES
19860707-19870706   000 000 000 000    00     0000    00    365 000   365   YES
19850707-19860706   000 000 000 000    00     0000    00    365 000   365   YES
19840707-19850706   000 000 000 000    00     0000    00    365 000   365   YES
19830707-19840706   000 000 000 000    00     0000    00    366 000   366   YES
19820707-19830706   000 000 000 000    00     0000    00    365 000   365   YES
19810707-19820706   000 000 000 000    00     0000    00    365 000   365   YES
19800707-19810706   000 000 000 000    00     0000    00    365 000   365   YES
19790707-19800706   000 000 000 000    00     0000    00    366 000   366   YES
19780707-19790706   000 000 000 000    00     0000    00    365 000   365   YES
19770707-19780706   000 000 000 000    00     0000    00    365 000   365   YES
19760707-19770706   000 000 000 000    04     0004    04    261 000   265   YES
```

--------------------------------COMPLETED------------------------------------

CAREER TOTALS

```
INACTIVE DUTY POINTS CORRES...... 0000  ACTIVE DUTY POINTS PAID......... 06681
INACTIVE DUTY POINTS PAID........ 0484  ACTIVE DUTY POINTS NON-PAID..... 00000
INACTIVE DUTY POINTS NON-PAID.... 0004  TOTAL ACTIVE DUTY POINTS........ 06681
FUNERAL HONORS DUTY POINTS....... 0000  TOTAL POINTS CREDIT............. 07278
MEMBERSHIP POINTS................ 148   TOTAL SATISFACTORY YEARS........    24
TOTAL INACTIVE DUTY POINTS....... 0636  TOTAL QUALIFYING SERVICE......24-00000
INACTIVE DUTY POINTS CREDIT...... 0606
```

ENCLOSURE (2)

**SEPARATION/TRAVEL PAY CERTIFICATE**
**NAVMC 11060  (REV. 7-90) (Previous editions will not be used)**
SN: 0000-00-006-7785    U/I: PADS OF 100

| PART I - COMMANDING OFFICER | |
|---|---|

UNIT RESERVE SUPPORT UNIT MCB CAMLEJ NC 28542    DATE 20000503

NAME (Last, First, Middle Initial)  BROOKINS ROBIN C.    SSN 214▮

AUTH. FOR SEP AND PROGRAM DESIGNATOR CODE    EFFECTIVE DATE OF SEPARATION FORM ACDU
MARCORSEPMAN PAR 1005    20000526

REASON  ☒DISCHARGE  ☐RETIREMENT  ☐RESIGNATION  ☐TRANSFER TO FMCR  ☐TRANSFER TO TDRL/PDRL
TYPE OF DISCHARGE  ☒HON  ☐GEN  ☐OTHER THAN HON  ☐BCD  ☐DD

HOME OF RECORD    PLACE FROM ORDERED TO ACDU
OXON HILL, MD    100 COACHMAN CT, JACKSONVILLE, NC 28546

PAY INFORMATION

RECOUP ENL BONUS:  ☐ YES ☐ NO    RECOUP REENL BONUS:  ☐ YES ☐ NO
☐  PAY DISCH GRATUITY. MARINE HAS $___ PERSONAL FUNDS
☐  PAY SEPARATION PAY. ACTIVE SERVICE ___ YEARS ___MONTHS. (CMC MESSAGE ATTACHED) PREVIOUSLY PAID $___ READJUSTMENT PAY
☐  PAY DISABILITY SEVERANCE PAY. ACTIVE SERVICE ___ YEARS ___ MONTHS (CMC MESSAGE ATTACHED)
☐  LEAVE AWAITING SEPARATION FROM (TIME AND DATE)_____ TO (TIME AND DATE) _____
☐  RECOUP NRS LOAN $_____ ☐ YES ___ ☐ NO
☒  OTHER CAREER LSL 60.0 DAYS.  LV BAL AS OF 20000526 WILL BE 0.5 DAYS.  LSL DUE MEMBER IS 0.0 DAYS.  MEMBER REQUESTS EFT PAYMENT.
DO NOT COMPLETE APPROPRIATION LINE FOR MARINES WHO RETIRE, TRANSFER TO THE FMCR, PDRL OR TDRL

ACCOUNTING/APPROPRIATION DATA-ACCOUNTING CLASSIFICATION FOR SEPARATION WITHOUT ORDERS

| APPROPRIATION SYMBOL AND SUBHEAD | OBJECT CLASS | BUREAU CONT NO | SUB ALLOT | AUTH'N ACCT'G ACTY | TRANS TYPE | PROPERTY ACCT'G ACTY | COST CODE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

☐ DATA CONTAINED ON VIS SCREEN JRED, MMPA IS CORRECT AND MAY BE USED TO SUBSTANTIATE DEPENDENCY FOR TRAVEL CLAIM.

SIGNATURE OF COMMANDING/CERTIFYING OFFICER    DATE
R. D. STEVEN SSGT PERS CHIEF    20000503

| PART II - MARINE | |
|---|---|

APPELLATE LEAVE ELECTION (If applicable)

A.  I ☐ DO ☐ DO NOT elect payment __ days RLB and __ days SLB in connection with involuntary appellate leave.
B.  In connection with voluntary appellate leave, I understand that I will remain in a pay status until my current leave balance of __ days is used, and will enter an excess leave status thereafter.
C.  I understand that my leave balance is __ days excess leave and that I will be charged pay and allowance for each day of excess leave.

TRAVEL ELECTION

☐ I DO NOT ELECT to be paid an advance separation allowances.

☐ I ELECT to be issued Government Transportation Request(s) for travel for myself and my dependents from _____
to _____    (Duty Station)
(City, state)

☐ I ELECT to be paid advance separation travel allowances for myself and my dependents from _____

to _____ by _____    (Duty station)
(Complete mailing address)    (Mode of travel)
Permanent Mailing Address 100 COACHMAN CT, JACKSONVILLE, NC 28546
(910) 353-4591
The amount advanced is a partial advance and the remaining amount due will not be paid unless and until a travel claim is submitted for travel actually performed to:

(Complete address of the disbursing office paying the advance)

I UNDERSTAND that in the event I or my dependents do not perform the travel as indicated above, or travel is performed for a lesser distance, an adjustment of the final amount due will be required. In the event I fail to file a travel claim upon completion of travel, the entire amount of the advance becomes due and payable to the United States Government.
I UNDERSTAND that adjustments to my Master Military Pay Account (MMPA) may be processed after my separation and that any additional pay or indebtedness notification caused by adjustments will be provided to me. Allotment and pay checks or Direct Deposit payments received after separating must be returned to the MCFC (SEP), Kansas City, MO 64197-0001. I should contact the MCFC (SEP) if I have any questions.

SIGNATURE OF MARINE    DATE
20000503

★U.S.GPO:1990-0-740-003/20029

ENCLOSURE (3)

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

DD-311-MBH

DOCUMENT IMPORTANT RECORD
SAFEGUARD IT.

Received 04/28/2006

Page 00033

ANY ALTERATIONS IN SHADED
AREAS RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) <br> BROOKINS ROBIN CECILE | 2. DEPARTMENT, COMPONENT AND BRANCH <br> USMC (KM) | 3. SOCIAL SECURITY NO. |
|---|---|---|

| 4.a. GRADE, RATE OR RANK: LTCOL | 4.b. PAY GRADE O-5 | 5. DATE OF BIRTH (YYMMDD) 540301 | 6. RESERVE OBLIG. TERM. DATE Year 00 Month 00 Day 00 |
|---|---|---|---|

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY <br> 100 COACHMAN CT <br> JACKSONVILLE NC 28546 | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) OXON HILL PRINCE GEORGES MD |
|---|---|

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND <br> RSU MCB CAMLEJ NC 28542 | 8.b. STATION WHERE SEPARATED <br> RSU MCB CAMLEJ NC 28542 (RUC 31015) |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED <br> CG MCRSC 15303 ANDREWS RD KANSAS CITY MO 64147 (RUC 88836) | 10. SGLI COVERAGE Amount: $200,000.00 | None |
|---|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| | a. Date Entered AD This Period | 99 | 05 | 17 |
| (9910) — EXECUTIVE OFFICER — 00 YRS 05 MOS | b. Separation Date This Period | 2000 | 02 | 10 |
| | c. Net Active Service This Period | 00 | 08 | 24 |
| (9910) — TAX CENTER OIC — 00 YRS 04 MOS | d. Total Prior Active Service | 17 | 02 | 10 |
| | e. Total Prior Inactive Service | 06 | 08 | 00 |
| | f. Foreign Service | 00 | 00 | 00 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 97 | 10 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) |
|---|
| ARMED FORCES RESERVE MEDAL W/M DEVICE |

| 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) |
|---|
| NONE |

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No X | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes X | No | 16. DAYS ACCRUED LEAVE PAID RLB 1.0 SLB 0.0 |
|---|---|---|---|---|---|---|

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | X No |
|---|---|---|

18. REMARKS:
WHILE A MEMBER OF THE MARINE CORPS RESERVE, YOU WILL KEEP THE COMMANDING GENERAL, MCRSC
(TOLL FREE 1-800-255-5082, OR IF WITHIN THE STATE OF KANSAS CALL COMMERCIAL (913) 491-7500,
DSN 465-3110) INFORMED OF ANY CHANGES OF ADDRESS, MARITAL STATUS, NUMBER OF DEPENDENTS,
CIVILIAN EMPLOYMENT OR PHYSICAL STANDARDS. NOT A FINAL DISCHARGE.

MEMBER IN SUPPORT OF OPERATION ALLIED FORCE IAW TITLE 10 U.S.C.
SECTION 12301 (D) PRESIDENTIAL SELECTIVE RESERVE CALL UP.

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) <br> 100 COACHMAN CT <br> JACKSONVILLE NC 28546 | 19.b. NEAREST RELATIVE (Name and address - Include Zip Code) <br> KRISTEN B BROOKINS (CH) 100 COACHMAN CT JACKSONVILLE NC 28546 |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO NC | DIR. OF VET AFFAIRS X Yes | No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) R. H. MEISER LTCOL ADJ |
|---|---|---|---|

| 21. SIGNATURE OF MEMBER BEING SEPARATED |
|---|

---

| SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only) |
|---|

| 23. TYPE OF SEPARATION <br> RELEASED FROM ACTIVE DUTY | 24. CHARACTER OF SERVICE (Include upgrades) <br> HONORABLE |
|---|---|

| 25. SEPARATION AUTHORITY <br> MARCORSEPMAN PAR 1005 | 26. SEPARATION CODE <br> MBK5 | 27. REENTRY CODE <br> RE-00 |
|---|---|---|

| 28. NARRATIVE REASON FOR SEPARATION <br> COMPLETION OF REQUIRED ACTIVE SERVICE |
|---|

| 29. DATES OF TIME LOST DURING THIS PERIOD <br> NONE | 30. MEMBER REQUESTS COPY 4 RCB Initials |
|---|---|

DD Form 214, NOV 88    S/N 0102-LF-006-1500 Previous editions are obsolete.

SERVICE - 2