**Case No.: 05-1311C**
**Judge Horn**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ROBIN C. BROOKINS**
**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA, et al.**
**Defendants**

---

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERATIVE MOTION FOR JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR JUDGMENT

---

Respectfully submitted,

GLASSMAN & BULLOCK

Stephen C. Glassman
1950 Old Gallows Rd., Suite 700
Vienna, VA 22182
Telephone: (301) 670-9200
Facsimile: (703) 902-9501

Counsel for Plaintiff

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

ISSUES PRESENTED........ 1

STATEMENT OF THE CASE........ 2

STATEMENT OF FACTS ........ 3

ARGUMENT........ 6

A. Legal Standard.

B. The Interests of Justice Require that this Court address the merits of Plaintiff's claim or grant Plaintiff leave to Amend the Complaint.

C. Plaintiff's Separation was not voluntary because she was obliged to separate upon the termination of the ADSW and could not obtain additional duty thereafter, 10 U.S.C 12686 imposes no burden on her to claim sanctuary and she was misled into executing the waivers.

D. Denial of the Plaintiff's Request for Reinstatement was arbitrary, capricious, contrary to the law or regulation or unsupported by substantial evidence.

E. Plaintiff's Cross-Motion for Summary Judgment should be granted.

CONCLUSION........ 31

# TABLE OF AUTHORITIES

## Case Authority


*Adkins v. United States*, *68 F.3d 1317, 1323 (Fed. Cir. 1995)*.............................................21

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc*. 988 F.2d 1157, 1161 (Fed Cir. 1993)..........................................................................................................27

*Arens v. United States,* 969 F.2d 1034 (U.S. Ct. App. Fed. Cl., 1992)...............................21,23

*Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000)....................6

*Block v. Powell*, 227 F. Supp. 2d 25 (D.D.C. 2002) ..........................................................16

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988)..........................................................................................................22

*Bowling v. United States*, 713 F.2d 1558, 1560-61 (Fed. Cir. 1983). Id at 990 ....................11

*Caddington,* 147 Ct. Cl. At 634 ...........................................................................22

*Chayra v. United States*, 23 Cl. Ct. 172, 178-179 (1991)...............................................19

*Christie v. United States*, 207 Ct. Cl. 333, 518 F.2d 584, 588.............................................16

*Clayton v. United States*, 225 Ct. Cl. 593, 595 (1980) ......................................................19

*Covington v. Department of Health & Human Services*, 750 F.2d 937, 942 (Fed. Cir. 1984)..........................................................................................................16

*Dilley v. Alexander*, 195 U.S. App. D.C. 332, 603 F.2d 914, 919, ......................................13

*Dilley v. Alexander*, 200 U.S. App. D.C. 354, 627 F.2d 407, 1980 U.S. App. LEXIS 17540 (1980)..........................................................................................................13

*Dodson v. United States*, 988 F.2d 1199, 1204-05 (Fed. Cir.), reh'g denied (1993).............20,23

*Downen v. Warner*, *481 F. 2d 642, 643* (9th Cir. 1973)......................................................11

*Driscoll v. United States*, *67 Fed. Cl. 22 (2005)*.............................................................8

Dunmar v. Ailes, 121 U.S. App. D.C. 45, 348 F.2d 51, 53 (D.C. Cir. 1965) ........................14

England v. Sys. Mgmt. Am. Corp., 38 Fed. Appx. 567, 571 (2002) .....................................24

Fluellen v. United States, 44 Fed. Cl. 97, 101 (1999), aff'd, 225 F.3d 1298 (Fed. Cir.), reh'g denied (2000)..........................................................................................20

Franklin Sav. Corp. v. Office of Thrift Supervision, 303 B.R.448 (U.S. Kan. 2004) ............6

Geiger v. Brown, 136 U.S. App. D.C. 132, 419 F.2d 714, 717-19 (D.C. Cir. 1969).............14

Godwin v. United States, 338 F.3d 1374, 1378 (Fed. Cir. 2003)..........................................20,21

Grieg v. United States, 640 F.2d 1261, 1266, 226 Ct. Cl. 258 (Ct. Cl. 1981).......................23

Harmon v. Brucker, supra.......................................................................................14

Haiselrig v. United States, 333 F.3d 1354, 1355 (Fed. Cir.) ................................................19

Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)............................................19

Hoskins v. United States, 40 Fed. Cl. 259, 271-72 (1998)....................................................19

Ivey v. United States, 873 F. Supp. 663 (1995)..............................................................8

Kirwin v. United States, 23 Cl. Ct. 497, 502 (1991)...........................................................19

Lawrence v. Dunbar, 919 F.2d 1525, 1525 (11th Cir. 1990) ................................................7

Lawrie v. Untied States, 227 Ct. Cl. 256, 259 (1981) .........................................................10

Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002)..........................................20

Mansell v. United States, 199 Ct. Cl. 796 (1972) ................................................................11

Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S.....8

Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) ...................8

Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998)............................................19

Powell v. Zuckert, 125 U.S. App. D.C. 55, 366 F.2d 634, 640-41 (D.C. Cir. 1966).............14

_Randolph-Sheppard Vendors of America v. Weinberger_, 254 U.S. App. D.C. 45, 48-50.....11,27

_Roberts v. Vance_, 119 U.S. App. D.C.367, 343 F.2d 236, 240 (D.C. Cir. 1964) ..................14

_Sanders v. United States,_ 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979)...........................19

_Sanders v. United States,_ 594 F.2d 804, 813-14, 219 Ct. Cl. 285 (Ct. Cl. 1979)..................19,23

_Sargisson v. United States,_ 913 F.2d 918, 922-23 (Fed. Cir. 1990) .....................................22

_Scharf v. Department of Air Force_, 710 F.2d 1572 (U.S. App. Fed. Cir., 1983....................17

_Scharf v. United States_, 710 F.2d 1572, 1574 (Fed. Cir. 1983)............................................14

_Service v. Dulles_, 354 U.S. 363, 379, 1 L. Ed. 2d 1403, 77 S. Ct. 1152 (1957)....................14,20

_Skinner v. United States,_ 219 Ct. Cl. 322, 594 F.2d 824 (1979)...........................................19

_Skinner v. United States,_ 594 F.2d 824, 830, 219 Ct. Ctl. 322 (Ct. Cl. 1979).......................23

_SRI International v. Matsushita Elec. Corp._, 775 F.2d 1107, 1116, 227 U.S.P.Q. (BNA) ...6

_Stone v. University of Maryland Medical System Corp_., 855 F.2d 167, 174
(4th Cir, 1988).................................................................................................16

_Strickland v. United States_, 69 Fed. Cl. 684 (2006), Fed. R. Civ. P. 56(c) ..........................23

_Strickland v. United States,_ 423 F.3d 1335, 1339 (Fed. Cir., 2005).....................................22

_Tippett v. United States_, 185 F.3d (U.S. App. Fed. Cir. 1999)............................................15

_VanderMolen v. Stetson_, 187 U.S. App. D.C. 183, 571 F.2d 617, 624 (D.C. Cir. 1977).....14

_Vitarelli v. Seaton_, 359 U.S. 535, 539, 3 L. Ed. 2d 1012, 79 S. Ct. 968 (1959)....................14

_Voge v. United States,_ 844 F.2d 776, 779 (Fed. Cir. 1988) ..................................................20

_Wagner v. United States_, 365 F.3d 1358, 1361, 1363 (Fed. Cir. 2004)................................19, 21

_Wisotsky v. United States,_ 69 Fed. Cl. 299 (2006)...............................................................20

_Wronke v. Marsh_, 787 F.2d 1569, 1576 (Fed. Cir. 1986)......................................................19

_Yee v. United States_, 512 F.2d 1383, 1387-88, 206 Ct. Cl. 388 (Ct. Cl. 1975).....................23

## Federal Rules of Court

Fed. R. Civ. P. 12(b)(1)........................................................................................6, 11

Fed. R. Civ. P. 15(a) ..........................................................................................9,

Fed. R. Civ. P. 56 ..............................................................................................6

## United States Code

10 U.S.C . § 12686(a) ......................................................................................4, 10, 12, 15

10 U.S.C . § 12686(b) ......................................................................................3, 4

10 U.S.C . § 1552 ............................................................................................4, 23

28 U.S.C. § 1491 .............................................................................................7, 8

28 U.S.C. §2201 ...............................................................................................2

## Miscellaneous

Title 5 USCS § 5101 ........................................................................................3

Title 5 § 701 ......................................................................................................8

37 U.S.C. § 204 .................................................................................................8

5 U.S.C.S. § 704 ................................................................................................8

Marine Corps Order P10001R.1J of March 10, 1999 ........................................12

Marine Corps Order 1001.59 of October 22, 2001 ............................................12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROBIN C. BROOKINS**<br>**Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.: 05-1311C** |
| | : | **(Judge Horn)** |
| **THE UNITED STATES OF AMERICA, et al.**<br>**Defendants** | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Comes now Robin C. Brookins, "Plaintiff", by and through undersigned counsel, Glassman & Bullock and Stephen C. Glassman and pursuant to RCFC 56 and respectfully submits this Response to the Defendant's Motion for Judgment or in the Alternative Motion for Judgment and Cross-Motion for Summary Judgment. In support thereof, Plaintiff states:

**I.**

**Issues Presented**

1. This case presents the following issues:

   a. Whether dismissal for lack of jurisdiction is mandated by Rule 12(b)(1) for Plaintiff's failure to identify the Military Pay Act in the Complaint where the interests of justice require that this Court, *sua sponte* address this claim in light of the Military Pay Act or grant the Plaintiff leave to amend to include the Military Pay Act in the Complaint.

   b. Whether the Plaintiff's discharge was voluntary;

c. Whether the Plaintiff is entitled to judgment upon the administrative record because the decision of the Secretary of the Navy to deny the Plaintiff's request for reinstatement to active duty was arbitrary, capricious, contrary to the law or regulation or unsupported by substantial evidence.

## II.

## Statement of the Case

2. Plaintiff, a Colonel in the United States Marine Corps, Individual Ready Reserves ("IRR") filed suit against the Secretary of the Navy, "Defendant", because the Defendant rejected the recommendation of the Board of Correction of Naval Record ("BCNR") which suggested that the Plaintiff was entitled to active duty retirement. Plaintiff contends that she was improperly released from active duty on May 26, 2000.

3. In her Complaint, Plaintiff filed suit under the Tucker Act, 28 U.S.C. § 1491, alleged causes of action for violation of 10 U.S.C. Section 12686(b), declaratory judgment under 28 U.S.C. § 2201 and mandamus. See, Complaint ("C"). She requested the following relief:

a. That the Defendant return the Plaintiff to active duty with active duty orders which would cause her to remain on active duty for such period as would be necessary for her to become eligible for a twenty year retirement; or alternatively,

b. That this Court order the Defendant to correct the records of the Plaintiff to reflect that she has served on active duty for a period of twenty years such that she is eligible for a twenty year retirement;

c. That this Court order the Defendant to pay to the Plaintiff pay and allowances due to her for the period of service she serves or is deemed to bvhave served in order for her to become eligible for a twenty year retirement;

d. That this Court order the United States to reimburse the Plaintiff attorneys fees and costs pursuant to Title 5 USCS § 5101 or such other authority which authorizes such an award in this case; and

e. That this Court grant such other and further relief as to the Court is just.

## III.

## Statement of Facts

4. Plaintiff was commissioned as a Lieutenant Second Class in the United States Marine Corps on December 10, 1976. She was promoted to Captain on October 5, 1982 to Major on October 1, 1992, to Lieutenant Colonel in 1997 and Colonel in 2003. See, Administrative Record ("AR") 16, C ¶2. She is unable to perform drills, AT or ADSW and satisfies point requirements through correspondence course work to the extent she is able to do so. See, C ¶2

5. Ms. Brookins was serving as the officer in charge of a consolidated tax center at Camp Lejeune, North Carolina The circumstances were that COL Brookins had received orders which covered the February through May, 2000 time frame. These orders were cancelled before they were implemented. This was done because of concern COL Brookins's orders would put her within the sanctuary provisions of 10 USC § 12686. See, AR 9, C¶4,Counter-Statement of Facts,¶ 3 .

6. Plaintiff's command requested that Head Quarters Marine Corps issue orders which allowed Plaintiff to continue to serve at the tax center since she was the only person available and qualified for the duty because the tax season was underway. See, AR 10.

7. On March 3, 2000, Plaintiff accepted orders for active duty covering the period of February 28, 2000 to May 26, 2000. AR 10. The Orders which were issued contained waiver language which provided as follows:

> I voluntarily accept these orders for active duty for special work. In doing so, I understand that I may become eligible for sanctuary zone protection under Title 10, United States Code, Section 12686(A). As a condition to acceptance of these orders, however, pursuant to section 12686(B), I hereby waive the applicability of Section 12686(A) to the period of active duty covered by these orders. I understand that the effect of this waiver is to remove any sanctuary zone protection that might have otherwise applied as a result of execution of these orders. AR23-24.

8. On May 26, 2000, Plaintiff was released form active duty, having completed more than 18 years of active duty during her career.

9. On July 17, 2001, Plaintiff applied for Correction of Military Record pursuant to 10 U.S.C. §1552. AR 17.

10. On September 12, 2002, the Chairman of the Board for Correction of Naval Records ("BCNR") submitted to the Defendant a review of Plaintiff's application for correction. The BCNR recommended as follows:

> Upon review and consideration of all the evidence of record, the Board concludes that the Petitioner's request warrants favorable action. The Board notes that she had over 18 years of active duty when she accepted the last period of active duty, and was required o sign a waiver of the sanctuary provision in order to reach that length of service. Additionally, she requested and has granted further ADSW orders only by agreeing to another waiver. HQMC has previously opined that since the authority to require such a waiver has not been delegated to HQMC by SECNAV, the waiver of sanctuary may not be legally enforceable. The Board has essentially agreed with this position in similar cases. Given the previous

advisory opinions and actions of the Board, the Board believes that since the waiver was improper, the issue is essentially moot. The Board further believes that this reasoning applies to her assertion that she would not claim sanctuary in order to obtain ADSW orders.

Therefore the Board concludes that the Petitioner's record should be corrected to show that she was not released from active duty on 26 May 2000, but continued to serve until the date she first became eligible for 20 year active duty retirement. This date is estimated to be 1 February 2002, but the actual date will be computed by HQMC and adjusted as appropriate. Given her agreement and the fact that she has not served the required time as COL the retirement should be in grade LTCOL. AR 11-12.

11. On October 23, 2002, Joseph Lynch ("Mr. Lynch"), Assistant General Counsel, acting on behalf of the Secretary, issued a statement as to his review of the decision of the BCNR. Mr. Lynch overturned the decision of the BCNR and denied Plaintiff relief. AR 4.

12. Upon receiving the adverse decision by Mr. Lynch and after having been advised that Mr. Lynch conducted an independent review of the case, Plaintiff sought from Mr. Lynch a complete copy of the independent review materials. AR 7. By letter dated January 13, 2003, Plaintiff was advised that no additional materials existed and that Mr. Lynch decided Plaintiff's case on the Report Proceedings issued by BNCR. AR 8.

13. On June 20, 2003, Plaintiff wrote directly to Mr. Lynch requesting that he provide rationale for his decision. AR 7.

14. On July 10, 2003, Mr. Lynch's successor, Robert T. Cali ("Mr. Cali"), responded to Plaintiff's request. He provided Plaintiff a copy of Mr. Lynch's decision. AR 3. No rationale was provided to Plaintiff for Mr. Lynch's decision.

15. On August 15, 2003, Plaintiff responded by requesting that Mr. Cali reconsider her case and Mr. Lynch's position. AR 2.

16. By letter dated October 7, 2003, Mr. Cali denied Plaintiff's request. AR 1.

**IV.**

**Argument**

**A.**

**Legal Standard**

**1.**

**Summary Judgment**

17. Rule 56 of the Rules of the United States Federal Court of Claims provides:

> A party seeking to recover upon a claim or counterclaim or to obtain a declaratory judgment may, at any time after the expiration of 60 days from the commencement of the action in this court or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in such party's favor upon all or any part thereof.

18. Plaintiff and Defendant have each filed Motions for Judgment. The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Franklin Sav. Corp. v. Office of Thrift Supervision*, 303 B.R. 488 (U.S. Kan. 2004), citing *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000).

19. The United States Court of Federal of Claims applies the same standard in deciding a motion for judgment on the agency record as it would in deciding a motion for summary judgment. Therefore, judgment on the agency record is only appropriate when there are no issues of material fact and when one party is entitled to a judgment as a matter of law. *Strickland v. United States*, 69 Fed. Cl. 684 (2006), Fed. R. Civ. P. 56(c). The Court views the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor. See *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107,

1116, 227 U.S.P.Q. (BNA) 577, 581 (Fed. Cir. 1985) (en banc). To the extent that factual questions are raised and are material to the result, dismissal on summary judgment is only proper when there is no reasonable view of the facts that could support the non-movant's position. See *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993).

20. As the following demonstrates, this Court should deny the Defendant’s Motion to Dismiss or in the Alternative for Judgment in its entirety and grant the Plaintiff’s Cross-Motion for Judgment.

**B.**

**THE INTERESTS OF JUSTICE REQUIRE THAT THIS COURT ADDRESS THE MERITS OF PLAINTIFF’S CLAIM OR GRANT PLAINTIFF LEAVE TO AMEND THE COMPLAINT.**

21. Defendant asserts that this Court should dismiss Plaintiff’s claim because the Court lacks jurisdiction. See, Motion to Dismiss or in the Alternative for Judgment at 7-11. According to the Defendant jurisdiction is lacking because Plaintiff failed to invoke the Court’s jurisdiction by pleading that Plaintiff’s claim arose under the Military Pay Act, a “money-mandating” statute which creates a substantive cause of action under the Tucker Act, 28 U.S.C. 1491. Motion 7-8.

22. Defendant’s Motion is based on Fed. R. Civ. P. 12(b)(1). Under Fed. R. Civ. P. 12(b)(i), a party can make two types of jurisdictional attacks: facial and factual. See, *Lawrence v. Dunbar*, 919 F.2d 1525, 1525 (11th Cir. 1990). Defendant alleges that the Court lacks jurisdiction because the Plaintiff failed to adequately plead that the Court has jurisdiction; thus the Defendant wages a facial attack on the subject matter jurisdiction of this Court. See, *Id.* at 1525.

23. "Facial attacks" on the complaint "require [that] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). See also *Ivey v. United States*, 873 F. Supp. 663 (1995). Thus, the Plaintiff is afforded safeguards consistent with parties facing motions to dismiss under Fed. R. Civ. P. 12(b)(6). See, *Lawrence*, *supra*.

24. A review of the Complaint indicates that Plaintiff's basis for jurisdiction are Titles 28 USCS § 1491 and 5 USCS § 701. Plaintiff does not raise the Military Pay Act, 37 U.S.C. 204, the act which the parties agree provides the Court with the authority to grant the relief requested by the Plaintiff.

25. Plaintiff proposes two solutions to this situation, neither of which prejudices the Defendant in any respect. A review of the Complaint indicated clearly that the claim is based on a request for monetary damages. The Defendant acknowledges that the Military Pay Act is the appropriate money-mandating statue which gives this Court authority to grant the relief requested under the Tucker Act. This Court could easily, in the interest of justice, ascertain that the Plaintiff intended to file her Complaint under the Military Pay Act in addition to the Tucker Act and her claim could be considered accordingly. Such an approach has been employed by this Court in the past. See, *Driscoll v. United States*, 67 Fed. Cl. 22 (2005). In *Driscoll*, similar to the case at bar, the Plaintiff filed a claim under the Tucker Act, but failed to plead the Military Pay Act. The Court, "in the interest of justice" considered, *sua sponte*, "two statutes that normally

would be proffered as providing jurisdiction "in this kind of case." See, *Driscoll* at 25. The Court addressed the merits of the Plaintiff's claim thereafter. See, Id.

26. Alternatively, this Court could afford the Plaintiff leave to amend the Complaint to correct the oversight. See Fed. R. Civ. P. 15(a) which notes that leave to amend should be freely granted in the interests of justice and where no prejudice will befall the opposing party and Exhibit 1 attached hereto which is a copy of Plaintiff's Motion for Leave to Amend Complaint with Amended Complaint attached as exhibit thereto. Under the circumstances present, the Defendant can hardly claim that it will be prejudiced in any respect. The Defendant addressed the validity of the Plaintiff's claim under the Military Pay Act in its Motion to Dismiss or in the Alternative for Judgment. Plaintiff agrees that the Military Pay Act provides this Court with the substantive basis to grant the relief requested under the Tucker Act. Defendant's argument will not change should leave be granted as is proper. The amendment requested would correct a procedural oversight without changing the substance of the claims in any respect; as well, the Court could focus squarely on the merits of the case.

27. As a consequence of the foregoing, this Court should deny the Defendant's Motion to Dismiss for lack of jurisdiction.

**C.**

**PLAINTIFF'S SEPARATION WAS NOT VOLUNTARY BECAUSE SHE WAS OBLIGED TO SEPARATE UPON THE TERMINATION OF HER ADSW ORDERS, IT WOULD HAVE BEEN FUTILE TO SEEK AN EXTENSION OF HER ORDERS, AND 10 U.S.C § 12686 IMPOSES NO BURDEN ON HER TO CLAIM SANCTUARY**

28. The Defendant's Motion must be denied. Defendant asserts that this Court lacks jurisdiction to address Plaintiff's complaint because she voluntarily separated from

the military. Defendant's position is based on two erroneous propositions: (1) that the Plaintiff's separation was voluntary notwithstanding the fact her ADSW orders terminated the Plaintiff's active duty on a date certain; and (2) that the Plaintiff failed to make a claim for sanctuary as provided by 10 U.S.C. § 12686. See, Motion at 14.

29. The Plaintiff was not at liberty to voluntarily separate from the military once she was under ADSW orders; and once the term ended, she had no choice but to comply. Additional orders would have been required to extend her tour. Plaintiff could not have prevented her release by accepting an additional tour because non was offered. See, *Lawrie v. United States*, 227 Ct. Cl. 256 (1981) where the Court found that a member of the Naval Reserves who refused to accept an extension of his tour due to the fact that he opposed the proposed place of his tour of duty was not involuntarily separated from the military because he could have prevented his release. In the case at bar, the Plaintiff could not prevent her release following termination of the ADSW orders. Unlike the Plaintiff in *Lawrie*, she was not presented with nor did she decline an extension of her ADSW orders. In addition, any request for additional orders would have been futile. The tax season was over so there was no need for additional services and the Marine Corps took the position that despite the fact that the Secretary of the Navy had not delegated the authority to the Commandant to issue waivers pursuant to 10 U.S.C. §12686, the waiver in COL Brookins' Orders was valid. Further, she did not know of the invalidity of the waiver provisions in her orders. See Plaintiff's Affidavit attached to Counter-Statement of Facts.

30. It has long been established in the law that if one is to be charged with the failure to act in a certain manner in order to avoid negative consequences of such

inaction, the obligation to act must not be futile. See, *Randolph-Sheppard Vendors of America v. Weinberger*, 254 U.S. App. D.C. 45, 48-50 (DC 1986) and *Cooper v. Marsh*, 807 F.2d 988 (U.S.C.Fed. Cl., 1986).[1] It is beyond cavil that any action on the part of COL Brookins would have been futile for the reasons stated above.

31. Defendant cites to *Mansell v. United States*, 199 Ct. Cl. 796 (1972) for the proposition that the term "involuntary" in the context of readjustment payments means "contrary to his own choice, preference and desire." Motion at 15. Defendant states, that the Court in *Mansell* ruled that release at the expiration of a tour of duty was voluntary. Id. This is not correct. In *Mansell*, the Court specifically held that the termination of a tour of duty prior to the date of expiration when the individual opposed the termination and failed to execute the extension was involuntary. See, 199 Ct. Cl. 796 (1972); see also *Lawrie v. United States*, 227 Ct. Cl. 256, 259 (1981). Therefore, *Mansell* does not provide sustenance to the Defendant's position because it does not opine whether leaving active duty is voluntarily where orders order a military member off of active duty on a specific date.

32. Defendant cites to the opinion of K.S. Plato in his Memorandum to the Board for Correction of Naval Records on behalf of the Commandant that COL Brookins was voluntarily release from active duty. (Defendant citing AR 33.) This opinion is blatantly

[1] In *Cooper*, the Court recognized:

> Implicit in the exhaustion doctrine is the concept that a plaintiff need seek review only before military tribunals empowered to provide the remedy sought. *See id.* at 560. Some courts have expressed this concept as an exception to the exhaustion doctrine where pursuit of a remedy before a particular forum would be futile**,** *id.* at 559; *see Randolph-Sheppard Vendors of America v. Weinberger*, 254 U.S. App. D.C. 45, 795 F.2d 90, 104-108 (D.C. Cir. 1986) (discussing futility as an exception to the doctrine of exhaustion of administrative remedies) or where the tribunal is inappropriate for resolving the issue presented, *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973). We prefer the view that a plaintiff has exhausted his military remedies when he has attempted to obtain review in every forum which could provide meaningful relief. *See Bowling v. United States*, 713 F.2d 1558, 1560-61 (Fed. Cir. 1983). *Id* at 990.

incorrect and defies the definition of military orders. The orders issued to COL Brookins by the Marine Corps are very specific. She is to enter active duty on 28 February 2000 and is to remain on active duty to 26 May 2000. Once she accepted these orders and unless they were cancelled or modified by the Marine Corps she was obliged to follow them to the letter. She had no choice. See Exhibit 1 attached to Plaintiff's Affidavit which is attached to the Counter Statement of Facts. (Brookins Affidavit and Marine Corps Order 1001.59 of 22 October 2001 and its predecessor.)

33. Likewise, the fact that the Plaintiff executed a Separation/Travel Pay Certificate is of no moment. See, Marine Corps Order P10001R.1J of 10 March 1999, page 3-22. Plaintiff was duty bound to sign such a certificate in order to comply with her orders. Once accepting the orders she must report, perform the duties described and leave active duty as ordered. See Plaintiff's Affidavit attached to the Counter-Statement of Facts.

34. Defendant's reliance on 10 U.S.C. § 12686 is misplaced. 10 U.S.C. § 12686 does not require any action on the Plaintiff's part in order to be involuntarily released from active duty. 10 U.S.C. § 12686 is absolutely silent on the matter of making a claim for sanctuary. Therefore, the suggestion that a military member must make a claim for sanctuary under its provisions is plainly wrong. In pertinent part the statute provides as follows:

> **(a) Limitation.—** Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, **may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary.**

> **(b) Waiver.—** With respect to a member of a reserve component who is to be ordered to active duty (other than for training) under section 12301 of this title pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order. In carrying out this subsection, the Secretary concerned may require that a waiver under the preceding sentence be executed before the period of active duty begins. (Emphasis added.)

35. Nowhere within the statute is there a requirement that a military member claim sanctuary or request retention at or before discharge. The burden is on the Secretary to comply with the law and insure that it was being properly administered. In this case the Commandant of the Marine Corps did not have the authority to issue active duty orders which contained a waiver under Section (b) of the statute. The Commandant never reported that fact to the Plaintiff. Therefore, even if there was an obligation on Plaintiff, because the Commandant knowingly withheld the information regarding the dubious nature of his authority to require waiver of sanctuary, the Plaintiff could not ascertain that fact until it had the light of publicity.

36. Likewise, the Secretary had an abiding duty to comply with the law. At the time of discharge the Secretary knew that Plaintiff was being discharged though she was covered by the sanctuary provision. He also knew that he had never authorized the Commandant of the Marine Corps to issue active duty orders containing waivers. Therefore, when the Secretary released the Plaintiff from active duty he violated the Statute. See *Dilley v. Alexander, 195 U.S. App. D.C. 332, 603 F.2d 914, 919,1979 U.S. App. LEXIS 12897, 195 Am. Disabilities Cas. (BNA) 332 (1979) Clarified by Dilley v. Alexander, 200 U.S. App. D.C. 354, 627 F.2d 407, 1980 U.S. App. LEXIS 17540 (1980)* where the Court held that

> [i]t is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. See *Vitarelli v. Seaton, 359 U.S. 535, 539, 3 L. Ed. 2d 1012, 79 S. Ct. 968 (1959); Service v. Dulles, 354 U.S. 363, 379, 1 L. Ed. 2d 1403, 77 S. Ct. 1152 (1957).* The military departments enjoy no immunity from this proscription. See *Harmon v. Brucker, supra; Geiger v. Brown, 136 U.S. App. D.C. 132, 419 F.2d 714, 717-19 (D.C. Cir. 1969); Roberts v. Vance, 119 U.S. App. D.C. 367, 343 F.2d 236, 240 (D.C. Cir. 1964).* It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency. See, e.g., *VanderMolen v. Stetson, 187 U.S. App. D.C. 183, 571 F.2d 617, 624 (D.C. Cir. 1977); Powell v. Zuckert, 125 U.S. App. D.C. 55, 366 F.2d 634, 640-41 (D.C. Cir. 1966); Dunmar v. Ailes, 121 U.S. App. D.C. 45, 348 F.2d 51, 53 (D.C. Cir. 1965).* The logic of these cases derives from the self-evident proposition that the Government must obey its own laws.

37. Defendant relies on the waiver signed by the Plaintiff and the actions taken subsequent to execution of the waiver as evidence of Plaintiff's intention of voluntarily separating from the Marines. Motion at 14-15. The issue of whether or not the waiver provides evidence as to the Plaintiff's voluntary intentions is moot. See, AR 11-12. No authority has been delegated by the Secretary of the Navy to Headquarters Marine Corps(HQMC) authorizing HQMC to require a waiver of the sanctuary provisions of 10 U.S.C. § 12686 at times pertinent in this case. Indeed, when the Marine Corps was specifically asked if it had any authority to invoke the waiver provisions of 10 U.S.C. § 12686, it failed to respond. AR 11, 89 and 82. The issue of whether or not the Plaintiff was voluntarily released from active duty is moot as to this case because HQMC did not have the authority to issue active duty orders with waiver of sanctuary provisions. Compl. p. 4.

38. In fact, although the Defendant asserts that "waiver operates to prevent Ms. Brookins from manipulating the system", it is the Defendant who has manipulated the

system by relying on an illegal waiver. The Defendant seeks to enforce a waiver it had no legal authority to require in the first place. Plaintiff's express position in this litigation is that had she known the waiver was of no legal authority, she would not considered it binding. Therefore, she would not have expressed any intention to separate from the military. Even the communications she made to the military to the contrary were based on the faulty premise that the waivers were valid. She believed that the only way to obtain ADSW was to sign the waivers. By presenting waivers to her without explaining to the Plaintiff that the Marine Corps lacked the authority to request a waiver, the Defendant misrepresented that the waiver was valid. Relying on such representations has cost the Plaintiff her sanctuary under 10 U.S.C. § 12686. As a consequence, this Court should determine that the Plaintiff's separation was not voluntary as alleged.

39. The most that can be said of the Defendant's position is that some cases have concluded that there is a presumption that a discharge is voluntary where the service member resigns or retires; however, the presumption is rebutable. *Tippett v. United States*, 185 F.3d 1250 (U.S. App. Fed. Cir. 1999). An otherwise voluntary resignation or request for discharge is rendered involuntary if it is submitted under duress or coercion, or results from misrepresentation or deception on the part of government officers. Misrepresentation can be caused by providing misleading information or by failing to provide relevant information. Information is considered misleading if a reasonable person would have been misled by the representation. The misleading information can be negligently or even innocently provided. If the employee materially relies on the misinformation to the employee's detriment, the employee's retirement is considered involuntary. Id. at 1255. See also, *Scharf v. United States*, 710 F.2d 1572, 1574 (Fed.

Cir. 1983); *Covington v. Department of Health & Human Servs.*, 750 F.2d 937, 942 (Fed. Cir. 1984); *Christie v. United States*, 207 Ct. Cl. 333, 518 F.2d 584, 588 (Ct. Cl. 1975).

40. The cases cited supra are significant because they confront the issue of service or agency members who separated "voluntarily" after relying on false representations made by the agency in question. The fact that they relied on the misrepresentation of the agency nullified their voluntary action and rendered the voluntary action involuntary. See, *Covington*, supra where the Court determined that a member of the Department of Health and Human Services' voluntary resignation was deemed involuntary where a notice signed by the agency member was determined to be false after the agency member resigned. Misrepresentation can be caused by providing misleading information or by failing to provide relevant information. See *Covington*, 750 F.2d at 943. Information is considered misleading if a reasonable person would have been misled by the representation. See *Id.* at 942. "The misleading information can be negligently or even innocently provided; if the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary." *Id*. A representation is material if it "concerns the consequences of the resignation." *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167, 174 (4th Cir., 1988). Covington has been interpreted as standing for the proposition that an employee's decision based on misinformation or lack of information cannot be binding. See, *Bloch v. Powell*, 227 F. Supp. 2d 25 (D.D.C. 2002).

41. The touchstone of the Court's analysis is whether the service member's choice was informed. *Covington* at 942. To determine whether a resignation or retirement is voluntary, a court must examine the surrounding circumstances to test the ability of the

employee to exercise free choice. *Scharf v. Department of Air Force*, 710 F.2d 1572 (U.S. App. Fed. Cir., 1983). An employee is not required to show an intention to deceive on the part of the agency in order for his retirement to be held involuntary. Rather, it is sufficient if the employee shows that a reasonable person will have been misled by the agency's statements. An objective test is applied in situations involving duress or coercion. An objective test is equally applicable to situations involving misrepresentations or deception. Applying the objective test, the court will neither inquire into the subjective perceptions of the employee nor the subjective intentions of the agency. *Id.* at 1575.

42. Defendant states “Ms. Brookins did not involuntarily separate. She has failed to allege facts that would show that she separated from the military unwillingly.” Motion at 13-14. Defendant is incorrect as the Defendant’s singular premise is based on the fact that the Plaintiff repeatedly executed waivers and undertook actions post-execution which indicate her intention to separate such as signing Separation/Travel Pay Certificates. Defendant’s premise is incorrect as a matter of law because all actions undertaken by the Plaintiff after execution of the waivers were based on the concealed fact that the waivers never carried legal affect. Factually the Defendant is incorrect because Plaintiff alleged in her Complaint that the waiver was without legal significance because the Defendant never delegated authority to waive sanctuary to Headquarters Marine Corps. See, C. at 4, ¶11.

43. Defendant candidly admits that a voluntary separation can be rendered involuntary if the service member detrimentally relies on misrepresentations. See, Motion at 13 and *Scharf*, supra. Despite the argument presented above, even if this Court

were to determine that Plaintiff's termination of active duty was voluntary as a matter of law; that is, that as a general proposition one who complies with active duty orders and leaves active duty as ordered is voluntarily separating from active duty service, it is clear from the facts of this case that Plaintiff was persistently and regularly misled by the Defendant into leaving active duty under such circumstances. She was repeatedly presented with waiver language notwithstanding the fact that the Defendant never disclosed that the waiver in question was a legal nullity. By definition, the fact that the Defendant concealed that it was without authority to seek waiver in the first instance renders any decision made by the Plaintiff with respect to the waiver uninformed. The omission by the Defendant as to the invalidity of the waiver was material because it concerned the consequences of the resignation. *Stone*, supra. The Defendant misrepresented its authority to request waiver of sanctuary simply by presenting the waiver to the Plaintiff. BCNR supported the position that the waivers were invalid. AR 11-12. Had the fact that the waiver was legally insufficient been disclosed, the Plaintiff would not have executed them. See, Brookins Affidavit. As a consequence, there is sufficient evidence in the record and sufficient legal basis for this Court to determine that Plaintiff's separation was involuntary. Therefore, the Defendant's Motion should be denied.

**D.**

**DENIAL OF THE PLAINTIFF'S REQUEST FOR REINSTATEMENT WAS ARBITRARY, CAPRICIOUS, CONTRARY TO THE LAW OR REGULATION OR UNSUPPORTED BY SUBSTANTIAL EVIDENCE.**

**1.**

**Standard of Review**

44. The standard of review is as follows:

> Review of the administrative decision is limited to determining whether the …action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced. [Citations omitted.] *Clayton v. United States*, 225 Ct. Cl. 593, 595 (1980). *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (footnotes omitted; alterations in original); n5 see also *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) ("The Court of Federal Claims reviews a Board decision to determine if it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."), reh'g denied (2004); *Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004); *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir.), reh'g denied (2003). Similarly, in *Porter v. United States*, the Federal Circuit indicated that: "When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See *Skinner v. United States*, 219 Ct. Cl. 322, 594 F.2d 824 (1979)." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998), cert. denied, 528 U.S. 809, 120 S. Ct. 41, 145 L. Ed. 2d 37 (1999).

45. In military pay cases:

> [t]he plaintiff bears the burden of showing that the AFBCMR's [Air Force Board for Correction of Military Records'] action was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) [cert. denied, 479 U.S. 853, 107 S. Ct. 188, 93 L. Ed. 2d 121 (1986)]; *Hoskins v. United States*, 40 Fed. Cl. 259, 271-72 (1998). To prevail under the arbitrary and capricious standard, plaintiff must demonstrate that evidence was ignored or unreasonably construed, or that designated duties were not performed by the AFBCMR. *Kirwin v. United States*, 23 Cl. Ct. 497, 502 (1991). Moreover, "plaintiff must overcome the presumption that 'administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" *Chayra v. United States*, 23 Cl. Ct. 172, 178 (1991), quoting *Sanders v. United States*, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979). "While the court might disagree with the board's decision, it

> cannot substitute its own judgment for the board's if reasonable minds could reach differing resolutions of a disputed fact." *Chayra*, 23 Cl. Ct. at 178-179. *Fluellen v. United States*, 44 Fed. Cl. 97, 101 (1999), aff'd, 225 F.3d 1298 (Fed. Cir.), reh'g denied (2000).

46. The Federal Circuit also has written that "a soldier who has sought relief from a correction board is bound by its decision unless he can demonstrate by 'cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence.'" See, *Wisotsky v. United States*, 69 Fed. Cl. 299 (2006), citing *Dodson v. United States*, 988 F.2d 1199, 1204-05 (Fed. Cir.), reh'g denied (1993) (citations omitted).

47. Although courts should be responsible and not seek to interfere in military matters beyond their competence; nonetheless, it is a court's duty to identify and review errors in process and procedure, especially when those procedures have been established by the military itself. The Court of Appeals for this Circuit has noted that

> [a]gencies are bound by the applicable statutes and regulations. *Id.* at 1204; see also *Wagner v. United States*, 365 F.3d at 1361 ("We begin with the initial premise that an agency is bound by its own regulations." (citing *Service v. Dulles*, 354 U.S. 363, 388, 77 S. Ct. 1152, 1 L. Ed. 2d 1403 (1957))); *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all. . . ."), cert. denied, 488 U.S. 941, 109 S. Ct. 365, 102 L. Ed. 2d 355 (1988). This principle also applies to the military branches. Like any other body of the government, the military is bound by statute and its own regulations. "Even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

In *Godwin v. United States*, the Court of Appeals for the Federal Circuit likewise stated that

> [t]he composition, training, equipping, and control of a military force is frequently "beyond the institutional competence of courts to review." *Lindsay v. United States*, 295 F.3d at 1257. . . . However, a claim of a procedural violation may be justiciable because "'the test or standards against which this

> court measures the military's action are inherent: they are the applicable statutes and regulations.'" *Godwin v. United States*, 338 F.3d 1374, 1378 (Fed. Cir. 2003). *Lindsay* at 1257-58 (quoting *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995)).

48. In addition, violations of internal operating procedures also may lead to court ordered relief. See *Wagner v. United States*, 365 F.3d at 1363. The Court will intervene to correct an error of law. See, *Arens v. United States*, 969 F.2d 1034 (U.S. Ct. App. Fed. Cl., 1992).

**2.**

**The Defendant's decision was contrary to the law and illegal.**

49. Defendant's actions were illegal because the waiver was invalid. See Section III(C) supra incorporated herein by reference.

50. Defendant's decision that the Plaintiff left voluntarily was legally erroneous. See Section III (C).

51. Defendant erroneously attempts to retroactively apply his decision to the waiver in Plaintiff's orders. The Defendant posits that the Defendant's actions were not contrary to the law or regulations because the Defendant approved of Plaintiff's release "*post hoc*". Defendant's notion that it has the authority to approve of the Plaintiff's release *post hoc* is unfounded in the law. In effect, what the Defendant says it did by *post hoc* approval of the Plaintiff's release was to (1) validate the previously invalid waiver after it was accepted by the Plaintiff; and (2) apply the newly validated waiver in this case retroactively to the date when the waiver was inserted in Plaintiff's orders. The Defendant's use of the *post hoc* approval rationale is tantamount to an *ex post facto* application of a newly issued regulation. Retroactive application of regulations is not favored by the law unless specifically authorized by statute.

> [T]he Federal Circuit recently rejected this retroactivity argument with regard to section 266(a) in *Sargisson v. United States*, 913 F.2d 918 (Fed. Cir. 1990). "'Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" *Sargisson, supra*, 913 F.2d at 922 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988)). Though the Federal Circuit recognized the "irreconcilable conflict" between *Bowen* and *Bradley*, the court chose to follow the rule articulated in *Bowen* that retroactivity is not presumed. *Sargisson, supra*, 913 F.2d at 922-23. The court concluded that "there is no indication in the language of the amendment to section 266(a) or its background that Congress intended that it apply to boards convened before its effective date." *Sargisson, supra*, 913 F.2d at 923. *Mai v. United States*, 22 Cl. Ct. 664, 667-8 (1991).

52. Defendant has not offered any statutory authority which empowered the Defendant to retroactively validate the previously invalid waiver. Indeed the notion that the Defendant can delegate to the Commandant of the Marine Corps with regard to granting waiver after waivers have been executed when granted had no force is an anathema to the traditional development of government and military regulations. The suggestion that the Defendant has the authority to delegate waiver authority to the HQMC *post hoc* is not supported by law.

53. Defendant relies on *Strickland v. United States*, 423 F.3d 1335 (Fed. Cir. 2005), for the proposition that the Defendant holds the power to overrule the Board of Corrections. While *Strickland* states a general rule applicable to this area of law, factually, the case is inapposite. In *Strickland*, the United States Court of Appeals for the Federal Circuit remanded the case to the trial Court to determine whether the Secretary of the Navy's actions were arbitrary, capricious or contrary to the law or regulation. The Court stated the duty of the Board and the Secretary of the Navy as follows:

> The Secretary and . . . boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Id.* (quoting *Caddington*, 147 Ct. Cl. at 634). Accordingly, "the boards for correction of military records may be reviewed for

> failure to correct plain legal error committed by the military." *Dodson*, 988 F.2d at 1204 ("These statutes and regulations make clear that the civilian correction boards have a duty to determine whether there has been error or injustice and, if there has been, to grant thorough and fitting relief. The boards for correction of military records may be reviewed for failure to correct plain legal error committed by the military. Such legal error includes the military's 'violation of statute, or regulation, or mandatory procedure, or unauthorized act.'") (citing *Arens* v. *United States, 969 F.2d 1034,1037 (Fed. Cir. 1992); Grieg* v. *United States*, 640 F.2d 1261, 1266, 226 Ct. Cl. 258 (Ct. Cl. 1981); *Sanders* v. *United States*, 594 F.2d 804, 813-13, 219 Ct. Cl. 285 (Ct. Cl. 1979) (*en banc*); *Skinner* v. *United States*, 594 F.2d 824, 830, 219 Ct. Cl. 322 (Ct. Cl. 1979); *Yee* v. *United States*, 512 F.2d 1383, 1387-88, 206 Ct. Cl. 388 (Ct. Cl. 1975)).

54. Ultimately in *Strickland*, the Court determined that the Board acted illegally because it failed to take action to correct a contradiction between regulations governing the conduct in question which it was aware of. See, *Strickland*, 69 Fed. Cl. 684, 706-9.

55. In the case at Bar, the BCNR recommended the correct path, i.e, reinstatement based upon the Defendant's failure to delegate valid authority to HQMC to obtain waiver incident to 10 U.S.C. § 12686. The Defendant failed in its duty to correct the injustice.

**3.**

**Even If The Defendant's Action Was Not Contrary To The Law, His Conduct Was Arbitrary or Capricious.**

56. Defendant recites with great detail statutory support for the proposition that the Defendant is authorized with plenary power to render decisions on recommendations rendered by the BCNR. See, Motion 24. Pursuant to 10 U.S.C. § 1552, the Secretary has the authority to review the administrative qua quasi-judicial decision of the BCNR in order to correct legal error or remove an injustice. It is not in dispute that the Defendant has the authority to pass judgment on the recommendations of the BCNR. All judgments issued by the Defendant in reviewing the decisions of the BCNR must be issued according to the law or must not be arbitrary or capricious. In the case at bar, the arbitrary

and capricious nature of the Defendant's decision is demonstrated by his attempt to give validity to the waiver, *post hoc*, when the authority for the HQMC to issue the waiver in the first place was never properly delegated by the Defendant.

57. In determining whether a government official wielding discretionary authority has abused his discretion, Courts consider four separate factors:

> (1) whether the government official acted with "subjective bad faith," keeping in mind the "well-nigh irrefragable proof" needed to overcome the presumption that a government official performs his duties in good faith, i.e., to establish that this official acted in bad faith; (2) whether the official had "no reasonable basis" supporting the decision at issue, a factor closely associated with the bad-faith test stated above; (3) the amount of discretion vested in the government official who rendered the decision under scrutiny, coupled with consideration of the quantum of proof showing the alleged wrongdoing at issue; and (4) whether a proven violation of the relevant statutes or regulations can alone render a decision was arbitrary and capricious and thus provide a basis for recovery. Also, the first factor (bad faith), second factor ("no reasonable basis") or fourth factor (proven violation of statute or regulation) can each separately provide a basis for relief. *England v. Sys. Mgmt. Am. Corp.*, 38 Fed. Appx. 567, 571 (2002).

58. In the present case the Defendant creates a house of cards by using his quasi-judicial authority to review decisions of the BCNR and use that review as a vehicle for implementing operational tasks he is responsible to perform in running the naval establishment. This usurpation of the administrative judicial function as a means of implementing changes to what he may regard as previously made erroneous operational decisions is arbitrary and capricious. The Secretary attempts to retroactively cure a failure to delegate authority to waive sanctuary to the Commandant by deciding that invalid orders are rendered valid *ab initio* through reversing a BCNR decision. This is clearly an abuse of the Secretary's authority to review decisions of the BCNR, since that authority never contemplated that decisions by the Secretary in such a review were to be

used as a means of delegating statutory authority under unrelated law. There is no rational basis for the Secretary's conduct.

59. Defendant states "Assuming *arguendo* that the discharge was involuntary, the first opportunity to take action presented itself via plaintiff's BCNR petition. When presented with BCNR's recommendation, SECNAV took action by rejecting their recommendation, effectively approving the discharge." Motion at 22. This position is nonsensical. The Secretary had a continuing responsibility to administer the operations of the naval establishment. One of those responsibilities was to make determinations as to who had the authority to issue waivers under 10 U.S.C. §12686. Either through neglect or rational decision the Secretary elected not to delegate that authority to the Commandant. Therefore, when the Commandant issued such waivers in the orders of Marine Corps reservists his actions were a nullity. The Secretary could have changed that consequence at any time. He elected not to do so until he decided to overrule the BCNR in this case; and according to the Secretary, he could not have done so otherwise. This is incredible.

**4.**

**Defendant's Decision was not supported by Substantial Evidence**

60. The Defendant asserts that the Defendant "carefully reviewed and considered allegations raised by Ms. Brookins in her petition and matters submitted in support thereof" and that he also considered the Navy's advisory's opinions, the BNCR recommendation and subsequently denied the relief. Motion at 27. The government has no way of knowing whether the Defendant or his designee carefully reviewed and considered the allegations raised by Plaintiff or not. Any suggestion to the counter is

hyperbole. Regardless, the Defendant reached the conclusion that the Plaintiff's discharge was voluntary. The decision that the release was voluntary was error regardless of whether the Defendant thoroughly reviewed the evidence or not. The error in this case does not rely on a review of the factual evidence, but rather an analysis of the law. Therefore recitations of the considerations given the facts by the Defendant are irrelevant.

61. The facts of this case are stated in the Administrative Record and for but for some areas of disagreement between the parties are stated in the Stipulated Facts.

62. The Defendant takes a position that the Plaintiff's actions are somehow untruthful. See, Motion at 28. The Defendant is not in any position to cast dispersions in this case. The singular source of any discord in this case is that the Defendant allowed HQMC to illegally issue waivers and then failed to take appropriate corrective action when the opportunity arose. While the Defendant asserts that command should be able to rely on the word of officers in the ranks, the same can be said of the Defendant. The Officers should be able to rely on the word of their supervisors and that the orders which are issued from command are legally sound when issued.

63. The passage cited by the Defendant asserting that the Plaintiff did not leave active duty voluntarily is irrelevant. Motion at 29. Any representation made by Plaintiff as to her intention to sign a waiver was premised on the understanding that it was valid and enforceable. The fact that she signed many waivers does not render her waiver voluntary and knowing if she never knew that the waiver was of no legal effect. Each waiver she signed which was issued by HQMC without authority from Defendant was a nullity.

64. Defendant asserts that the Plaintiff should have requested mast from her commanding officer pursuant to Marine Corps regulations. This position is irrelevant as well. The fact that the waiver was invalid was not known until after Plaintiff was separated from active duty. Therefore, the approach suggested by the Defendant would have been futile. See, *Randolph-Sheppard Vendors of America v. Weinberger*, 254 U.S. App. D.C. 45, 48-50 (DC 1986). Nonetheless, the position that she should have requested mast is unsupported by law.

65. Consequently, and as the Administrative Record reflects, the Defendant's decision was not based on the substantial evidence. The Motion should be denied.

**D.**

**Plaintiff's Cross-Motion for Summary Judgment Should be Granted.**

66. As the foregoing demonstrates, Plaintiff has met her burden sufficient for this Court to enter summary judgment in her favor. There is no dispute as to material facts. Although Plaintiff voluntarily executed a waiver, she did so upon the misrepresentations of the Defendant with regard to the validity of the waiver. Brookins Affidavit. As a consequence, Plaintiff's separation from the military was involuntary because HQMC never had valid authority to request that the Plaintiff waive sanctuary. There is no reasonable view which could support the Defendant's position that the Plaintiff voluntarily separated from the military and is therefore not entitled to sanctuary. As a consequence, summary judgment in Plaintiff's favor is proper. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993).

## V.

## Conclusion

66. For the foregoing reasons, the Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss or in the Alternative for Judgment in its entirety and grant the Plaintiff's Motion for Summary Judgment in its entirety and award Plaintiff any other and further relief as this Court deems just and proper.

Respectfully submitted,

GLASSMAN & BULLOCK

______s/Stephen C. Glassman______
Stephen C. Glassman, Esquire
1950 Old Gallows Road, Suite 700
Vienna, VA 22182
(301) 670-9200