**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROBIN C. BROOKINS**<br>**Plaintiff,** | : | |
| **v.** | : | **Case No.: 05-1311C**<br>**(Judge Horn)** |
| **THE UNITED STATES OF AMERICA, et al.**<br>**Defendants** | : | |

**PLAINTIFF'S COUNTER-STATEMENT OF FACTS AND PROPOSED ADDITIONAL FACTS**

Pursuant to Rule 56.1 (B) (2) Plaintiff files her Counter-Statement of Facts and Proposed Additional Facts and in so doing states as follows:

**COUNTER-STATEMENT OF FACTS[1]**

1. Agreed.

2. Agreed.

3. "Ms. Brookins was serving as the officer in charge of a consolidated tax center at Camp Lejeune, North Carolina, when her request for further Active Duty for Special Work ("ADSW") orders, until May 26, 2000, was denied because she was approaching 18years of active duty and would be eligible to claim sanctuary under the provisions of Title 10 United States Code section 12686. AR 9."

Disagree. The circumstances were that COL Brookins had received orders which covered the February through May, 2000 time frame. These orders were cancelled before they were implemented. This was done because of concern COL Brookins orders

[1] Paragraph numbers in this Counter-Statement shall be those paragraph numbers used by the Defendant in its Statement of Facts. Paragraphs where the Plaintiff agrees with the Defendant's Statement of Fact will not be repeated in the text. "Compl. ___" refers to Plaintiff's Complaint filed herein. "AR ____" refers to the Administrative Record filed by the Defendant herein.

would put her within the sanctuary provisions of 10 USC § 12686. Apparently, without fully appreciating those implications and after considering the possibility that COL Brookins could sign a sanctuary waiver and could later contest the validity of the waiver, the Marine Corps issued ADSW orders to COL Brookins taking her into the sanctuary period. This risk was taken because of the significant services which COL Brookins was providing by operating the Camp Lejeune Consolidated Tax Center, AR 84-86

4. Agreed.

5. Agreed.

6. Agreed.

7. Agreed.

8. "Ms. Brookins, voluntarily waived the application of 10 U.S.C. section 12686, the sanctuary zone protection." (Citing AR 2; Compl. ¶ 6)

Disagree. This is not a statement of fact but rather a statement of the very issue to be decided by the Court. Though the Orders accepted by COL Brookins contained the voluntary waiver language regarding benefits of 10 USC § 12686 (b), because the Commandant had not been authorized by the Secretary of the Navy to waive sanctuary protection, COL Brookins could not voluntarily waive the application of the statute even if she orally stated that she would, even if she sent e mails stating that she would and even if she accepted orders which contained an illegal waiver provision. Compl. 4. The Marine Corps knew that it was at risk and that the "voluntary waiver" provisions contained in COL Brookins' orders may be invalid and that she could later seek to have them declared as such. AR 84-86.

9. Agreed.

10. "Ms. Brookins was voluntarily released from active duty."

Disagree. The Defendant cites to the opinion of K.S. Plato in his Memorandum to the Board for Correction of Naval Records on behalf of the Commandant that COL Brookins was voluntarily release from active duty. (Defendant citing AR 33.) This opinion is blatantly incorrect and defies the definition of military orders. The orders issued to COL Brookins by the Marine Corps are very specific. She is to enter active duty on 28 February 2000 and is to remain on active duty to 26 May 2000. Once she accepted these orders and unless they were cancelled or modified by the Marine Corps she was obliged to follow them to the letter. She had no choice. Once accepting the orders she must report, perform the duties describe and leave active duty as ordered.

11. "Ms. Brookins did not make a claim for sanctuary or request retention to active duty pursuant to 10 U.S.C. § 12686 before or at the time of her discharge. See AR 30"

Disagree. 10 U.S.C. § 12686 is absolutely silent on the matter of making a claim for sanctuary. Therefore, the suggestion that a military member must make a claim for sanctuary under its provisions is plainly wrong. In pertinent part the statute provides as follows:

> **(a) Limitation.—** Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, **may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary.**
>
> **(b) Waiver.—** With respect to a member of a reserve component who is to be ordered to active duty (other than for training) under section 12301 of this title pursuant to an order to active duty that specifies a period of less than 180 days

> and who (but for this subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order. In carrying out this subsection, the Secretary concerned may require that a waiver under the preceding sentence be executed before the period of active duty begins. (Emphasis added.)

Nowhere within the statute is there a requirement that a military member claim sanctuary or request retention at or before discharge. The burden is on the Secretary to comply with the law and insure that it was being properly administered. In this case the Commandant of the Marine Corps did not have the authority to issue active duty orders which contained a waiver under Section (b) of the statute. The Commandant never reported that fact to the Plaintiff. Therefore, even if there was an obligation on Plaintiff, because the Commandant knowingly withheld the information regarding the dubious nature of his authority to require waiver of sanctuary, the Plaintiff could not ascertain that fact until it had the light of publicity. Likewise, the Secretary had an abiding duty to comply with the law. At the time of discharge the Secretary knew that Plaintiff was being discharged though she was covered by the sanctuary provision. He also knew that he had never authorized the Commandant of the Marine Corps to issue active duty orders containing waivers. Therefore, when the Secretary released the Plaintiff from active duty he violated the Statute. See *Dilley v. Alexander, 195 U.S. App. D.C. 332, 603 F.2d 914, 919,1979 U.S. App. LEXIS 12897, 195 Am. Disabilities Cas. (BNA) 332 (1979) Clarified by Dilley v. Alexander, 200 U.S. App. D.C. 354, 627 F.2d 407, 1980 U.S. App. LEXIS 17540 (1980)* where the Court held that

> It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. See *Vitarelli v. Seaton, 359 U.S. 535, 539, 3 L. Ed. 2d 1012, 79 S. Ct. 968 (1959); Service v. Dulles, 354 U.S. 363, 379, 1 L. Ed. 2d 1403, 77 S. Ct. 1152 (1957).* The military departments enjoy no immunity from this proscription. See

> *Harmon v. Brucker, supra; Geiger v. Brown, 136 U.S. App. D.C. 132, 419 F.2d 714, 717-19 (D.C. Cir. 1969); Roberts v. Vance, 119 U.S. App. D.C. 367, 343 F.2d 236, 240 (D.C. Cir. 1964).* It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency. See, e.g., *VanderMolen v. Stetson, 187 U.S. App. D.C. 183, 571 F.2d 617, 624 (D.C. Cir. 1977); Powell v. Zuckert, 125 U.S. App. D.C. 55, 366 F.2d 634, 640-41 (D.C. Cir. 1966); Dunmar v. Ailes, 121 U.S. App. D.C. 45, 348 F.2d 51, 53 (D.C. Cir. 1965).* The logic of these cases derives from the self-evident proposition that the Government must obey its own laws.

12. Admitted.

13. "On September 12, 2002, the Chairman of the BCNR recommended that Ms. Brookins's records be corrected to show that she was not released from active duty on May 26, 2000, "but continued to serve on active duty until the earliest date she qualified for 20 year active duty retirement and was retired in the grade of LTCOL." AR 12. The Chairman, along with two other BCNR members, considered the three advisory opinions recommending against granting Ms. Brookins's request, and concluded that because she "had over 18 years of active duty when she accepted the last period of active duty, and was required to sing a waiver of the sanctuary provision in order to reach that length of service," she should be granted relief in the form of active duty retirement. AR 11-12. The BCNR also questioned the validity of Ms. Brookins's waiver of the sanctuary provision, and thus her release from active duty. Id."

Denied in part. Defendant implies that the Board for Correction of Naval Records recommended relief because they found that Plaintiff had more then 18 years of active duty when she accepted her last period of active duty, when, in fact, she only had 17years, 2 months and 10 days of active duty when she

accepted her last orders. This is a mischaracterization. The fact that Plaintiff came into the sanctuary period during her last period of active duty rather than before that period of active duty makes no difference. If she entered the sanctuary period on active duty the Commandant should not have released her pursuant to the orders he had issued. To do so was error.

14. Agreed.

15. Agreed.

16. Agreed.

## PROPOSED ADDITIONAL FACTS

A. At the time that the Plaintiff was seeking ADSW orders for the period February 2, 200 to May 26, 2000 she was approaching 18 years of active duty, would be eligible for sanctuary under the provisions of Title 10 U.S.C. 12686 and the Board for Corrections understood this when it rendered its decision of September 12, 2002. AR 9.

B. No authority has been delegated by the Secretary of the Navy to Headquarters Marine Corps(HQMC) authorizing HQMC to require a waiver of the sanctuary provisions of 10 U.S.C. § 12686 at times pertinent in this case. Indeed, when the Marine Corps was specifically asked if it had any authority to invoke the waiver provisions of 10 U.S.C. § 12686, it failed to respond. AR 11, 89 and 82.

C. The issue of whether or not the Plaintiff voluntarily was released from active duty is moot as to this case because HQMC did not have the authority to issue active duty orders with waiver of sanctuary provisions. Compl. p. 4.

D. At the time that the Plaintiff received ADSW orders for the period February 2, 200 to May 26, 2000 she had 6529 active duty points. At the end of her active duty for this period she had 6681 active duty points which translates to 18.56 years of service. AR 18 and 59.

E. Plaintiff's ADSW orders for the period February 2, 200 to May 26, 2000, once accepted by her, required her to report for active duty as specified in the order and required her to leave active duty on the date she did. AR 22.

F. There is no regulation or statute which requires a military member who is entitled to the benefits of 10 U.S.C. § 12686 to declare or claim those benefits in order to be entitled to them. AR 73.

G. The Marine Corps knew that if it issued ADSW orders to the Plaintiff, despite the existence of a waiver provision in her orders, that the Marine Corps was risking a contest as to the validity of the waiver in those orders. The Marine Corps assumed the risk because of the compelling need to have the Plaintiff on active duty. AR 64-65

H. Plaintiff never knew that the waiver of sanctuary provisions of her orders was invalid. Affidavit of COL Brookins attached hereto as Exhibit 1.

I.. As part of the execution of her ADSW orders, and in compliance with those orders, Plaintiff must file and execute a Separation/Travel Pay Certificate. Affidavit of COL Brookins, Exhibit 1.

Respectfully submitted,

**Glassman & Bullock**

/s/
Stephen C. Glassman
1950 Old Gallows Road, Suite 700
Vienna, VA 22812
Telephone: 301-670-9200
Facsimile: 703-902-9501
Counsel for Plaintiff

**May 16, 2006**

## CERTIFICATE OF FILING

I hereby certify that on the 19th day of May 2006, a copy of the foregoing "Opposition to Defendant's Motion for Enlargement of Time" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

/s/ Stephen C. Glassman