IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBIN C. BROOKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1311C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant filed a motion requesting the Court to dismiss the complaint upon the grounds that plaintiff has failed to assert a money-mandating statute and because it lacks jurisdiction to review plaintiff's voluntary separation from the United States Navy. In the alternative, defendant requested the Court to grant judgment upon the administrative record for the defendant, pursuant to RCFC 56.1. In support of our motion, we relied upon the pleadings, defendant's statement of facts, and documents contained in the administrative record.

In our motion, we explained that plaintiff's claim for reinstatement to active duty, and accompanying monetary relief should be dismissed for lack of jurisdiction because plaintiff's complaint fails to assert a money-mandating statute. We also argued that plaintiff's claim for reinstatement to active duty

(and accompanying monetary relief) should be dismissed for lack of jurisdiction because plaintiff's release from active duty was voluntary. In the alternative, we contended that defendant is entitled to judgment upon the administrative record because the decision of the Secretary of the Navy to deny plaintiff's request for reinstatement to active duty was not arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence.

In her response to our motion, and cross-motion for judgment, plaintiff concedes that her complaint erroneously failed to assert a money-mandating statute in support of this Court's jurisdiction.[1] Pl. Br. at 8.[2] Plaintiff has thus filed an amended complaint, which asserts that this Court's jurisdiction is based upon the Military Pay Act, 37 U.S.C. § 204, a money-mandating statute which creates a substantive cause of action under the Tucker Act, 28 U.S.C. § 1491. Because Ms. Brookins's amended complaint properly sets forth the jurisdiction

---

[1] Ms. Brookins's complaint requested that the Court review a decision by the Secretary of the Navy pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 702 (2005).

[2] "Pl. Br. ___" refers to plaintiff's response to our dispositive motion and plaintiff's cross-motion for judgment, filed with the Court on May 19, 2006. "Compl. ___" refers to plaintiff's amended complaint, filed with this Court on May 23, 2006. "AR ___" refers to the Administrative Record, filed concurrently with our Motion to Dismiss, Or, In the Alternative, Motion for Judgment Upon The Administrative Record.

of this Court, and the Court has taken jurisdiction over this action, we no longer assert a facial challenge to the Court's jurisdiction to entertain and decide this action. We continue, however, to contend that the Court does not possess jurisdiction to entertain the complaint in this action because Ms. Brookins voluntarily separated from active duty service. We address Ms. Brookins's substantive responses to our motion below. We also request oral argument upon the matters addressed in the parties' briefs.

I. Ms. Brookins's Release From Active Duty Service Was Voluntary, And Divests This Court Of Jurisdiction To Entertain This Action

Ms. Brookins's voluntary release from active duty divests this Court of jurisdiction over any claims to reinstatement and associated monetary relief. That is because this Court lacks jurisdiction to review a challenge to a separation from the military resulting from a voluntary release. Sammt v. United States, 780 F.2d 31, 33 (Fed. Cir. 1985): Shrader v. United States, 38 Fed. Cl. 788, 798 (1997).

Ms. Brookins's amended complaint does not allege that the Marine Corps violated the release provision found at 10 U.S.C. § 12686(a). See Am. Compl. ¶¶ 1-27. That provision states as follows:

> [A] member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely

> military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary.

10 U.S.C. § 12686(a).

As we explained in our opening brief, prior to accepting active duty orders, Ms. Brookins expressed her intention to leave active duty voluntarily at the termination of her orders. AR 26, ¶ 5. She was offered active duty orders based upon her assertions. See AR 32, ¶¶ a, b; AR 35, ¶ 1 (electronic mail stating that Ms. Brookins was willing to sign the waiver, and that therefore her orders should be issued). Ms. Brookins left active duty at the termination of her temporary orders without expressing any reluctance. Specifically, on May 3, 2000 Ms. Brookins signed a Separation/Travel Pay Certificate which identified her discharge from the military as honorable, and effective date of release from active duty which was May 26, 2000. AR 100.[3] Ms. Brookins also turned in her green Active Duty military identification card as part of her discharge proceeding in May 2000. AR 33, ¶ 1. Indeed, Ms. Brookins did not request retention upon active duty or claim sanctuary pursuant to 10 U.S.C. § 12686 until July 17, 2001, more than a

---

[3] Defendant is not aware what Ms. Brookins meant by the language that "[i]t was the understanding that when I signed the NAVMC 11060 form, that it was for the settlement of pay only (enclosure 3)." See AR 18, ¶ A.1; AR 52, ¶ A.1; and AR 92, ¶ A.1.

year later. Surely, Ms. Brookins's separation from service was voluntary.

Ms. Brookins implies that because she signed the orders, and "was obliged to follow them to the letter," that somehow her accepting the orders and their release date of May 26, 2000 was involuntary. Pl. Br. at 12. A separation is presumed to be voluntary and the plaintiff bears the burden of coming forward with sufficient evidence to establish otherwise. Christie v. United States, 207 Ct. Cl. 333, 338, 518 F.2d 584, 587 (1975). "An action is not voluntary if it is produced by government conduct which is wrongful." Roskos, 213 Ct. Cl. at 40; see also Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574 (Fed. Cir. 1983)(establishing factors for rebutting the presumption of voluntariness, including Government misrepresentation of information detrimentally relied upon by service member, and service member's ability to exercise free choice when she or he separated.)

As we discussed above, Ms. Brookins cannot establish that her separation from active duty was the result of wrongful conduct by the Marine Corps. The administrative record does not contain any evidence that the Marine Corps misrepresented anything to Ms. Brookins. Instead, it supports our argument that Ms. Brookins willingly signed her orders which contained her release date, as well as her separation documents. In Mansell

v. United States, 199 Ct. Cl. 796, 468 F.2d 933 (1972), the Court of Claims emphasized that the term "involuntary" meant "contrary to his own choice, preference and desire" **of which the Navy was aware.** 199 Ct. Cl. at 801, 468 F.2d at 936 (emphasis added.) Ms. Brookins is correct that in Mansell, the court held that plaintiff's release was involuntary. Pl. Br. at 11. That is because, as the court explained several times, plaintiff made clear to the Navy that he desired to complete the full term of his three and one-half year active duty agreement. 468 F.2d at 936. Here, unlike in Mansell, Ms. Brookins did not express to the Marine Corps any desire to not sign the orders, or her release papers.

Instead, this case is similar to the facts in Merriott v. United States, 163 Ct. Cl. 261 (1963), in which plaintiff, a former reserve officer in the Army, sued to recover active duty pay from the date of his release from active duty in 1945. In Merriott, because "[t]here [was] no allegation or showing that, at or about the time of his release, plaintiff objected to being released or sought to remain in the Army," his release was held to be valid. Id. The court stated that "[w]here an officer is released from active duty without protest on his part, he will be deemed to have waived any invalidity in the release." Id. Here, as in Merriott, Ms. Brookins willingly signed her separation papers and returned her active duty identification card, without

protest, and her release from active duty was voluntary.

## II. Should The Court Determine That It Possesses Jurisdiction To Entertain Ms. Brookins's Complaint, Defendant Is Entitled To Judgment Upon The Administrative Record Because The Decision Of The SECNAV Was Not Arbitrary, Capricious, Contrary To Law Or Regulation, Or Unsupported By Substantial Evidence

In the event the Court determines that it possesses subject-matter jurisdiction to entertain Ms. Brookins's complaint, we request judgment upon the administrative record pursuant to RCFC 56.1. The scope of review by the Court is necessarily limited, since "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979). Contrary to plaintiff's assertion that "[t]he United States Court of Federal Claims applies the same standard in deciding a motion for judgment on the agency record as it would in deciding a motion for summary judgment," Pl. Br. at 6, resolution of a motion for judgment upon the administrative record pursuant to Rule 56.1 requires the Court to determine whether, based upon the administrative record, the challenged decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law. Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005); Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). "While the court might disagree with the [SECNAV's]

decision, it cannot substitute its own judgment for the [SECNAV's] if reasonable minds could reach differing resolutions of a disputed fact." Chayra v. United States, 23 Cl. Ct. 172, 178 (1991).

As we established in our motion for judgment upon the administrative record, Ms. Brookins voluntarily waived the sanctuary provision contained in 10 U.S.C. § 12686(b). Ms. Brookins agrees that she sought the active duty special work assignment at issue. See AR 82, ¶ a (references "Lt. Col. Brookins's request for Active Duty Special Work"); Pl. Res. to para. 3 of defendant's Statement of Facts. In her counter-statement of facts, at paragraphs 5 and 6, Ms. Brookins also agrees that she willingly waived the sanctuary provision contained in 10 U.S.C. § 12686(b). Indeed, she admits that she stated as follows:

> * * * I have been faithfully signing the waivers for many sets of ADSW and I have absolutely no problem with continuing to sign them. I have been 'faithfully' signing the waiver with the understanding I could continue until service limitation (I understand it to be 28 years of commissioned [service] as a Lt. Col. and possibly longer if I were fortunate enough to be promoted.) I am very much aware that I will not receive retirement until age 60 (if Congress doesn't change that along the way).

AR 26, ¶ 5.

Moreover, "[Lt. Col.] Brookins personally stated to [Lt. Col.] Lake and members of MCB Camp Lejeune HQ staff, several times, both over the phone and in person, **that she had no intention of declaring sanctuary.** She also indicated that she would readily sign any statement to that [e]ffect." AR 82, ¶ a (emphasis added); AR 32, ¶ a (emphasis added); Compl. ¶ 6. Evidence of Ms. Brookins's voluntariness is also contained in her application to the Board for Correction of Naval Records ("BCNR"). In her application, she does not assert that her waiver of the sanctuary zone provision was involuntary. See AR 17-20. Clearly, Ms. Brookins voluntarily waived the sanctuary zone provision contained in 10 U.S.C. § 12686(b).

For the first time, in her brief filed with this Court,[4] Ms. Brookins asserts that the Marine Corps "misrepresented" to her that it had received authority from the Secretary of the Navy to require waivers pursuant to 10 U.S.C. § 12686(b). Pl. Br. at 14-15. Because she relied upon this "misrepresentation," she asserts, her waiver was not voluntary. Id.

As the Court of Claims held in Roskos v. United States, 213 Ct. Cl. 34, 40, 549 F.2d 1386 (1977), "an action is not voluntary if it is produced by government conduct which is wrongful." Id.,

---

[4] Ms. Brookins's amended complaint does not allege that the Marine Corps misrepresented to her that it possessed authority to require a waiver under 10 U.S.C. § 12686. See Am. Compl. ¶¶ 1-12.

cited in Sinclair v. United States, 66 Fed. Cl. 487, 492 (2005). Here, Ms. Brookins asserts that "[b]y presenting waivers to her without explaining to [her] that the Marine Corps lacked the authority to request a waiver, the Defendant misrepresented that the waiver was valid." Pl. Br. at 15. Ms. Brookins ignores the fact that the statute does not require Secretarial approval to **request** a waiver; instead, it requires Secretarial approval to **require** a waiver. She also ignores the fact that she readily agreed to sign the waiver; indeed, as discussed above, the administrative record indicates that she evidenced no hesitance or reluctance to sign the waiver, and she had signed many waivers in the past. AR 26, ¶ 5; 32, ¶ a; 82, ¶ a; see also Compl. ¶ 6.

Nothing in the record indicates that the Marine Corps misrepresented anything to Ms. Brookins. There is no evidence that anyone at the Marine Corps falsely informed Ms. Brookins that it possessed authority from the Secretary to require a waiver if necessary to do so. Nor did Ms. Brookins make this allegation in her application to the BCNR, or in her complaint filed with this Court. Here, it was not necessary for the Secretary of the Navy to intervene and require the waiver, because Ms. Brookins was willing to sign the waiver.

Importantly, Ms. Brookins cannot claim ignorance of the fact that she had the option of voluntarily signing the waiver, without the approval of the Secretary of the Navy. The Marine

Corps Reserve Administrative Management Manual ("MCRAMM") dated March 10, 1999, authorizes a reservist to voluntarily choose to sign the waiver, without Secretarial approval, as did Ms. Brookins. The MCRAMM states as follows:

> 2. Title 10 U.S.C., section 12686(b) provides the authority for a Reserve member on active duty to waive retirement sanctuary. This provision affords the Marine Corps the flexibility to bring a member of the RC on active duty for up to 179 days even if those members are in, or would enter, sanctuary (at least 18 years of active federal service) during the contemplated period of service. When conditions are that federal service through repeated use of short tours and becoming eligible for sanctuary protection, the following policy applies:
>
> a. The COMMARFORRES and CG, MCRSC, will monitor Reservists under their cognizance who are approaching or have accrued 17 or more years of active duty. **If the Marine chooses to waive the sanctuary provisions as offered in paragraph 3109.2 above, orders may be issued.** The following statement must be included in the Marine's orders and executed and signed by the Marine prior to issuance of orders:
>
> "I voluntarily accept these orders to Active Duty for Special Work. In doing so, I understand that I may become eligible for sanctuary zone protection under Title 10 U.S.C. section 12686(b). I hereby waive the applicability of Title [10] U.S.C. section 12686(a) to the period of Active Duty covered by these orders. I understand that the effect of this waiver is to remove any sanctuary zone protection that might have otherwise applied as a result of the execution of these orders."

> Under no circumstances will orders be issued until the Marine has signed the waiver.
>
> B. **If the Marine does not choose to waive the sanctuary provisions and issuance of orders will cause the Marine to exceed 17 years of qualifying active duty federal service, COMMARFORRES or the CG, MCRSC, as appropriate, will forward the request for orders to CMC (RA) for approval.**

Pl. App. 35-36 (MCRAMM 3109, 3-23, 3-24) (emphasis in bold added).[5]

Pursuant to the above, if a Marine reservist chooses to sign the waiver, orders may be issued. On March 3, 2000, Ms. Brookins accepted orders for active duty covering a period of 89 calendar days, from February 28, 2000 until May 26, 2000. AR 22-24; Compl. ¶ 6. She chose to accept the orders, which were issued by the Commanding General of the Reserve Command in Kansas City, Missouri, and contained the following provision:[6]

> I voluntarily accept these orders to active duty for special work. In doing so, I understand that I may become eligible for sanctuary zone protection under Title 10, United States Code, Section 12686(A). As a condition to acceptance of these orders, however, pursuant to section 12686(B), I hereby waive the applicability of Section 12686(A) to the period of active duty covered by these orders. I understand that the effect of this waiver is to

[5] This excerpt of the MCRAMM can be found on pages 35 and 36 of the appendix attached to plaintiff's brief.

[6] Neither Ms. Brookins nor the Marine Corps possess a copy of the signed orders. Ms. Brookins, however, does not dispute the fact that she accepted the orders with the above-stated provision.

> remove any sanctuary zone protection that might have otherwise applied as a result of the execution of these orders.

AR 24, ¶ 15; Compl. ¶ 6.

Because Ms. Brookins willingly waived the sanctuary zone provision contained in 10 U.S.C. § 12686(b) and because the Marine Corps did not misrepresent information to Ms. Brookins, her waiver was voluntary and is valid.

If the Court finds that Ms. Brookins did not voluntarily waive the sanctuary zone, or leave active duty, then for the reasons set forth in our opening brief, the Court should determine that the Secretary of the Navy, acting through Mr. Lynch, effectively approved her release post hoc by rejecting the BCNR's recommendation that she be allowed to receive an active duty retirement. The Secretary or his designee "may correct any military record" when "the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a).

Here, the Secretary rejected the board's recommendation[7] and provided a written statement supporting his rejection. AR 4, ¶ 1. In his statement, the Secretary states that he was not persuaded that Ms. Brookins's separation from active duty was involuntary under 10 U.S.C. § 12686. Id. As we demonstrated in our opening brief and discuss above, his decision is supported by a plain reading of the administrative record. Ms. Brookins asserted numerous times to several senior Marine Corps officers that she had no intention to claim sanctuary. AR 26, ¶ 5; AR 32, ¶ a; AR 82, ¶ a; see also Compl. ¶ 6. She did not protest her release from active duty until more than a year later.

A reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Motor Freight System, 419 U.S. 281, 286 (1974). All that is required is that the agency's decision "minimally contain" a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n

---

[7] As we stated in our moving brief, and as the parties stipulated to in their joint stipulation filed with the Court on May 18, 2006, the BCNR's statement that Ms. Brookins had over 18 years of active duty service when she accepted the orders in question was incorrect. The significance of this is that the Marine Corps was not required to obtain approval before releasing Ms. Brookins from active duty, because she was not yet within the sanctuary zone. 10 U.S.C. § 12686(a). Regardless, however, the Marine Corps did not involuntarily release Ms. Brookins from active duty. Once she left active duty without claiming sanctuary protection, she may not reclaim that status unless offered another period of qualifying active duty. Thus, 10 U.S.C. § 12686(a) is not applicable.

v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Because the administrative record contains ample evidence that Ms. Brookins voluntarily waived the sanctuary provision, and was released from active duty, the Secretary's decision to deny plaintiff's request was not arbitrary or capricious, or contrary to law or regulation, and should be sustained.

CONCLUSION

For the reasons stated above, and in our opening brief, plaintiff's complaint should be dismissed, or, in the alternative, defendant should be granted judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Deborah A. Bynum

DEBORAH A. BYNUM
Assistant Director

s/ Lauren S. Moore

LAUREN S. MOORE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640

OF COUNSEL:

ANTHONY C. WILLIAMS
Major, U. S. Marine Corps
Litigation Attorney
Office of the Judge
Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard,
(Bldg 33)
Washington, DC 20374-5066
Telephone: (202) 685-4596

JUNE 1, 2006

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on the 1st day of JUNE, 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that the parties may access this filing through the Court's system.

/s/ Lauren S. Moore