No. 05-1311C
(Judge Horn)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

ROBIN C. BROOKINS,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S SUPPLEMENTAL BRIEF

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DEBORAH A. BYNUM
Assistant Director

LAUREN S. MOORE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640

OF COUNSEL:

ANTHONY C. WILLIAMS
Major, U. S. Marine Corps
Litigation Attorney
Office of the Judge
Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard,
(Bldg 33)
Washington, DC 20374-5066
Telephone: (202) 685-4596

JUNE 22, 2006

**TABLE OF CONTENTS**

**PAGE(S)**


DEFENDANT'S SUPPLEMENTAL BRIEF . . . . . . . . . . . . . . . . . . 1

I. The Waiver Contained In Ms. Brookins's Orders Was Valid . . . . . . . . . . . . . . . . . . . . . . 1

II. Title 10 United States Code Section 12686(a) Applies To Reservists In The Sanctuary Zone . . . . . . . . . . 6

III. Ms. Brookins Did Not Detrimentally Rely Upon Any Statements By The Marine Corps That It Possessed Authority To Issue A Waiver . . . . . . . . . 7

IV. A Defective Waiver Would Not Have Any Impact Upon Ms. Brookins's Voluntary Separation From Active Duty . . . . . . . . . . . . . . . . . . . . . 8

V. The Principle Of Voluntary Release Applies Equally To Reservists . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

**CASE** **PAGE(S)**

Christie v. United States,
207 Ct. Cl. 333, 518 F.2d 584, 587 (1975) . . . . . . . . . 9

Merriott v. United States,
163 Ct. Cl. 261 (1963) . . . . . . . . . . . . . . . . . . 11

Service v. Dulles,
354 U.S. 363 (1957) . . . . . . . . . . . . . . . . . . 5, 6

Voge v. United States,
844 F.2d 776, 779 (Fed. Cir. 1988) . . . . . . . . . . . . . 5

## STATUTES AND REGULATIONS

PAGE(S)

10 U.S.C. section 12686(a) . . . . . . . . . . . . . . . . . 3, 6

10 U.S.C. § 12686(b) . . . . . . . . . . . . . . . . . . passim

32 C.F.R. § 403 . . . . . . . . . . . . . . . . . . . . . . . 2

32 C.F.R. section 700.403 (1999) . . . . . . . . . . . . . . 1, 2

32 C.F.R. § 700.403(a) . . . . . . . . . . . . . . . . . . . 2

32 C.F.R. section 700.404 . . . . . . . . . . . . . . . . 2, 4, 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBIN C. BROOKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1311C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF

Pursuant to the Court's oral order dated June 19, 2006, and its order dated June 20, 2006 defendant files this supplemental brief. In this supplemental brief, pursuant to the Court's request, we address the relationship between the (1) statutory code provision Title 10 United States Code, section 12686(b), (2) regulatory provision 32 Code of Federal Regulations parts 700.403 and 700.404, and (3) relevant provisions of the Marine Corps Reserve Administrative Management Manual, regarding the waiver that plaintiff, Robin Brookins signed when she was issued orders for the active duty period at issue in this case. We also address the additional matters regarding voluntariness, waiver, and release addressed in the Court's June 20, 2006 order.

I. The Waiver Contained In Ms. Brookins's Orders Was Valid

Title 10 U.S.C. § 12686(b) provides as follows:

> Waiver. - With respect to a member of a reserve component who is to be ordered to active duty (Other than for training) ... pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this

> subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order. In carrying out this subsection, the Secretary concerned may require that waiver under the preceding sentence be executed before the period of active duty begins.

10 U.S.C. § 12686(b).

By regulation, the Commandant of the Marine Corps possesses broad authority to operate the Marine Corps. Title 32 C.F.R. section 700.403 (1999) states as follows:

> (a) The Commandant of the Marine Corps, under the direction of the Secretary of the Navy, shall command the United States Marine Corps, which shall include Headquarters, United States Marine Corps; the Operating Forces of the Marine Corps; Marine Corps Supporting Establishments and the Marine Corps Reserve.

32 C.F.R. § 403.

Furthermore, 32 C.F.R. section 700.404 provides as follows:

> In addition, the Commandant of the Marine Corps has the following specific responsib- ilities:
>
> (e) To plan for and determine the present and future needs, both quantitative and qualitative, for personnel, **including reserve personnel** and civilian personnel, of the United States Marine Corps. This includes responsibility for leader- ship in maintaining a high degree of competence among Marine Corps officers and enlisted personnel and Marine Corps civilian personnel in necessary fields of specialization through education, training, and equal opportunities for personal advancement; and for leadership in maintaining the morale and motivation of Marine Corps personnel and the prestige of a career in the Marine Corps.

32 C.F.R. § 700.403(a); 700.404 (e)(emphasis added).

The Marine Corps Reserve Administrative Management Manual ("MCRAMM") dated March 10, 1999, is consistent with the above regulation by authorizing a reservist to voluntarily choose to sign the waiver mentioned in 10 U.S.C. § 12686(b), without Secretarial approval. The MCRAMM states as follows:

> 2. Title 10 U.S.C., section 12686(b) provides the authority for a Reserve member on active duty to waive retirement sanctuary. This provision affords the Marine Corps the flexibility to bring a member of the RC on active duty for up to 179 days even if those members are in, or would enter, sanctuary (at least 18 years of active federal service) during the contemplated period of service. When conditions are that federal service through repeated use of short tours and becoming eligible for sanctuary protection, the following policy applies:
>
> a. The COMMARFORRES and CG, MCRSC, will monitor Reservists under their cognizance who are approaching or have accrued 17 or more years of active duty. **If the Marine chooses to waive the sanctuary provisions as offered in paragraph 3109.2 above, orders may be issued.** The following statement must be included in the Marine's orders and executed and signed by the Marine prior to issuance of orders:
>
> "I voluntarily accept these orders to Active Duty for Special Work. In doing so, I understand that I may become eligible for sanctuary zone protection under Title 10 U.S.C. section 12686(b). I hereby waive the applicability of Title [10] U.S.C. section 12686(a) to the period of Active Duty covered by these orders. I understand that the effect of this waiver is

to remove any sanctuary zone protection that might have otherwise applied as a result of the execution of these orders."

Under no circumstances will orders be issued until the Marine has signed the waiver.

b. **If the Marine does not choose to waive the sanctuary provisions and issuance of orders will cause the Marine to exceed 17 years of qualifying active duty federal service, COMMARFORRES or the CG, MCRSC, as appropriate, will forward the request for orders to CMC (RA) for approval.**

AR 190[1] (MCRAMM 3109, 3-23, 3-24) (emphasis in bold added). Thus, pursuant to the MCRAMM, Ms. Brookins had the option to sign the waiver without higher approval.

The above cited statutory language, 10 U.S.C. § 12686(b) is consistent with the cited regulation and MCRAMM language. The statute, while granting permission to the Secretary to "require" a waiver, does not require that each **request** to sign a waiver first receive Secretarial approval. The statute states that the Secretary "may" require a member to sign the waiver. This permissive language allows the Secretary to require a waiver if necessary under the particular circumstances. Indeed, it would not be necessary for the Secretary to require a waiver if a military member is willing to sign the waiver voluntarily.

This plain reading of the statute is consistent with 32 C.F.R. § 700.404 which grants broad authority to the

[1] "AR ____" refers to the administrative record filed in this case, as supplemented on June 23, 2006.

Commandant of the Marine Corps to plan for and determine present and future personnel needs (including reserve personnel) of the Marine Corps. 32 C.F.R. § 700.404. Here, by promulgation of the MCRAMM, the Marine Corps implemented its regulatory authority and authorized a Marine reservist to voluntarily choose to sign the waiver mentioned in 10 U.S.C. § 12686(b). Pursuant to MCRAMM paragraph (a) above, if a Marine reservist chooses to sign the waiver, orders may be issued. If a Marine reservist chooses to not sign the waiver, however, then the matter must reach higher authority pursuant to paragraph (b).

On March 3, 2000, Ms. Brookins accepted orders for active duty covering a period of 89 calendar days, from February 28, 2000 until May 26, 2000. AR 22-24; Compl. ¶ 6. Because Ms. Brookins willingly waived the sanctuary zone provision contained in 10 U.S.C. § 12686(b), and the waiver was valid pursuant to the statute, regulation, and the MCRAMM, as discussed above, her separation from active duty was not involuntary and, thus, 10 U.S.C. § 12686(a) was not violated.

Arguably, the Court's analysis should begin with the premise that an agency is bound by its own regulations. Service v. Dulles, 354 U.S. 363, 388 (1957); Voge v. United States, 844 F.2d 776, 779 (Fed. Cir. 1988)("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all . . . ."). In

Service, the Supreme Court reversed the Secretary of State's exercise of his statutorily authorized discretion to dismiss employees with questionable loyalty where the Secretary had exercised that authority in violation of self-imposed regulatory constraints in excess of statutory requirements. 354 U.S. at 388. Here, as we have demonstrated, the Marine Corps adhered to its regulations contained in the MCRAMM.

II. Title 10 United States Code Section 12686(a) Applies To Reservists In The Sanctuary Zone

In the June 20, 2006 order, the court asked "whether a section 12686(a) release of a Reservist from active duty by the Secretary may occur after a service member would have 20 years of active service, as appears to be the case here, had plaintiff been continued on active duty rather than separating after the conclusion of her Active Duty for Special Work tour?" In contrast to the Court's hypothetical question, here Ms. Brookins had not achieved 20 years of active duty service, as stipulated by the parties in their joint stipulation filed earlier with the Court. Nor is there any indication in the administrative record that she would have received any additional active duty work orders, enabling her to achieve 20 years of active duty service. The statutory language, however, does not address whether the Secretary may release a reservist on active duty after he or she has achieved 20 years of active duty. Instead, it addresses the release of a reservist who is within two years of achieving the

20 years of active duty necessary for retirement status. 10 U.S.C. § 12686(a).

The parties also agree that, at the time she accepted the tour of duty in question, Ms. Brookins was not within the sanctuary zone. The plain language of section 12686(a) requires the Secretary's approval of an involuntary release of a reservist who is in the sanctuary zone. 10 U.S.C. § 12686(a). The statute does not state that the approval must be made before the effective release date of the reservist. Here, for example, Ms. Brookins did not claim that her separation was involuntary until well after her release date.

However, it would appear that the very purpose of the statute is to allow a reservist who is close to retirement eligibility the ability to become retirement eligible, which in Ms. Brookins's case would be twenty years of active service. Therefore, if she were to have been continued upon active duty until she reached retirement eligibility at twenty years, then 10 U.S.C. § 12686(a) becomes moot, and absent criminal misconduct, Ms. Brookins would be entitled to an active duty retirement, or continued service according to the needs of the Marine Corps.

III. Ms. Brookins Did Not Detrimentally Rely Upon Any Statements By The Marine Corps That It Possessed Authority To Issue A Waiver

In response to the issue whether Ms. Brookins detrimentally

relied upon the Marine Corps' alleged representation that it had the authority to participate in a waiver of sanctuary, defendant notes that plaintiff's counsel denied any such reliance at oral argument. Indeed, there is no evidence in the administrative record that Ms. Brookins questioned the Marine Corps regarding its authority to request a waiver or whether the Secretary of the Navy must approve a waiver. Thus, we agree with plaintiff's counsel's statement that Ms. Brookins did not detrimentally rely upon any such representation.

The opposite, in fact, is true. The Marine Corps reluctantly granted Ms. Brookins's request for orders only after she repeatedly assured Marine Corps officials that she had no intention of invoking sanctuary. There was a bargained for exchange from which both parties benefitted. The Marine Corps was able to avoid using an active duty Marine to watch over the base tax center for a few months, and Ms. Brookins received a pay check and retirement points toward a reserve retirement. An active duty retirement was specifically excluded from the bargain.

IV. A Defective Waiver Would Not Have Any Impact Upon Ms. Brookins's Voluntary Separation From Active Duty

A defective waiver of sanctuary would not have any impact upon the issue of whether Ms. Brookins voluntarily separated from active duty. As we explained in our opening brief, prior to

accepting active duty orders, Ms. Brookins expressed her intention to leave active duty voluntarily at the termination of her orders. AR 26, ¶ 5. She was offered active duty orders based upon her assertions. See AR 32, ¶¶ a, b; AR 35, ¶ 1 (electronic mail stating that Ms. Brookins was willing to sign the waiver, and that therefore her orders should be issued). Ms. Brookins left active duty at the termination of her temporary orders without expressing any reluctance. Specifically, on May 3, 2000 Ms. Brookins signed a Separation/Travel Pay Certificate which identified her discharge from the military as honorable, and effective date of release from active duty which was May 26, 2000. AR 100. Ms. Brookins also turned in her green Active Duty military identification card as part of her discharge proceeding in May 2000. AR 33, ¶ 1. Finally, she signed the "Certificate of Release or Discharge from Active Duty" form without protest. AR 101. This document stated that she was released from active duty and that her service was honorable. Id. Indeed, Ms. Brookins did not request retention upon active duty or claim sanctuary pursuant to 10 U.S.C. § 12686 until July 17, 2001, more than a year later. Surely, Ms. Brookins's separation from service was voluntary regardless of the validity of her waiver. Indeed, a separation is presumed to be voluntary and the plaintiff bears the burden of coming forward with sufficient evidence to establish otherwise. Christie v. United States, 207

Ct. Cl. 333, 338, 518 F.2d 584, 587 (1975).

If the Court determines that the Marine Corps lacked authority to request the waiver, then the Court should determine whether Ms. Brookins's separation was voluntary or involuntary based upon the totality of the circumstances. If the Court deems the separation to be involuntary, then it should sustain Mr. Lynch's decision that Ms. Brookins should be released. In this regard, the Government's position is that any error was not prejudicial, because the Secretary would have nevertheless approved her separation based upon her repeated assertions that she would leave active duty voluntarily upon the expiration of her three month orders. Finally, in the alternative, the Court should remand the case to the BCNR to address Ms. Brookins's application based upon a proper understanding that she had not yet achieved 20 years of active duty service when she began her tour of duty at issue.

V. The Principle Of Voluntary Release Applies Equally To Reservists

In further response to the Court's order dated June 20, 2006, the principle of voluntary release applies equally to active duty and reserve members. As we discussed in our opening brief, the Court of Claims, in Mansell v. United States, 199 Ct. Cl. 796, 468 F.2d 933 (1972) addressed the issue whether plaintiff, a reserve member, voluntarily separated from the service. The Court of Claims held that because the reserve

member had expressly informed his superiors that he wished to remain in the service and complete his full term of active duty, the separation was involuntary. Id. This case, however, is similar to the facts in Merriott v. United States, 163 Ct. Cl. 261 (1963), in which plaintiff, a former reserve officer in the Army, sued to recover active duty pay from the date of his release from active duty in 1945. In Merriott, because "[t]here [was] no allegation or showing that, at or about the time of his release, plaintiff objected to being released or sought to remain in the Army," his release was held to be valid. Id. The Court stated that "[w]here an officer is released from active duty without protest on his part, he will be deemed to have waived any invalidity in the release." Id. Here, as in Merriott, Ms. Brookins willingly signed her separation papers and returned her active duty identification card, without protest, and her release from active duty was voluntary.

## CONCLUSION

For these reasons, and for the reasons discussed in our briefs filed previously with the Court, we respectfully request that the Court dismiss the complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Deborah A. Bynum

DEBORAH A. BYNUM
Assistant Director

s/ Lauren S. Moore

LAUREN S. MOORE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640

OF COUNSEL:

ANTHONY C. WILLIAMS
Major, U. S. Marine Corps
Litigation Attorney
Office of the Judge
Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard,
(Bldg 33)
Washington, DC 20374-5066
Telephone: (202) 685-4596

JUNE 22, 2006

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on the 22nd day of JUNE, 2006, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that the parties may access this filing through the Court's system.

/s/ Lauren S. Moore