**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROBIN C. BROOKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-1311C** |
| | ) | **Judge Horn** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPLY OF PLAINTIFF TO DEFENDANT'S SUPPLEMENTAL BRIEF**

Plaintiff, Robin C. Brookins ("Plaintiff") by and through undersigned counsel, Glassman & Bullock and Stephen C. Glassman submits this Reply to Defendant's Supplemental Brief, and in so doing states:

I.

**The Waiver Contained in Colonel Brookins' Orders Was Invalid as a Matter of Law.**

Title 10 U.S.C. 12686(a) provides as follows:

> **(a) Limitation.—** Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, **may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary.**

There is no ambiguity to the "Limitation" imposed by this statute upon the Secretary of every military department. Simply, the **Secretary** must enact regulations which implement this provision and which bar the Secretary from involuntarily releasing a reserve member from active duty if, while on a tour of active duty, the member is

within two years of achieving twenty years so as to qualify the member for military retirement as distinguished from a reserve retirement. The Statute, 10 U.S.C. § 12686(a), also requires that the Secretary enact regulations which would permit the Secretary to approve a release under these circumstances and would bar a member's right to remain on active duty to complete twenty years for military retirement.

Title 10 U.S.C. § 12686(b) provides as follows:

> **(b) Waiver.—** With respect to a member of a reserve component who is to be ordered to active duty (other than for training) under section 12301 of this title pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order. In carrying out this subsection, the Secretary concerned may require that a waiver under the preceding sentence be executed before the period of active duty begins. (Emphasis added.)

This provision merely says that a Secretary may require a waiver of subsection (a), above, as a condition for a reservist to go on active duty for less than 180 days. If the Secretary so desires, he may require that the waiver be executed before a reserve member goes on active duty. If the Secretary does not require a waiver, then the Secretary must comply with the provisions of 10 U.S.C. § 12686 (a) and the regulations he is required to implement under that statute.

In the present case, the Secretary did not require a waiver of subsection (a) of the statute either before or after Plaintiff entered the sanctuary zone of more than eighteen years of active duty service. In the present case, the Commandant of the Marine Corps required that the Plaintiff accept a waiver before she went on active duty for less than 180 days. Since the Commandant cannot act on behalf of the Secretary of the Navy under the

provisions of 10 U.S.C. § 12686, his actions in requiring that the Plaintiff execute a waiver does not affect Plaintiff's right to sanctuary under the Statute.

The question becomes does the broad-based authority of the Commandant of the Marine Corps authorizing him to run the Marine Corps under 32 C.F.R. § 403 and 32 C.F.R. §700.404 include the authority to act on behalf of the Secretary in implementing 10 U.S.C. 12686. It does not. The vague, generalized power and responsibilities of the Commandant under the foregoing regulations, which the Defendant relies upon, are not what Congress intended when it required the Secretary to implement 10 U.S.C. § 12686 "under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable …"

The Secretary has issued specific regulations dealing with implementing 10 U.S.C. § 12686. They are a part of the administrative record and appear as SECNAV INSTRUCTION 1920.6B of 13 December 1998 (AR 355)("Instruction"). The issue of sanctuary is dealt with in various locations of the Instruction. An analysis of those provisions must compel the conclusion that there was no delegation of authority by the Secretary to the Commandant, and, indeed, it appears that the Secretary specifically intended not to make such a delegation.

At AR 395 Instruction 1920.6B, paragraph (6)(d) makes 10 U.S.C. § 12686 applicable to all reservists. Most importantly, pursuant to paragraph 8 of the Instruction the Secretary defines who has the releasing authority regarding release from active duty of Marine Corps Officers. In pertinent part the Instruction states as follows at AR 406, subparagraph 3:

> (3) Under section 12686 of reference (a) [10 U.S.C.], a Reserve officer who is on active duty (other than for training) and is with 2

> years of becoming eligible for retired pay under a purely military retirement system shall not be involuntarily released from that duty before he or she becomes eligible for that pay, unless his or her release is approved by the Secretary.

Nothing suggests that given the Secretary's implementation of regulations dealing with 10 U.S.C. § 12686, he intentionally ignored the implementation of a waiver policy under that Section because he relied on the Regulations contained in Part 700 of Navy Regulations. Since the Secretary did create regulations implementing 10 U.S.C. § 12686, it can only be assumed that the Secretary had no intention of delegating authority regarding requiring waivers pursuant to the Statute to the Commandant of the Marine Corps.

The limited regulatory scheme of the Secretary of the Navy in implementing 10 U.S.C. § 12686 without delegating his statutory authority is contrary to the approach taken by the Secretary of the Air Force in implementing 10 U.S.C. § 12686. See Exhibit 1, which is Air Force Instruction 36-2131. The very first written statement in this Instruction states that it is issued "By Order of the Secretary of the Air Force." Paragraph 3.2 of the Instruction contains a clear and unambiguous delegation of authority to every command level to disapprove a waiver. Approval of waivers is delegated by the Secretary to the NGB/CF (ANG) [National Guard Bureau/Chief of the Air National Guard], AFRC/CV (Air Force Reserve Command/Vice Commander) and ARPC/CC (Air Reserve Personnel Center/Commander). More to the point is Attachment 3 to the Instruction. Pursuant to paragraph 3.2 of the Instruction each reservist is required to sign a waiver and is also required to sign the following statement found in Attachment 3: "I also understand neither my waiver submitted here nor any order requiring me to perform further voluntary service on AD is effective until and unless this waiver is approved in

writing by HQ ARPC/CC [Headquarters Air Reserve Personnel Center](USAFR), **as delegated by the SAF [Secretary of the Air Force].”[1]**

The type of delegation Defendant claims is present in the Navy in reality does not exist. The government’s boot strap argument that the plenary powers of the Commandant are sufficient to comply with 10 U.S.C. § 12686 is stretching statutory construction and implementation beyond their outer limits. The waiver required by the Commandant was not valid because the Secretary of the Navy never delegated to him the authority to require it.

**II.**

***Post Hoc* Secretarial Approval of an Involuntary Release from Active Duty Renders Section 12686(a) a Nullity and Violates the Statute.**

The Court has asked the parties to “address whether section 12686(a) requires the Secretary’s approval of an involuntary release of a Reservist in the sanctuary zone prior to the release of the service member from active duty.” The operative language from the statute is as follows: [The Reservist on active duty who reaches or has reached 18 years of active duty service] “**may not be involuntarily released from that duty before he becomes eligible for that pay** [regular military retired pay]**, unless the release is approved by the Secretary.”** The question posed by the Court is whether the approval by the Secretary for involuntary release which will overturn the benefits of sanctuary

[1] The Court has asked that the Plaintiff to present authority as to the position that the Air Force and the Army, unlike the Navy and the Marines “have delegated authority of the Secretary contained in 10 U.S.C. 12686(b) to lower military command levels and compare those delegations with the delegation in 32 CFR 700.505 raised by the defendant for the first time at oral argument.” The Air Force Instruction is Exhibit 1. Although multiple attempts to locate pertinent regulations for the Army have been made, the necessary information has not been obtained. Plaintiff based its position on *Green v. United States*, 17 Cl. Ct. 716, a case relied on by the Defendant. In *Green*, the Secretary of the Army delegated his authority to the Assistant Secretary of the Army to approve the involuntary release from active duty of Reservists members. The authority was delegated under 10 § U.S.C. 1163(d), a statute which operates similarly to the statue at issue in the case at Bar.

must be issued before release of the member from active duty or can the Secretary wait indefinitely after a wrongful release from active duty and categorize the release as proper by merely approving the propriety of the release.

There does not appear to be any precedent to guide the Court on this matter. The Air Force Instruction, Exhibit 1, requires a waiver in every case other than where a reservist is involuntarily activated. The plain meaning of the statute suggests an obligation to retain a proper candidate for sanctuary unless the Secretary approves involuntary release while the member is on active duty or before he goes on active duty. To conclude otherwise defeats the language and purpose of 10 U.S.C. § 12686(a). This Section is not a grant of authority, but rather, is a limitation on the authority of the Secretary. As such, to allow the Secretary to approve involuntary releases from active duty in any case he wants to at any time he wants to would completely purge the purpose of the Statute, which by its plain language, is to limit the power of the Secretary regarding his authority to involuntarily release certain reservists; to wit, those who have reached 18 years of active service and are on active duty.

## III.

## The Secretary has the Authority to Involuntarily Release from Active Duty Any Reservist Who Has Twenty Qualifying Years of Active Duty Service

The Court has asked the parties to address "whether a section 12686(a) release of a Reservist from active duty by the Secretary may occur after a service member would have 20 years of active service." The answer is: No! If a member has twenty years of active service such that he qualifies for retirement if he had those twenty years prior to coming on active duty for a period of less than 180 days the sanctuary provisions would not apply since the member is already eligible for retirement. If he comes on active duty

for 180 days or less and during that time he reaches 18 years of active duty service, then he cannot be involuntarily released until he has twenty qualifying years. At the point that he has the twenty qualifying years, the Secretary, in releasing him, is not releasing him pursuant to 10 U.S.C. § 12686(a) because he has achieved his twenty years. The only release which can be deemed a 10 U.S.C. § 12682 (a) release is one where the Secretary involuntarily releases a reservist otherwise qualified for sanctuary who has 18 or more years of active duty qualifying service but less than 20 such years of service.

Therefore, the issue as raised in the Court's Order and as stated in this paragraph should have no impact on the Court's deliberations on the issues presented by the parties in this case.

## IV.

## Plaintiff Did Detrimentally Rely Upon the Presumption that the Marine Corps was Acting Properly and In Accordance with Law When It Required that Plaintiff Execute a Waiver of Sanctuary as a Condition of Issuing ADSW Orders.

There is a presumption of regularity which attaches to the government and all of its activities. See, *United States v. Martin*, 438 F.3d 621, 634 (U.S. Ct. App. 6th Cir. 2006), citing Judge Posner in *United States v. Tomasino*, 206 F.3d 739 (7th Cir. 2000), superseded by statute, ("[a] presumption of regularity attends the Commission's doings, as it does that of other official bodies."), *See also United States Postal Serv. v. Gregory*, 534 U.S. 1, 10, 122 S. Ct. 431, 151 L. Ed. 2d 323 (2001) (noting "that a presumption of regularity attaches to the actions of Government agencies"). "In the absence of clear evidence to the contrary, courts presume that [public officials] have properly discharged their official duties," *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15, 47


N:\WPfiles\Cases\Military Law\Brookins, R\Pleadings\ReplySupplementalBrief.062906.FINAL.doc

S. Ct. 1, 71 L. Ed. 131 (1926). It is derived from the notion that when the government acts, it is doing so with authority granted to it by the Constitution or Congress.

In the present case where the Marine Corps indicated to the Plaintiff that it would not issue her ADSW orders without a waiver on her part, there was a presumption that it had the authority to impose that requirement. The general public, and most particularly the reserve community, could assume that the requirement as issued was legal. At the time the Marine Corps mandated that Plaintiff could not go on ADSW orders without a waiver it had created regulations which it now cites dealing with the issue of sanctuary. What was known institutionally by the Marine Corps at the time it issued its regulations and at the time it required a waiver from the Plaintiff was that it had not be delegated the authority to require a waiver from reservists for under 180 day ADSW orders.

Notwithstanding that institutional knowledge, once Plaintiff was on active duty, she was never advised that the Marine Corps acted without authority. She detrimentally relied on the presumption of regularity and the failure of the Marine Corps to disclose the flaw in its procedures by following through and complying with the orders which contain a waiver which was illegally required by the Marine Corps. She did so to her detriment since if she knew of the illegality she would not have docilely left active duty. A review of the comments made herein would disclose that each of the elements of fraud is set forth in the conduct of the Marine Corps and the Plaintiff's reliance on that conduct. Though that is of no moment here, it does demonstrate a setting where the Plaintiff acted without information and the Defendant acted as if it had authority which it knew it did not have. It cannot be that the Defendant is permitted to do so. The government must

comply with the law and its own regulations. It did not do so and Plaintiff is entitled to the relief granted to her by the BCNR.

**V.**

**The Actions of Ms. Brookins Post-execution of the Waiver are Irrelevant to the Issue of Whether an Invalid Waiver Should be upheld by this Court.**

Defendant asserts that the post-execution circumstances and events demonstrate that the Plaintiff's separation from the military was voluntary even if the waiver she signed was not legally enforceable. The post-execution actions of the Plaintiff are of no moment or guidance to this Court on the issue of whether acceptance of the waiver was voluntary or involuntary. When she was undertaking the actions identified, she was unaware of the illegality of the waiver.

The argument offered by the Defendant is no different than the argument on the voluntary nature of the Plaintiff's actions it levied in its Reply to the Response of Plaintiff to the Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment. To the extent that the argument is repetitive of previous arguments, Plaintiff incorporates, by reference herein, paragraphs 6-10 of Plaintiff's Reply to the reply of the Defendant to Plaintiff's Response to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Reply to Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment. The Defendant's argument covers no new ground.

Defendant seeks to have this Court approve of the actions of Mr. Lynch who, according to the Defendant, "would have nevertheless approved [Plaintiff's] separation based upon her repeated assertions that she would leave active duty voluntarily upon the expiration of her three month orders." Defendant's Supplemental Brief at 9. This is a

recasting of the Defendant's argument that it has the authority to approve of separation *post hoc*. The fact that the Defendant's position is misguided is addressed in Section II, supra. Notwithstanding the inherent limitations on powers and the specific requirement of delegation which have not been fulfilled in this case, the Defendant states it can nonetheless approve the involuntary separation of a reservist who otherwise qualifies for sanctuary. The Defendant's argument is not supported by the law, it is not supported by the policy underlying the law, it is not supported by the policy regulating the actions of governmental agencies and it is not supported by the administrative record detailing the scope of the Defendant's authority. *Post hoc* approval of separation is not permitted under 10 U.S.C. § 12686(a). Any other reading of the statute would render the obvious limitation on authority contained in the statute meaningless. Therefore, to specifically answer the Court's question, it is clear that a defective waiver of sanctuary, based on an alleged lack of authority by the Marine Corps, would have an impact on the issue of whether Plaintiff voluntarily separated. If the Defendant abides by the limitations of authority imposed by 10 U.S.C. § 12686(a), that is, that delegation of waiver is required before seeking waiver and prior to release, then it is clear that the Defendant cannot approve, *post hoc*, any voluntarily waiver signed by a service member where the statute has not been followed. If *post hoc* application of the waiver was abandoned by the Secretary due to the fact that it is illegal, then, Plaintiff's status would have remained the same and the decision of the BNCR would have had to have been honored by Mr. Lynch.

**VI.**

**The Decision to Separate from the Military by a Reserve Member Cannot be Voluntary Where it is Not Disclosed that the Waiver is Invalid.**

The Defendant asserts, in response to the Court's question, that "the principal of voluntary release applies equally to active duty and reserve members." See, Supplemental Brief at 10. While the Defendant answers the Court's question in general terms, the Defendant, rather than demonstrating the applicability of the information sought in this case, uses the opportunity to re-hash arguments made in previous pleadings. To the extent that the Defendant repeats its argument, the Plaintiff incorporates by reference arguments made in rebuttal. See, e.g., paragraphs 9-10 of Plaintiff's Reply to the Defendant's Reply to the Plaintiff's Response to the Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment.

The issue raised, however, is whether the voluntariness argument made by Plaintiff's counsel in Plaintiff's Response to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment at Section IV(C) applies equally for active duty members exiting the service as it does to reservists exiting the service upon expiration of active duty orders. In the case at bar, the statute in question, 10 U.S.C. 12686(b) specifically applies to reservists. No legal source can be found which demonstrates different treatment between active duty members exiting the service and reservists who exit upon termination of their active duty orders.

Nonetheless, the question is raised as to whether the Plaintiff could have voluntarily exited the Marine Corps by execution of a waiver which she did not know to be invalid. It is well settled that in order for a waiver to be valid, it must be knowingly and voluntarily executed. See, e.g., *Brookhart v. Janis*, 384 U.S. 1, 4, 5, 16 L. Ed. 2d 314, 86 S. Ct. 1245 (1966) (Waiver requires only that the party waiving such right do so

"voluntarily" and "knowingly" based on the facts of the case.) It cannot be demonstrated in this case that the waiver of sanctuary rights were knowingly and voluntarily waived by the Plaintiff. The Plaintiff did not know until after she agreed to the waiver language in the active duty order that the waiver contained in the order was of no affect and was presented without authority from the Secretary of the Navy. Under these circumstances, it is axiomatic that the waiver is of no legal affect.

**VII.**

**Conclusion**

For the foregoing reasons and for those stated in preceding briefs incorporated herein by reference, Plaintiff respectfully requests that this Court:

a. Deny the Defendant's Motion to Dismiss or in the Alternative for Judgment Upon the Administrative Record in its entirety;

b. Grant the Plaintiff's Cross-Motion for Judgment in its entirety;

c. Order the Secretary of the Navy return the Plaintiff to active duty with active duty orders which would cause her to remain on active duty for such period as would be necessary for her to become eligible for a twenty year retirement; or alternatively,

d. Order the Secretary of the Navy to correct the records of the Plaintiff to reflect that she has served on active duty for a period of twenty years such that she is eligible for a twenty year retirement;

e. Order the Secretary of the Navy to pay to the Plaintiff pay and allowances due to her for the period of service she serves or is deemed to have served in order for her to become eligible for a twenty year retirement;

f. Order the United States to reimburse the Plaintiff attorneys fees and costs pursuant to Title 5 USCS § 5101 or such other authority which authorizes such an award in this case; and

g. Grant such other and further relief as to the Court is just.

Respectfully submitted,

GLASSMAN & BULLOCK

___s/ Stephen C. Glassman_______
Stephen C. Glassman
1950 Old Gallows Rd., Suite 700
Vienna, VA 22182
Telephone: (301) 670-9200
Facsimile: (703) 902-9501

Counsel for the Plaintiff

**Certificate of Electronic Filing**

I hereby certify that on the 29th day of June, 2006, a copy of the foregoing "Reply to Defendant's Supplemental Brief" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that the parties may access this filing through the Court's system.

__s/ Stephen C. Glassman________
Stephen C. Glassman